65. Gill PJ, Silbert CK, and Silbert JE: Effects of heparan sulfate removal on attachment and reattachment of fibroblasts and endothelial cells. Biochemistry 25:405-410, 1986.

66. Humphries DE, Lee, S-L, Fanburg BL, and Silbert JE: Effects of hypoxia and hyperoxia on proteoglycan production by bovine pulmonary artery endothelial cells. J Cell Physiol 126:249-253, 1986.

67. Humphries DE, Silbert CK, and Silbert JE: Glycosaminoglycan production by bovine aortic endothelial cells cultured in sulfate-depleted medium. J Biol Chem 261:9122-9127, 1986.

68. Sugumaran G, Pisoni RL, and Silbert JE: Biosynthesis of proteochondroitin sulfate: Substrate requirements for formation of two independent species. Carbohyd Res 151:185-196, 1986.

69. Cogburn JN, and Silbert JE: The effect of penultimate N-acetylgalactosamine 4-sulfate on chondroitin chain elongation. Carbohyd Res 151:207-212, 1986.

70. Sugumaran G, Cogburn JN, and Silbert JE: Simultaneous sulfation of endogenous chondroitin sulfate and chondroitin-derived oligosaccharides: Studies with separate 4-sulfating and 6- sulfating microsomal systems. J Biol Chem 261:12659-12664, 1986.

71. Silbert JE, Palmer ME, Humphries DE, and Silbert CK: Formation of dermatan sulfate by cultured human skin fibroblasts: Effects of sulfate concentration on proportions of dermatan/chondroitin. J Biol Chem 261:13397-13400, 1986.

72. Keller R, Silbert JE, Furthmayr H, and Madri JA: Aortic endothelial cell proteoheparan sulfate: I. Isolation and characterization of plasma membrane-associated and extracellular species. Am J Pathol 128:286-298, 1987.

73. Sugumaran G, and Silbert JE: Sulfation of chondroitin: Specificity, degree of sulfation, and detergent effects with 4-sulfating and 6-sulfating microsomal systems. J Biol Chem 263:4673-4678, 1988.

74. Humphries DE, Silbert CK, and Silbert JE: Sulphation by cultured cells: Cysteine, cysteinesulphinic acid, and sulphite as sources for proteoglycan sulphate. Biochem J 252:305-308, 1988.

75. Humphries DE, and Silbert JE: Chlorate: A reversible inhibitor of proteoglycan sulfation. Biochem Biophys Res Commun 154:365-371, 1988.

76. Silbert CK, Palmer ME, Humphries DE, and Silbert JE: Production of [$^3$H]hexosamine-labeled proteoglycans by cultures of normal and diabetic skin fibroblasts: Dilution of exogenous [$^3$H]glucosamine by endogenous hexosamine from glucose and other sources. Arch Biochem Biophys 268:393-397, 1989.

77. Sugumaran G, and Silbert JE: Biosynthesis of chondroitin sulfate: Organization of sulfation. J Biol Chem 264:3864-3868, 1989.

78. Baldwin CT, Silbert JE, Humphries DE, Cogburn JN, and Smith BD: Increased proteoglycan synthesis following the differentiation of F9 embryonal carcinoma cells: Formation of a differentiation-specific proteoheparan sulfate. Matrix 9:389-396, 1989.

79. Silbert JE, Gill PJ, Humphries DE, and Silbert CK: Cell surface proteoheparan sulfate: Structure/function relationships. Ann NY Acad Sci 556:51-60, 1989.

80.  Silbert DI, Gill PJ, Humphries DE, Silbert JE, Culp LA, and Silbert CK: Glycosaminoglycans of bovine aorta endothelial cells: Identification and localization by use of a platelet factor 4- fluorescein probe. J Histochem Cytochem 38:589-593, 1990

81. Sugumaran G, and Silbert JE: Relationship of sulfation to ongoing chondroitin polymerization during biosynthesis of chondroitin 4-sulfate by microsomal preparations from cultured mouse mastocytoma cells. J Biol Chem 265:18284-18288, 1990.

82. Silbert CK, Humphries DE, Palmer ME, and Silbert JE: Effects of sulfate deprivation on the production of chondroitin/dermatan sulfate by cultures of skin fibroblasts from normal and diabetic individuals. Arch Biochem Biophys 285:137-141, 1991.

83. Sugumaran G, and Silbert JE: Subfractionation of chick embryo epiphyseal cartilage Golgi: Localization of enzymes involved in the synthesis of the polysaccharide portion of proteochondroitin sulfate. J Biol Chem 266:9565-9569, 1991.

84.  Sugumaran G, and Silbert JE: Formation of two species of nascent proteochondroitin in separate loci of a microsomal preparation from chick embryo epiphyseal cartilage. Biochem J 277:787-793, 1991.

85. Sugumaran G, Katsman, M, and Silbert JE: Effects of brefeldin A on the synthesis of chondroitin 4-sulfate by cultures of mouse mastocytoma cells. Biochem Biophys Res Commun 183:357-361, 1992.

86. Sugumaran G, Katsman, M, and Silbert JE: Effects of brefeldin A on the localization of chondroitin sulfate-synthesizing enzymes: Activities in subfractions of the Golgi from chick embryo epiphyseal cartilage. J Biol Chem 267: 8802-8806, 1992.

87. Sugumaran G. and Silbert JE: Effects of detergent on the sulphation of chondroitin by cell- free preparations from chick embryo epiphyseal cartilage. Biochem J 285:577-583, 1 992.

88. Silbert JE, Sugumaran G, and Cogburn, JN: Sulfation of proteochondroitin and 4-methylumbelliferyl b-D-xyloside-chondroitin formed by mouse mastocytoma cells cultured in sulfate-deficient medium. Biochem J 296:119-126, 1993.

89. Kokenyesi R, and Silbert JE: Formation of heparan sulfate or chondroitin/dermatan sulfate on recombinant domain I of mouse perlecan expressed in Chinese hamster ovary cells. Biochem Blophys Res Commun 211:262-267, 1995.

90. Kawasaki H, Sugumaran G, and Silbert JE: Cell surface glycosaminoglycans are not involved in the adherence of Helicobacter Pylori to cultured Hs 198.St human gastric cells, Hs 746T human gastric adenocarcinoma cells, or Hela cells. Glycoconj J, 13:873-877, 1996.

91. Silbert JE: Organization of glycosaminoglycan sulfation in the biosynthesis of proteochondroitin sulfate and proteodermatan sulfate. Glycoconj J, 13:907-912, 1996.

92. Kokenyesi R, and Silbert JE: Immortalized cloned mouse chondrocytes (MC 615) produce three different matrix proteoglycans with core protein-specific chondroitin/dermatan sulfate structures. Biochem J, 327:831-839, 1997.

93. Sugumaran G, Katsman M, and Silbert JE: Subcellular co-localization and potential interaction of glucuronosyl transferases with nascent proteochondroitin sulfate at Golgi sites of chondroitin synthesis. Biochem J, 329:203-208, 1998.

94. Elliott-Bryant R, Silbert JE, and Sugumaran G: Serum amyloid A, an acute-phase protein, modulates proteoglycan synthesis in cultured murine peritoneal macrophages. Biochem Biophys Res Com 261:298-301, 1999.

95.     Kobayashi M, Sugumaran G, Liu J. Shworak NW, Silbert JE, and Rosenberg R: Molecular cloning and characterization of a human uronyl 2-sulfotransferase that sulfates iduronyl and glucuronyl residues in dermatan/chondroitin sulfate. J Biol Chem, 274:19474-19480, 1999.

Jeremiah Silbert    Publications in the Last 10 Years

95. Rong Y, Sugurnaran G. Silbert JE, and Spector M: Proteoglycans synthesized by canine intervertebral disc cells grown in a type I collagen glycosarninoglycan matrix. Tiss Engr, 8: 1037-1047, 2002.

Silbert JE, and Sugumaran G: Biosynthesis of chondroitin/dermatan sulfate. IUBMB Life, 54, 1-10, 2002.

Silbert JE, and Sugurnaran G: Proteoglycans: Genetic Manipulation in Intact Organisms-On the Road to Function - A starting place for the road to function. Glycoconj J, 19: 227-237, 2003.

96. Mroz PJ, and Silbert JE: Effects of [$^3$H]glucosamine concentration on [$^3$11]chondrotin sulphate formation by cultured chondrocytes. Biochem J, 376:511-515, 2003.

97. Mroz PJ, and Silbert JE: Use of $^3$H-glucosamine and $^{35}$S-sulfate with cultured human chondrocytes to determine the effect of glucosamine concentration on formation of chondroitin sulfate. Arthritis Rheum, 50:3574-3579, 2004.

99. Blinn CM, Dibbs ER, Hronowski LJJ, Vokonas PS, and Silbert JE: Fasting serum sulfate levels before and after development of osteoarthritis in participants of the Veterans Administration Normative Aging Longitudinal Study do not differ from levels in participants in whom osteoarthrits did not develop. Arthritis Rheum, 52:2808-2813, 2005.

100. Biggee BA, Blinn CM, McAlindon TE, Nuite M, and Silbert JE: Low levels of human serum glucosamine after ingestion of glucosamine sulphate relative to capability for peripheral effectiveness. Ann Rheum Dis. 65:222-226, 2006.

101. Blinn CM, Biggee BA, McAlindon F, Nuite M, and Silbert JE: Sulfate and osteoarthritis: Decrease of serum sulfate levels during a three hour fast and during a three hour glucose tolerance test. Ann Rheum Dis. 65:1223-1225, 2006.

102. Biggee BA, Blinn CM, Nuite M, Silbert JE, and McAlindon TE: Effects of oral glucosamine sulphate on serum glucose and insulin during an oral glucose tolerance test of subjects with osteoarthritis. Ann Rheum Dis. 66:260-262, 2007.

103. Biggee BA, Blinn CM, Nuite M, McAlindon TE, and Silbert JE: Changes in serum levels of glucosamine and sulphate after ingestion of glucosamine sulphate with and without simultaneous ingestion of glucose. Ann Rheum Dis. 66:1403-1404, 2007.

104. Silbert JE: Dietary glucosamine under question. Glycobiology, 19:564-567-2009

105. Silbert JE: Glycosaminoglycan metabolism before molecular biology: reminiscences of our early work. Glycoconj J, 27:201-209, 2010.

Other Publications

Silbert JE: Metabolism of polysaccharides containing glucuronic acid. In: Dutton GJ, Ed, Glucuronic Acid: Free and Combined. New York, Academic Press, 1966, pp 385-453.

Silbert JE: Animal systems synthesizing mucopolysaccharides. Meth Enzymol 8:491-495, 1966

Silbert JE, DeLuca S, and Spencer AF: Biosynthesis of chondroitin sulfate: Involvement of an enzyme complex in formation of chondroitin 6-sulfate. In: Balazs EA and Tristram GR, Eds, Chemistry and Molecular Biology of the Intercellular Matrix I, Vol II, London, Academic Press, 1970, pp 929-934.

Silbert JE: Biosynthesis of heparin. In: Balazs EA and Tristram GR, Eds, Chemistry and Molecular Biology of the Intercellular Matrix I, Vol II, London, Academic Press, 1970, pp 9 9 1-1 004.

Silbert JE, and DeLuca S: Glycosaminoglycan-degrading enzyme from tadpole: Differences in activity toward chondroitin 4-sulfate and chondroitin 6-sulfate. In: Balazs EA and Tristram GR, Eds Chemistry and Molecular Biology of the Intercellular Matrix I, Vol III, London, Academic Press, 1970, pp 1707-1710.

Silbert JE: Mucopolysaccharides of ground substance. In: Fitzpatrick TB, Arndt KA, Clark WH Jr, Eisen AZ, Van Scott EJ and Vaughan JH, Eds, Dermatology in General Medicine, New York, McGraw Hill, 1971, pp 175-183.

Silbert JE: Biochemistry and metabolism of the mucopolysaccharides. Bull Rheum Dis 22:680-685, 1972.

Silbert JE: Biosynthesis of mucopolysaccharides and protein polysaccharides. In: Tamayo RP and Rojkind M, Eds, Molecular Pathology of Connective Tissues, New York, Marcel Dekker, 1973, pp 323-353.

Silbert JE: Catabolism of mucopolysaccharides and protein polysaccharides. In: Tamayo RP and Rojkind M, Eds, Molecular Pathology of Connective Tissues, New York, Marcel Dekker, 1973, pp 354-373.

Silbert JE, Kleinman HK, and Silbert CK: Heparin and heparin-like substances of cells. In: Bradshaw RA and Wessler S, Eds, Heparin, New York, Plenum Press, 1975, pp 51-60.

Silbert JE: Ground substance. In: Shaw JE, Sweeney EA, Cappuccino CC and Meller SM, Eds, Textbook of Oral Biology, Philadelphia, WB Saunders, 1978, pp 453-469.

Silbert JE: Connective tissue change in the elderly. In: Toga C, Nandy K and Chauncey HH, Eds, Geriatric Dentistry: Clinical Application of Selected Biomedical and Psychosocial Topics, Lexington, Lexington Books, 1979, pp 47-56.

Silbert JE: Mucopolysaccharides of ground substance. In: Fitzpatrick TB, Clark WH Jr, Eisen AZ, Austen KF, Freedberg IM, and Wolff K, Eds, Dermatology in General Medicine, 2nd Edition, New York, McGraw Hill, 1979, pp 189-195.

9

Silbert JE, Yurt BW, and Austen KF: Heparin from rat peritoneal mast cells. In: McDuffie N, Ed, Heparin: Structure, Cellular Functions, and Clinical Applications, New York, Academic Press, 1979, pp 67-78.

Silbert JE, Gill PJ, and Silbert CK: Heparan sulfate in cell attachment. In: Yamakawa T, Osawa T, and Handa S, Eds, Glycoconjugates, Tokyo, Japan Scientific Societies Press, 1981, pp 369-370.

Silbert JE: Structure and metabolism of proteoglycans and glycosaminoglycans. J Invest Dermatol 79:31S-37S, 1982.

Silbert JE: Proteoglycans and glycosaminoglycans. In: Goldsmith LA, Ed, Biochemistry and Physiology of the Skin, Oxford University Press, 1983, Vol I, pp 448-461.

Silbert CK, Nesbitt JP, and Silbert JE: Inhibition of platelet aggregation by removal of heparan sulfate. In: Chester MA, Heinegard D, Lundblad A, and Svensson S, Eds, Glycoconjugates, Rahms; Lund, Sweden, 1983, pp 824-825.

Bosse' R, Ekerdt DJ, and Silbert JE: The Veterans Administration Normative Aging Study. In: Mednick SA, Harway M, and Finello KM, Eds, Handbook of Longitudinal Research; Vol. 2, Teenage and Adult Cohorts, Praeger, New York, 1984, pp 273-289.

Cogburn JN, and Silbert JE: The effect of penultimate N-acetylgalactosamine 4-sulfate on chondroitin chain elongation. In: Davidson EA, Williams JC, and DiFerrante NM, Eds, Glycoconjugates, Praeger, New York, 1985, pp 299-300.

Humphries DE, Silbert CK, and Silbert JE: Proteoglycan production by cultures of bovine aorta endothelial cells in sulfate-depleted medium. In: Davidson EA, Williams JC, and DiFerrante NM, Eds, Glycoconjugates, Praeger, New York, 1985, pp 305-306.

Sugumaran G, Pisoni RL, and Silbert JE: Biosynthesis of two species of proteochondroitin sulfate: Evidence for the absence of a precursor-product relationship. In: Davidson EA, Williams JC, and DiFerrante NM, Eds, Glycoconjugates, Praeger, New York, 1985, pp 337-338.

Silbert JE: Glycosaminoglycans and proteoglycans of skin. In: Fitzpatrick TB, et al., Eds, Dermatology in Internal Medicine, Third Edition, New York, McGraw-Hill, pp 314-321, 1986.

Silbert JE: Advances in the biochemistry of proteoglycans. In: Uitto J, and Perejda AF, Eds, Diseases of Connective Tissue: The Molecular Pathology of the Extracellular Matrix, Marcel Dekker, New York, 1986, pp 83-98.

Sugumaran G, Humphries DE, and Silbert JE: Microsomal sulfation of proteochondroitin, chondroitin and chondroitin oligosaccharides. Meth Enzymol 179:422-427, 1989.

Humphries DE, Sugumaran G, and Silbert JE: Techniques to decrease proteoglycan sulfation in cultured cells. Meth Enzymol 179:428-434, 1989.

Silbert JE: Connective tissue in compressive radiculopathy: New Issues Neurosci 2:329-334, 1990.

Silbert JE: Relationship of sulfation to glycosaminoglycan polymerization in biosynthesis of proteochondroitin sulfate. TIGG 3:343-351, 1991.

Silbert JE: Glycosaminoglycans and proteoglycans of skin. In: Fitzpatrick TB, et al, Eds, Dermatology in Internal Medicine, 4th Edn, New York, McGraw-Hill, 1993, pp 350-358.

Silbert JE, Silbert CK, Humphries DE, and Sugumaran G: Role of sulphation in dermatan formation. In: Scott JE, Ed, Dermatan Sulphate Proteoglycans: Chemistry, Biology, and Chemical Pathology, Portland Press, London, 1993, pp 147-157.

Silbert JE, and Sugumaran G: Intracellular membranes in the synthesis, transport, and metabolism of proteoglycans. Biochim Biophys Acta, 1241:371-384, 1995.

Silbert JE, Bernfield M, and Kokenye:;i R: Proteoglycans: a special class of glycoproteins. In: Montreuil H, Schachter H, and Vliegenthart JFG, Eds, Glycoproteins II, Elsevier, Amsterdam, 1997, pp 1-31.

Silbert JE: Modifications of proteodermatan/chondroitin sulfation and its potential for affecting scarring. In: Garg HG and Longaker MT, Eds, Scarless Wound Healing, Marcel Dekker, New York. pp 23-36. 2000.

Sugumaran G, and Silbert JE: Particulate and soluble glycosaminoglycan-synthesizing enzymes: Preparation, assay, and use. In: Iozzo RV, Ed, Proteoglycan Protocols, Humana Press, Totowa NJ. pp 103-116. 2001.

Silbert JE, and Sugumaran G: Biosynthesis of chondroitin/dermatan sulfate. IUBMB Life, 54, 1-10, 2002.

Silbert JE, and Sugumaran G: Proteoglycans: Genetic Manipulation in Intact Organisms-On the Road to Function - A starting place for the road to function. Glycoconj J, 19: 227-237, 2003.

# EXHIBIT W

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV11-08276 JAK (PLAx) | Date | August 7, 2013 |
| Title | Natalie Pappas v. Naked Juice Co of Glendora, Inc., et al. | | |

Present: The Honorable    JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE

| Andrea Keifer | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

Proceedings:    (IN CHAMBERS) ORDER RE MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT (DKT. 119)

## I.    Introduction

In 2011, five separate, putative class actions were brought against Naked Juice Co. of Glendora, Inc. ("Defendant"); each alleged that Defendant misrepresented various beverage products as "All Natural," "100% Juice," "100% Fruit," "From Concentrate," and "Non-GMO," among other things, in violation of state and federal law. Dkt. 119, pp. 2-3. The five cases were consolidated into this action on February 6, 2012. Dkt. 35. Lead counsel for the putative class members was designated by the Court on March 5, 2012. Dkt. 38. After extensive negotiations overseen by a mediator, the parties reached a settlement. They now bring this motion for preliminary approval of the class action settlement (the "Motion"). Dkt. 119. One of the original plaintiffs, Sara Sandys, objected to the proposed settlement. Dkt. 131. The Court conducted a hearing on this matter on July 29, 2013 and called for supplemental briefing as to certain issues. Dkt. 140. That briefing was submitted. Dkt. 137, 139, 141, 142. Sandys has not filed any further objections to the supplemental briefing. For the reasons stated in this Order, the Motion is GRANTED.

## II.    Factual and Procedural Background

As noted, this proceeding is the result of the consolidation of five separate, putative class actions initiated by five distinct plaintiffs. The actions were consolidated on February 6, 2012, with the *Pappas* case designated as the "Lead Case." Dkt. 35. Lead class counsel was designated on March 5, 2012. Dkt. 38. Plaintiffs then filed a Consolidated Class Action Complaint ("CAC") on March 19, 2012. Dkt. 40. Defendant filed a motion to dismiss the CAC. Dkt. 41. Defendant's motion to dismiss was granted in part, *i.e.*, with respect to the labels "100% Juice" and "From Concentrate," and Plaintiffs' federal warranty claims, but was denied as to the remaining claims. Plaintiffs then filed a Consolidated First Amended Complaint on June 5, 2012. Dkt. 63. It is the operative complaint in these actions.

The parties engaged in substantial document discovery over the course of several months. Certain discovery disputes arose that led to several motions to compel that were presented to Magistrate Judge

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV11-08276 JAK (PLAx) | Date | August 7, 2013 |
|----------|--------------------------|------|----------------|
| Title | Natalie Pappas v. Naked Juice Co of Glendora, Inc., et al. | | |

Abrams. Dkt. 119, p. 5. Plaintiffs estimate that they received approximately 75,000 pages of documents from Defendant and an additional terabyte of electronic information through non-party discovery. *Id.* Plaintiffs' counsel also undertook substantial work preparing for class certification. *Id.* at 6.

Following the completion of this discovery, the parties began settlement negotiations. These discussions were overseen and facilitated by Judge Carl J. West, who retired from the bench after extensive service on the Los Angeles County Superior Court, which included presiding over many class action cases. The parties attended their first session with Judge West on October 10, 2012. *Id.* The first mediation did not result in settlement. *Id.* The parties attended a second mediation session with Judge West in December 2012. *Id.* The second mediation did not result in settlement. *Id.* The parties attended a third mediation session with Judge West in January 2013, at which they reached an agreement in principle. *Id.* The parties then spent the next several months finalizing the terms of their agreement and reducing it to writing. *Id.* Due to certain disputes that arose during this process, the parties attended a fourth session with Judge West in May 2013. *Id.* As a result, the parties were able to finalize their written agreement on July 2, 2013. *Id.* at 6-7.

III.    **The Terms of the Proposed Settlement**

A.    **Settlement Class**

The proposed Settlement Class is defined as: "All persons and entities in the United States who purchased one or more of the Eligible Products[1] from September 27, 2007 up to and including the Notice Date."[2] Dkt. 119, p. 18. The parties contend that this Class should be certified for settlement purposes because it meets the requirements of Rule 23. *Id.*

B.    **Settlement Fund**

Under the terms of the proposed settlement, Naked Juice will pay $9 million to a Settlement Fund. Dkt. 119, p. 7. The Settlement Fund will be applied to the following: cash payments to Class Members; the costs of notice and settlement administration; payment of any attorney's fees and expenses awarded by the Court; and payment of any incentive awards to named Plaintiffs that are approved by the Court. *Id.* Defendant is not entitled to a reversion of any residual funds; any such funds will be distributed to certain, specified non-profit organizations under the *cy pres* doctrine. *Id.*

---

1. The "Eligible Products" are a list of Naked Juice products, set forth in Paragraph 14 of the Stipulation of Settlement. *See* Dkt. 118, ¶ 14.
2. Excluded from the Class are (a) all persons who are employees, directors, officers, and agents of Naked Juice or PepsiCo or their subsidiaries and affiliated companies; (b) persons or entities who purchased the Eligible Products primarily for the purposes of resale; (c) governmental entities; (d) persons who timely and properly exclude themselves from the Class as provided in this Stipulation of Settlement; (e) persons who purchased the Eligible Products via the Internet or other remote means while not residing in the United States; and (f) the Court, the Court's immediate family, and Court staff.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

### CIVIL MINUTES – GENERAL

| | | | |
|---|---|---|---|
| Case No. | LA CV11-08276 JAK (PLAx) | Date | August 7, 2013 |
| Title | Natalie Pappas v. Naked Juice Co of Glendora, Inc., et al. | | |

#### C.  Payments to Class Members

To qualify for a cash payment, a Class Member must complete and submit a short Claim Form. It can be submitted either by U.S. Mail or on the Settlement Website: www.NakedJuiceClass.com. *Id.* Class Members with a proof of purchase, *i.e.*, a receipt or other documentation showing the purchase of Eligible Products during the Class Period, are eligible to receive full reimbursement of the amounts paid for the purchase of the Eligible Products, up to a maximum of $75.00. *Id.* at 7-8. Class Members who do not have proof of purchase are eligible to receive payments between $5.00 and $45.00, depending on the amount paid at retail for the Eligible Products. *Id.* at 8.

#### D.  Attorney's Fees

Plaintiffs' counsel will apply to the Court for an award of attorney's fees and litigation costs in an amount not to exceed $3,120,000. *Id.* at 11. Plaintiffs' counsel will file an application for a fee award on or before October 18, 2013. *Id.*

#### E.  Incentive Awards for Lead Plaintiffs

Plaintiffs' counsel will apply for incentive awards in the amount of $2,500 for Plaintiffs Pappas, Marchewka, Park, and Evans. *Id.*[3]

#### F.  *Cy Pres* Awards

If after all the foregoing amounts are paid, and residual funds remain in the Settlement Fund, all such funds will be distributed to the following nonprofit organizations in the relative shares that are stated for each: Mayo Clinic (50%); National Association of IOLTA Programs ("NAIP") (25%); and equal, pro rata shares to seven legal aid organizations (combined 25%). *Id.* at 8.

#### G.  Injunctive Relief

The settlement also imposes injunctive relief as to Naked Juice. Thus, Defendant will:
- Redesign the products' labels, marketing, and advertising to eliminate the use of the "All Natural" language on future labels and marketing materials and media, and substantiate the "Non-GMO" claim, which Plaintiffs alleged were false and misleading.
- Establish, for at least three years, a verification program through an independent testing organization to confirm the accuracy of the "Non-GMO" statement on Naked Juice product labels. The program will involve, among other things, periodic testing of finished product to confirm the accuracy of the Non-GMO statement on the product label.

---

3. The settlement does not provide for an award to the fifth original plaintiff, Sara Sandys. There is no evidence presented that she was involved in the settlement negotiation process. Sandys states that she asked the Interim Co-Lead Class Counsel to provide her drafts of settlement papers, but that they were not sent to her. *See* Dkt. 131, p. 3 fn. 1-2. She has made no request for an incentive award.

Case 1:13-cv-07972-RA Document 13-2 Filed 09/04/13 Page 5 of 7 PageID #: 2192
Case 1:13-cv-07972-RA Document 25-9 Filed 03/27/2014 Page 5 of 7 Page ID #: 2192
Case: 14-1198     Document: 25-9     Filed: 03/27/2014     Pages: 35

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV11-08276 JAK (PLAx) | Date | August 7, 2013 |
|---|---|---|---|
| Title | Natalie Pappas v. Naked Juice Co of Glendora, Inc., et al. | | |

- Hire or assign, for a period of at least five years, a quality control manager to oversee the independent testing process for the Naked Juice product line.
- Establish and maintain a database to electronically track and verify product ingredients for the Naked Juice line.

*Id.* The settling parties contend that the cost of these actions will be approximately $1.4 million and that this amount should be included in the overall value of the settlement. *Id.* at 9-10; *see* Theodore Decl., Dkt. 118, Exh. H, ¶¶ 4-7.

### H.  Notice Procedures

The notice plan was designed by experts with substantial experience in this field. The plan resulted from negotiations between the parties. Dkt. 119, p. 10.

The primary means of providing notice will be through online banner and pop-up advertisements,[4] which will be displayed on relevant websites through two Internet ad agencies.[5] *Id.* at 10-11; Vasquez Decl., Dkt. 118, Exh. I, ¶ 40. Those advertisements will contain links to the Settlement Website, www.NakedJuiceClass.com. *See* Dkt. 139, Exh. A. In addition, there will be a sponsored link to the Settlement Website on various search engines that will appear when users search for keywords related to the campaign. *See* Vasquez Decl, Dkt. 118, Exh. I, ¶¶ 37-38.

There will also be a print notice program. The Summary Notice will be published in *Parade* and *People* magazines and *USA Today. Id.* at ¶ 32. The publication in *People* will be nationwide, while the publications in *Parade* and *USA Today* will only appear in publications that are distributed in California, other western states, and certain northeast states. *Id.* The publications and geographic locations of such advertisements were selected based on a demographic analysis of where likely Class Members reside. *Id.* The Long Form Notice will be available at the settlement website and through a toll-free number. *Id.* at ¶¶ 45, 47. The parties estimate that the notice program will reach at least 85% of the Class Members, and that each such member will be reached at least three times during the notice process. Dkt. 119, p. 11; *see* Dkt. 118, Exh. I, Exh. 7. Plaintiffs' counsel will also place links to the settlement website on their respective homepages for the entire notice period. Dkt. 119, p. 11.

---

4. The parties submitted a sample pop-up ad, which reads: "If You Purchased Naked Juice Products DATE XX, XXXX Through DATE XX, XXXX You May Be Entitled to Cash Compensation. You are eligible for up to $75 with proof of purchase, or up to $45 without. Call 1-XXX-XXX-XXXX or Click Here To Learn More." Dkt. 134, Exh. A. Users who see the pop-up ad and click on the link will be directed to the Settlement Website.
5. The ad campaign will target websites that are frequented by individuals who exhibit the demographic and consumer behavioral characteristics of the target audience of likely Naked Juice consumers. Vasquez Decl., Dkt. 118, Exh. I, ¶¶ 40-42. Throughout the settlement period, the ad agencies will evaluate the effectiveness of the campaign and make adjustments designed to increase the number of claims by targeting those websites that generate higher numbers of clicks and submitted claims. *Id.* at ¶ 44.

Case 1:11-cv-07972-PAC Document 113-12 Filed 09/04/13 Page 6 of 7 PageID# 2193
Case 1:11-cv-07972-PAC Document 113-12 Filed 09/04/13 Page 6 of 7 PageID# 2193
Case: 14-1198     Document: 25-9     Filed: 03/27/2014     Pages: 35

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV11-08276 JAK (PLAx) | Date | August 7, 2013 |
|---|---|---|---|
| Title | Natalie Pappas v. Naked Juice Co of Glendora, Inc., et al. | | |

### IV.    Analysis

#### A.  The Standard for Preliminary Approval

Fed. R. Civ. Proc. 23(e) requires a two-step process in considering the approval of a class action settlement. First, the Court must determine whether the proposed settlement warrants preliminary approval. Preliminary approval is appropriate where the proposed settlement is within the range of what might be found fair, reasonable and adequate. *See Acosta v. Trans Union*, 243 F.R.D. 377, 386 (C.D. Cal. 2007). Following preliminary approval, notification to class members, and the compilation of information as to any objections by class members, in the second step of the process, the Court is to determine whether final approval of the settlement should be granted.

Numerous factors apply in evaluating the fairness of a proposed class action settlement. In the Ninth Circuit, the following eight, non-exclusive factors may be considered:

1) the strength of the plaintiff's case;
2) the risk, expense, complexity, and likely duration of further litigation;
3) the risk of maintaining class action status throughout the trial;
4) the amount offered in settlement;
5) the extent of discovery completed and the stage of the proceedings;
6) the experience and view of counsel;
7) the presence of a governmental participant; and
8) the reaction of the class members to the proposed settlement.

*See Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998). Each factor does not necessarily apply to every class action settlement. In determining whether preliminary approval is warranted, the Court is to decide whether the proposed settlement has the potential to be deemed fair, reasonable and adequate in the final approval process.

#### B.  Application

An initial application of the foregoing factors to the evidence presented in the Motion demonstrates that the Motion should be granted. The parties and their experienced counsel have engaged in extensive, arms-length negotiations before a sophisticated neutral who has substantial experience in overseeing class action proceedings. Such a process is likely to produce a settlement that fairly addresses the strength of Plaintiffs' case, the risks and expense of continued litigation, and the risks associated with maintaining class action status throughout a trial. In addition, the proposed settlement of $9 million, plus the injunctive relief valued at $1.4 million, is within the reasonable range of recovery for this case.[6] In addition, the parties engaged in substantial discovery, which supports a finding that the settlement is reasonable when measured against both the strength of Plaintiffs' case and the risks of continued litigation.

---

6. The Court has assessed the amount in light of information submitted under seal regarding Defendant's net profits with respect to the sales that underlie the claims in this case.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

| Case No. | LA CV11-08276 JAK (PLAx) | Date | August 7, 2013 |
|---|---|---|---|
| Title | Natalie Pappas v. Naked Juice Co of Glendora, Inc., et al. | | |

As noted, Sara Sandys, has objected to the proposed settlement on three principal bases. Dkt. 131. None is persuasive.

*First*, Sandys objects to the $3,120,000 in attorney's fees and costs that Plaintiffs' counsel plans to seek upon a motion for final approval. Sandys contends that this amount is too high, considering the total amount of the award and the costs that will be incurred in notice and administration. *Id.* at 4. The precise amount of fees that will be awarded will not be determined until later in the proceedings. At that time, the Court will undertake the required analysis, using lodestar and other methodologies. For purposes of the Motion, the amount sought, which is approximately one-third of the total claimed value of the settlement, is not *per se* unreasonable or greater than the percentage of fees and costs awarded in other consumer products class actions.

*Second*, Sandys argues that the *cy pres* recipients are improper. *Id.* at 5-7. She argues that the work of the organizations selected is not sufficiently related to the types of consumer claims at issue in this case. *Id.* The other Plaintiffs argue that the *cy pres* recipients are proper under *Dennis v. Kellogg Co.*, 697 F.3d 858, 865 (9th Cir. 2012). Dkt. 132, p. 7. The Court finds that the *cy pres* recipients are sufficiently related to the underlying claims to warrant their receipt of potential *cy pres* awards. Plaintiffs submitted declarations from each of the legal aid *cy pres* recipients, as well as NAIP, stating that the funds will be used for consumer protection work. *See, e.g.*, Scruggs Decl., Dkt. 126, ¶ 6 ("NAIP intends to direct *cy pres* funds . . . to legal aid programs and organizations in the strongest position to carry out consumer protection cases, including unfair and deceptive trade practices and false advertising cases."); Cypen Decl., Dkt. 127, ¶ 6 ("LSGMI intends to employ *cy pres* funds to protect consumers from false advertising and deceptive business practices, and promote consumer protection."). The Mayo Clinic performs substantial work educating the public on nutrition, vitamins, and food and beverage labels. Melvin Decl., Dkt. 119-5, ¶¶ 3-8. The Mayo Clinic states that it will use any funds to "support its nationwide education and research efforts around nutrition, vitamins, and food and beverage labels." *Id.* at ¶ 13.

*Third*, Sandys challenges the sufficiency of the notice that will be provided to Class Members. Dkt. 131, p. 7-9. She argues that the settlement provides notice only to potential class members in certain regions of the country, including through publications distributed in California, other western states and certain states in the northeast. *Id.* p. 8. In addition, she argues that there is no requirement of notice appearing on the home page of Naked Juice – www.NakedJuice.com. Instead, as noted, all settlement publications will appear on a special, settlement website – www.NakedJuiceClass.com. *Id.* p. 9. The other Plaintiffs argue that the notice plan targets "a population fitting the demographics of likely purchasers of Naked Juice." Dkt. 132, p. 12. The parties' Internet advertising campaign, which is the primary means for reaching Class Members, is not limited to particular geographic areas. And, it is sophisticated and designed to target likely Class Members. That the print notice will not appear in all geographic areas does not make the overall effort inappropriate or insufficient. These specific geographic areas are ones that have been identified as where a significant portion of the potential claimants live. Further, given that the core of notice effort is by the Internet through sophisticated methods of directing notice to the targeted class members, the selection of specific geographic areas for print notice is reasonable. The parties also explained, at the July 29, 2013 hearing, that their decision not to place information or a link to the settlement website on the Naked Juice website was the result of compromise among the parties, and was premised on experience that such notice is not particularly effective, and not more effective than the

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

## CIVIL MINUTES – GENERAL

| Case No. | LA CV11-08276 JAK (PLAx) | Date | August 7, 2013 |
|---|---|---|---|
| Title | Natalie Pappas v. Naked Juice Co of Glendora, Inc., et al. | | |

notice methods that have been selected. *See* Hearing Trans., Dkt. 135, pp. 20-21. In light of all of the elements of the notice process, Sandys' objections are unpersuasive.

### V.    Conclusion

For the foregoing reasons, the Motion is GRANTED. On or before August 14, 2013, the parties shall submit a stipulation and proposed order regarding their proposed schedule for completion of the notice and settlement approval process.

**IT IS SO ORDERED.**

_____ : _____

Initials of Preparer          ak

# EXHIBIT X

**Exhibit X**

**Examples of Cases in Which Darrell Palmer Has Filed Objections and Dismissed, Abandoned, or Withdrawn the Objections or Appeal Without Attaining Settlement Changes or Additional Benefits for the Class**

| | Case | Client(s) | Outcome of Objection | Appeal | Outcome of Appeal |
|---|------|-----------|---------------------|--------|-------------------|
| 1 | *Arthur v. Sallie Mae, Inc.*, No. 10-CV-00198 (W.D. Wash.) | Judith Harper, Patrick Sweeney, and Sasha McBean | Palmer's clients filed an objection to the settlement on 12/13/10 [D.E. 67] and intervened on 07/01/2011 [D.E. 157]. After a new settlement was reached, Palmer filed a motion for attorneys' fees on 05/17/2012 [D.E. 232].<br><br>On 8/20/2012, the plaintiffs moved to revoke the order granting Palmer's *pro hac vice* application due to misrepresentations Palmer made therein [D.E. 251]. When addressing Palmer's motion for attorneys' fees at the 9/14/12 hearing, Judge James L. Robart stated: "First of all, many of [Palmer's] motions since the motion to intervene have been rejected by the court, suggesting that the actions were to disrupt and delay, which is consistent with the fact that Mr. Palmer is a, and I'll use the phrase 'professional' not in any favorable sense, objector. I believe that he has previously been labeled that by one of my colleagues." [D.E. 268 (9/14/12 Hearing Tr.) at 16:8-14]. On 9/14/12, the court revoked Palmer's *pro hac vice* admission [D.E. 264].<br><br>Final approval granted and attorneys' fees awarded 9/17/12 [D.E. 265, 266, 267]. | Not filed | Not applicable |
| 2 | *Berger v. Property I.D. Corp.*, No. CV 05-5373 (C.D. Cal.) | Joseph Palmer (actually Darrell Palmer, appearing *pro se*, under his first name) | Award of fees, to which Palmer had objected, granted on 1/28/09 [D.E. 899] and final approval granted in separate order also dated 1/28/09 [D.E. 900]. Neither order mentioned any objections. | Not filed. | Not applicable. |
| 3 | *Browning v. Yahoo! Inc.*, No. C04-01463 | Norman Palmer, Richard Oster, and Jeff | Objections filed 5/16/07 [D.E. 159, 161, 162]. | Notice of Appeal filed 12/14/07 [D.E. 205] (9th | Voluntarily dismissed 5/2/08 [A.D.E. 12]. |

1

**Exhibit X**

**Examples of Cases in Which Darrell Palmer Has Filed Objections and Dismissed, Abandoned, or Withdrawn the Objections or Appeal Without Attaining Settlement Changes or Additional Benefits for the Class**

| | Case | Client(s) | Outcome of Objection | Appeal | Outcome of Appeal |
|---|---|---|---|---|---|
| | (N.D. Cal.) | Heinrichs | Palmer's objection was overruled 11/16/07, *see* 2007 WL 4105971. | Cir., No. 07-17326). Appeal filed 12/20/07 [A.D.E. 1]. | |
| 4 | *City of Greenville v. Syngenta Crop Protection, Inc.*, No. 3:10-cv-00188 (S.D. Ill.) | Public Water Supply District 1 of Clinton County, Missouri and Nocona Water Department | Objection filed 09/06/12 [D.E. 317]. The court struck Palmer's objection on 09/13/12 because he failed to comply with the court's electronic filing rules and the class notice's instructions and deadline for filing objections [D.E. 320]. | None filed. | Not applicable. |
| 5 | *Embry v. Acer Am. Corp.*, No. 09-cv-1808-JW (N.D. Cal.) | Christopher Bandas | Objection filed 1/23/12 [D.E. 199]. Final approval of settlement granted 2/14/12 [D.E. 218]. | Notice of Appeal filed 3/12/12 [D.E. 222] (9th Cir., No. 12-15555). Appeal filed 3/14/12 [A.D.E. 1]. | On 7/31/12, then-Chief Judge James Ware issued an order requiring objector Bandas to either post an appellate bond in the amount of $70,650 or file a notice of dismissal of his appeal [D.E. 265]. Bandas sought a stay of the order, which the court denied on 8/22/12 [D.E. 272]. On 8/29/12, Judge Ware found Bandas in contempt and struck his objection, 2012 WL 3777163. Bandas appealed that order on 9/6/12 [D.E. 276]. Plaintiffs filed a motion for sanctions against Bandas on 9/28/12 [D.E. 277]. On 10/2/12, the Ninth Circuit |

**Exhibit X**

**Examples of Cases in Which Darrell Palmer Has Filed Objections and Dismissed, Abandoned, or Withdrawn the Objections or Appeal Without Attaining Settlement Changes or Additional Benefits for the Class**

| | Case | Client(s) | Outcome of Objection | Appeal | Outcome of Appeal |
|---|---|---|---|---|---|
| 6 | *Friedman v. 24 Hour Fitness USA, Inc.*, No. CV 06-06282 AHM (CTx) (C.D. Cal.) | Toni Ozen | Objection filed 6/11/10 [D.E.543] and overruled 7/12/10 [D.E.579]. | Notice of Appeal filed 8/11/10 [D.E. 584]<br><br>Appeal filed 8/19/10 [A.D.E. 1] (9th Cir., No. 10-56289). | granted a motion by Bandas to dismiss his appeal [D.E. 280].<br><br>Stipulated dismissal 8/20/10 [A.D.E. 3]. |
| 7 | *Gemalas v. The Dannon Co., Inc.*, No. 1:08-cv-00236 (N.D. Ohio) | Steven P. Cope | Judgment, Final Order and Decree dated 6/24/10 [D.E. 71]. Palmer did not appeal.<br><br>When granting plaintiff's motion for an appeal bond on 8/31/10, Judge Dan Aaron Polster stated: "'The only objections to the settlement were lodged by what now appear to be 'serial objectors'" [D.E. 96 at 3]. | Not filed. | Not applicable. |
| 8 | *Herfert v. Crayola, LLC*, No. C11-1301 (W.D. Wash.) | Amber Pederson | Final approval granted and fees awarded 4/27/12 [D.E. 51].<br><br>Palmer applied to appear *pro hac vice* on behalf of an objector already represented by Christopher Bandas (another prolific professional objector) on 7/5/12 [D.E. 59]. | Notice of Appeal filed 5/14/12 [D.E. 54].<br><br>Appeal filed 5/15/12 [A.D.E. 1] (9th Cir., No. 12-35393). | Voluntarily dismissed 9/26/12 [A.D.E. 21].<br><br>On 8/17/12, District Court Judge John C. Coughenour found, in the underlying case, that "Mr. Palmer falsely declared under penalty of perjury that he had not been disbarred or formally censured by a court of record or by a state bar association" when he |

**Exhibit X**

**Examples of Cases in Which Darrell Palmer Has Filed Objections and Dismissed, Abandoned, or Withdrawn the Objections or Appeal Without Attaining Settlement Changes or Additional Benefits for the Class**

| | Case | Client(s) | Outcome of Objection | Appeal | Outcome of Appeal |
|---|---|---|---|---|---|
| | | | | | had been temporarily suspended from three state bars, including that of California, due to a felony conviction [D.E. 74 at 1]. |
| 9 | *Hoffman v. Citibank (South Dakota) N.A.,* No. CV-06-00571 (C.D. Cal.) | Joseph Balla; Andrew J. Cesare; and Todd Bates | Fees awarded 12/17/10 [D.E. 94] and 12/22/10 [D.E. 93] and settlement approved 12/22/10 [D.E. 95]. Objections not mentioned in the orders. | Notice of Appeal filed 1/12/11 [D.E. 98] Appeal filed 1/18/11 [A.D.E. 1] (9th Cir., No. 11-55085). | Voluntarily dismissed 3/23/11 [D.E. 106]. |
| 10 | *In re Broadcom Corp. Class Action Litig.,* No. 06-cv-5036 (C.D. Cal.) | Smokestack Lightening Ltd. "Marisco" | Order denying Palmer's objection and requiring $10,000 appeal bond filed on 8/11/10 [D.E. 356]. | Notice of Appeal filed 9/10/10 [D.E. 358]. Appeal filed 9/13/10 [A.D.E. 1] (9th Cir., No. 10-56435). | Voluntarily dismissed 11/4/10 [A.D.E. 8]. |
| 11 | *In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.,* No. 08-MD-01998 (W.D. Ky.) | Winfield C. Scott | Objection filed 6/28/10 [D.E. 212]. Memorandum Opinion on final approval and fees found objections to be without merit 8/23/10 [D.E. 297]. | Notice of Appeal filed 9/22/10 [D.E. 315] (6th Cir., No. 10-6194). | Voluntarily dismissed 12/2/10 [A.D.E. 006110805529]. |
| 12 | *In re Currency Conversion Fee Antitrust Litig.,* No. 01-md-1409 (S.D.N.Y.) | Richard Melton Construction, Inc. and Dirk F. Sutro | Objection filed 2/14/08 [D.E. 574]. Final approval granted and fees awarded on 10/22/09, *see* 263 F.R.D. 110. | Not filed. | Not applicable. |

**Exhibit X**

**Examples of Cases in Which Darrell Palmer Has Filed Objections and Dismissed, Abandoned, or Withdrawn the Objections or Appeal Without Attaining Settlement Changes or Additional Benefits for the Class**

| | Case | Client(s) | Outcome of Objection | Appeal | Outcome of Appeal |
|---|---|---|---|---|---|
| | | | There were 76 objectors to the settlement, some of whom sought fees. For each of their points, the court said the objections were either without merit or moot: "The objectors in this case did little to aid this Court. While there were modifications to the notice program, these modifications were entirely on the Court's initiative and devised by the Special Master and the parties. As for fees, the objections were so general and repetitive that they were of no assistance to an area with which this Court is intimately familiar." *Id.* at 132, *aff'd sub nom.*, *Priceline.com, Inc. v. Silberman*, 405 F. App'x 532 (2d Cir. 2010). | | Stipulated dismissal filed 9/10/09 [A.D.E. 0051920399]. |
| 13 | *In re Enron Corp. Secs. Litig.*, No. MDL-1446 & H-01-3624 (S.D. Tex.) | Larry Fenstad and Dorothy Lancaster McCoppin | Objection filed 2/1/08 [D.E. 5868].<br><br>On 9/8/08, all objections were overruled or found to be without merit in the order awarding fees, *see* 586 F. Supp. 2d 732, and the plan of allocation of the settlement proceeds, *see* 2008 WL 4178151. | Notice of Appeal filed 10/3/08 [D.E. 6038].<br><br>Appeal filed 10/9/08 [A.D.E. 0051422233] (5th Cir., No. 08-20648). | |
| 14 | *In re Hydroxycut Mktg. & Sales Practices Litig.*, Nos. 3:09-MD-2087 & 3:09-cv-01088 (S.D. Cal.) | Tim Blanchard and Sasha McBean | Objection filed 03/22/13 [D.E. 1640].<br><br>After the court ordered Palmer and his clients to appear at an evidentiary hearing, Palmer filed a motion to withdraw as attorney of record on 5/29/13 [D.E. 1663], stating that his clients had terminated his representation [D.E. 1663-1]. | Not applicable. | Not applicable. |
| 15 | *In re Int'l Rectifier Corp. Sec. Litig.*, No. 07- | Cascia II, LLC | Objection filed 1/25/10 [D.E. 304] and withdrawn 2/1/10 [D.E. 307]. | Not filed. | Not applicable. |

**Exhibit X**

**Examples of Cases in Which Darrell Palmer Has Filed Objections and Dismissed, Abandoned, or Withdrawn the Objections or Appeal Without Attaining Settlement Changes or Additional Benefits for the Class**

| | Case | Client(s) | Outcome of Objection | Appeal | Outcome of Appeal |
|---|---|---|---|---|---|
| | cv-02544 (C.D. Cal.) | | | | Voluntarily dismissed 1/5/11 [A.D.E. 16] |
| 16 | *In re Lifelock, Inc. Mktg. & Sales Practices Litig.*, No. 2:08-MD-01977 (D. Ariz.) | Billy Daniels | The final approval and fee order of 8/31/10 states: "[T]he Parties demonstrated in their Response to Objections that none of the asserted bases for objection is valid." [D.E. 218 at 9]. | Notice of Appeal filed 9/24/10 [D.E. 221].<br><br>Appeal filed 9/30/10 [A.D.E. 1] (9th Cir., No. 10-17177). | Voluntarily dismissed 1/5/11 [A.D.E. 16] |
| 17 | *In re Mercury Interactive Corp. Sec. Litig.*, No. 5:05-cv-03395 (N.D. Cal.) | Marshall J. Orloff *et al.* | Objection filed 1/13/11 [D.E. 401].  After plaintiffs responded to the objection [D.E. 403 & 404], Palmer's clients withdrew all objections on 2/25/11 [D.E. 412]. | Not filed. | Not applicable. |
| 18 | *In re Uponor, Inc., F1807 Plumbing Fittings Prod. Liab. Litig.*, Nos. 11-cv-2324 & 11-MD-2247 (D. Minn.) | Paul Palmer and Jeffrey Palmer | Motions for final approval of settlement and for attorneys' fees granted 6/29/12 (No. 11-cv-2324)] and judgment entered 7/9/12 [D.E. 73 (No. 11-cv-2324)].<br><br>On 9/11/12, the district court ordered the Palmer objectors to post an appeal bond and found that they "have evidenced bad faith and vexatious conduct" based in part on Darrell Palmer's failure to enter an appearance in the case [D.E. 76 at 5 (No. 11-cv-2324)].  The court also noted that Palmer "is believed to be a serial objector to other class-action settlements," *id.*, and that the "'Palmer Objectors' objections and subsequent appeal appear little more than dilatory tactics of questionable motivation," *id.* at 6. | Notice of Appeal filed 8/2/12 [D.E. 106 (11-MD-2247)] (8th Cir., No. 12-2824).<br><br>Appeal filed 8/3/12 [A.D.E. 3938976]. | The appeal was dismissed by the Eighth Circuit on 10/31/12 following the failure of two groups of objectors (including those represented by Darrell Palmer) to pay a $25,000 appeal bond, as ordered by the trial court on 9/11/12 [A.D.E. 3964259, 3970112]. |

Case 1:11-cv-07972   Document 113-25   Filed 09/04/13   Page 8 of 9   PageID 1896

**Exhibit X**

**Examples of Cases in Which Darrell Palmer Has Filed Objections and Dismissed, Abandoned, or Withdrawn the Objections or Appeal Without Attaining Settlement Changes or Additional Benefits for the Class**

| | Case | Client(s) | Outcome of Objection | Appeal | Outcome of Appeal |
|---|---|---|---|---|---|
| 19 | *In re Vitamins Antitrust Litig.*, Nos. 1:99-mc-00197 & MDL 1285 (D.D.C.) | Neil Freedman and Teri Cunningham | Objections found to be without merit in final approval order 6/25/10 [D.E. 4888]. | Notice of appeal filed 7/23/10 [D.E. 4889].<br><br>Appeal filed 7/29/10 [A.D.E.1258072] (D.C. Cir., No. 10-7096). | Stipulated dismissal entered 9/2/10 [A.D.E. 1263938]. |
| 20 | *In re Wal-Mart Stores, Inc. Wage & Hour Litig.*, No. 06-CV-02069 (N.D. Cal.) | Joseph D. Wilkins; Nicole Clemente; and Lolita Wells | Objections filed 9/7/10 [D.E. 408 and 409] withdrawn 11/6/10 [D.E. 426]. | Not filed. | Not applicable. |
| 21 | *Rodriguez v. West Pub'g Corp.*, No. 05-3222 (C.D. Cal.) | David Oriol, Jason Tingle, Jennifer Brown McElroy, Daniel M. Schafer, Sarah Siegel, and Evans & Mullinix PA | Settlement approved, *see* 2007 WL 2827379, and class counsel's attorneys' fees granted, *see* 2007 WL 3165661.<br><br>On remand, Palmer's 2/1/10 request for attorneys' fees [D.E. 614] and those of all other objectors were denied on 9/27/10 [D.E. 698]. Palmer filed a notice of appeal 11/17/10 [D.E. 726]. | On 10/10/07, notices of appeal were filed by Palmer's clients Oriol and Tingle [D.E. 452] and Evans & Mullinix PA, Sarah Siegel, Jennifer Brown McElroy, and Daniel Schafer [D.E. 455].<br><br>Appeal filed by Oriol and Tingle 11/12/07 [A.D.E. 1] (9th Cir., No. 07-56646).<br><br>Appeal filed by Evans & Mullinix PA, Sarah Siegel, Jennifer Brown McElroy, and Daniel Schafer | On 4/23/09, the 9th Circuit affirmed the approval of the settlement, finding that "the settlement is substantial and meets the standard for approval by any measure," 563 F.3d 948, 955 (9th Cir. 2009). However, the court reversed class counsel's attorneys' fee award because it found the named plaintiffs' incentive awards excessive, and remanded for the district court to reconsider that award and whether any objectors were entitled to fees for challenging the incentive |

**Exhibit X**

**Examples of Cases in Which Darrell Palmer Has Filed Objections and Dismissed, Abandoned, or Withdrawn the Objections or Appeal Without Attaining Settlement Changes or Additional Benefits for the Class**

| | Case | Client(s) | Outcome of Objection | Appeal | Outcome of Appeal |
|---|---|---|---|---|---|
| | | | | 11/13/07 [A.D.E. 1] (9th Cir. No. 07-56649). | awards. *Id.* at 968. |
| 22 | *Rawe v. Cellco P'ship*, No. 3:07-cv-03679 (N.D. Cal.) | James J. Poindexter, Cery Perle, and Jeffrey Palmer | Objection filed 10/13/12 [D.E. 128]. Final judgment and order of dismissal with prejudice filed 11/16/12 [D.E. 132 at 5] and states: "The Court has considered the objections of five class members and finds them to be without merit, and accepts their late-filing." | Palmer filed notice of appeal 12/17/12 [D.E. 134] (9th Cir. No. 12-17778). | Pending. |
| 23 | *Wilson v. Airborne Health, Inc*, No. 07-cv-770 (C.D. Cal.) | Denise Fairbank and Falicia Estep | Objection filed 6/4/08 [D.E. 154 & 155]. Objections overruled 8/13/08 in final approval and fee order [D.E. 170]. | Notice of Appeal filed 11/4/08 [D.E. 189]. Appeal filed 11/6/08 [A.D.E. 1] (9th Cir. No. 08-56819). | Voluntarily dismissed 2/20/09 [A.D.E. 10]. |
| 24 | *Yeagley v. Wells Fargo & Co.*, No. C-05-3403 (N.D. Cal.) | Rose A. Munoz | Objection filed 6/8/07 [D.E. 110] and withdrawn as indicated in 10/18/07 order stating that plaintiffs' counsel had agreed to pay the objectors' attorneys' fees [D.E. 158]. | Not filed. | Not applicable. |

# EXHIBIT Y

**Exhibit Y**

**Selected Objections to Settlements Filed by Steve A. Miller, Jonathan E. Fortman, and/or John C. Kress**

| | Case | Attorney(s) | Client(s) | Notes |
|---|---|---|---|---|
| 1 | *Blessing v. Sirius XM Radio Inc.*, No. 1:09-cv-10035 (S.D.N.Y.) | Steve Miller | Jeannine Miller | After final approval was granted and fees were awarded on 8/24/11 [D.E. 160], Miller filed a motion for admission *pro hac vice* "to appear as counsel for Class Member and Objector, Jeannine Miller" on 9/14/11 [D.E. 167]. Miller filed a notice of appeal 9/26/11 [D.E. 176]. Judgment and Order of the district court affirmed by the Second Circuit (Lead Case No. 11-3696) 3/13/13 [D.E. 202]. |
| 2 | *Cassese v. Wash. Mut., Inc.*, No. 2:05-cv-02724 (E.D.N.Y.) | Steve Miller | John Henry Williams | Objection filed 9/8/11 [D.E. 401-5]. Settlement approved and fees awarded on 9/21/11 (modified 9/23/11) [D.E. 423]. Miller filed a notice of appeal 10/19/11 [D.E. 441]. Judgment and Order of the district court affirmed by the Second Circuit (Lead Case No. 11-4333) 12/18/12 [D.E. 481]. |
| 3 | *CLRB Hanson Indus., LLC v. Google, Inc.*, No. 5:05-03649 (N.D. Cal.) | Steve Miller | Randy R. Lyons and Chase Thompson | Objection filed 7/10/09 [D.E. 326]. Settlement approved and fees awarded on 9/14/09 [D.E. 346, 347]. Miller did not file an appeal. |
| 4 | *Hale v. Wal-Mart Stores*, Nos. 01-CV218710 & 01-CV227774 (Mo. Cir. Ct.) | John Kress | Brenda Crittendon, Marcella Hodgins, and Linda Garrett | Kress and his co-counsel were sanctioned $11,319.70 by the court after they advised their clients not to attend depositions, *see* 2009 WL 2206961 (Mo. Cir. Ct. June 17, 2009). |

Case 1:11-cv-07972   Document 113-26   Filed 09/04/13   Page 3 of 9   PageID 1900

**Exhibit Y**

**Selected Objections to Settlements Filed by Steve A. Miller, Jonathan E. Fortman, and/or John C. Kress**

| | Case | Attorney(s) | Client(s) | Notes |
|---|---|---|---|---|
| 5 | *In re Am. Int'l Grp., Inc. Secs. Litig.*, No. 1:04-cv-08141 (S.D.N.Y.) | Steve Miller | Steve A. Miller, P.C. Profit Sharing Plan | Miller filed objection 1/6/12 [D.E. 607]. The court approved the settlement, the plan of allocation, and class counsel's attorneys' fees request 2/2/12 [D.E. 619, 620, 621 & 622].<br><br>Miller filed notice of appeal 2/17/12 [D.E. 626]. On 9/27/12, Miller notified the district court that he had agreed to withdraw and dismiss all objections with prejudice [D.E. 663].<br><br>On August 13, 2012, the Second Circuit reversed the class certification and remanded: "we emphasize that our order vacating the district court's class certification order should not be taken as an endorsement of the fairness of the proposed settlement—an issue we leave to the district court to address in the first instance in the event that it determines that class certification is appropriate." *In re Am. Int'l Grp., Inc. Secs. Litig.*, 689 F.3d 229, 244 (2d Cir. 2012). In April 2013, the district court approved the settlement with some modifications apparently suggested by the New York attorney general. *See In re Am. Int'l Grp., Inc. Secs. Litig.*, No. 04-cv-8141, 2013 WL 1499412 (S.D.N.Y. Apr. 11, 2013). |
| 6 | *In re Checking Account Overdraft Litig.*, No. 1: 09-MD-02036 (S.D. Fla.) | Jonathan Fortman<br><br>John Kress | Fortman: Todd M. Spann<br><br>Kress: Daniel G. Repa | Joint objection filed 10/3/11 [D.E. 1935]. In the order granting final approval of the settlement and awarding attorneys' fees, the court discussed the problem of objector blackmail and remarked: |

**Exhibit Y**

**Selected Objections to Settlements Filed by Steve A. Miller, Jonathan E. Fortman, and/or John C. Kress**

| | Case | Attorney(s) | Client(s) | Notes |
|---|---|---|---|---|
| 7 | *In re Enron Corp. Sec., Derivative &* "ERISA" *Litig.*, Nos. MDL-1446 & No. 4:01-cv-3624 (S.D. Tex.) | Jonathan Fortman | George S. Bishop; Jill R. Bishop; Lon Wilkens; and Betty Wilkens | Fortman and others filed an objection 1/30/08 [D.E. 5875].<br><br>On 9/8/08, all objections were overruled or found to be without merit in the order awarding fees, *see* 586 F. Supp. 2d 732 (S.D. Tex. 2008), and the plan of allocation of the settlement proceeds, *see* 2008 WL 4178151 (S.D. Tex. Sept. 8, 2008).<br><br>Notice of appeal filed 10/3/08 [D.E. 6038] [5th |
| | | | | "[M]ost if not all of the Objections are motivated by things other than a concern for the welfare of the Settlement Class. Instead, they have been brought by professional objectors and others whose sole purpose is to obtain a fee by objecting to whatever aspects of the Settlement they can latch onto." 830 F. Supp. 2d 1330, 1361 n.30 (2011).<br><br>Notice of appeal filed 12/21/11 by co-counsel for objections, Matt Weinstein [D.E. 2297] (11th Cir. No. 11-16140).<br><br>On 2/14/12, the district court granted the plaintiffs' motion to require the objectors to post an appeal bond [D.E. 2473].<br><br>Appeal voluntarily dismissed 7/3/12 [D.E. 2808]. |

**Exhibit Y**

**Selected Objections to Settlements Filed by Steve A. Miller, Jonathan E. Fortman, and/or John C. Kress**

| | Case | Attorney(s) | Client(s) | Notes |
|---|---|---|---|---|
| 8 | *In re Initial Public Offering Secs. Litig.*, Nos. 21 MC 92 & No. 1:21-mc-00092 (S.D.N.Y. 2010) | Robert Margulies and Jeffrey Weinstein (who are not involved in this case) | JKM Co. "Steve A. Miller, individually and as Trustee of the Steve A. Miller P.C. Profit Sharing Plan." 728 F. Supp. 2d 289, 291 (S.D.N.Y. 2010). | Cir. No. 08-20648). Stipulated dismissal filed 9/10/09 [D.E. 6176]. JKM Co.'s Objection filed 8/6/09 [D.E.5822]. Final approval granted and fees awarded on 10/6/09 [D.E.5861]. Various appeals of that order were filed in early November 2009, including a joint appeal by Miller and JKM Co. on 11/3/09 [D.E. 5870]. Appeal withdrawn 11/2/10 [D.E. 6243]. In the underlying matter, Judge Scheindlin ruled on 7/20/10 that objectors must post a $25,000 bond, 728 F. Supp. 2d 289 (S.D.N.Y. 2010). |
| 9 | *In re Lawnmower Engine Horsepower Mktg. & Sales Practices Litig.*, No. 2:08-md-01999 (E.D. Wis.) | Steve Miller, Jonathan Fortman, and John Kress | Miller: Jeannine Miller  Fortman: Kent Stephens, Douglas Hilbert, and Kelly Marie Spann  Kress: David Borgmeyer, Jarvis Gutridge, and Earl Hortiz | Miller filed an objection on 6/4/10 [D.E. 272]. Fortman and Kress filed objections and moved to intervene on 6/7/10 [D.E. 323, 324, 326]. Final approval granted and fees awarded 8/16/10, *see* 733 F. Supp. 2d 997 (E.D. Wis. 2010). Miller, Fortman, and Kress filed notices of appeal on 9/14/10 [D.E. 409, 419]. Fortman and Kress moved to voluntarily dismiss appeal on 2/9/11 [A.D.E. 37 (7th Cir. No. 10-3146)] and the court granted their motion on 2/10/11 [D.E. 481]. Miller's motion to voluntarily dismiss appeal was filed 2/14/11 [A.D.E. 39 (7th Cir. |

4

**Exhibit Y**

**Selected Objections to Settlements Filed by Steve A. Miller, Jonathan E. Fortman, and/or John C. Kress**

| | Case | Attorney(s) | Client(s) | Notes |
|---|---|---|---|---|
| | | | | No. 10-3157)] and granted 2/16/11 [A.D.E. 42]. |
| 10 | *In re Mattel, Inc. Toy Lead Paint Prods. Liab. Litig.*, No. 2:07-ml-01897 (C.D. Cal.) | Steve Miller | Chase A. Thompson | Objection filed 2/19/10 [D.E. 194]. |
| | | | | Miller and his co-counsel Thompson filed a notice of appeal, followed by an amended version of same on 5/18/10 [D.E.312 (9th Cir. No. 10-55609)]. Stipulated motion to dismiss the four appeals related to the Mattel MDL were filed 11/10/10 [A.D.E. 20] and granted 11/19/10 [D.E.352, A.D.E. 21]. |
| 11 | *In re New Motor Vehicles Canadian Export Antitrust Litig.*, No. 2:03-md-01532 (D. Me.) | Steve Miller | Joey Hutto, Jeanne Finn, Channing Carder, Deborah Colburn, Nancy Carder, and Wayne Phillips d/b/a American Electric Motor Service | Objection filed 1/31/11 [D.E. 1140]. |
| | | | | The magistrate judge approved the settlement on 4/13/11, 2011 WL 1398485, *supplemented*, 800 F. Supp. 2d 328, *aff'd*, 2012 WL 379947 (Feb. 3, 2012), and on 2/1/2012 class counsel were awarded fees and expenses totaling $11.19 million, 842 F. Supp. 2d 346 (D. Me. 2012). |
| 12 | *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*, No. 8:10-ML-2151 (C.D. Cal.) | Steve Miller, Jonathan Fortman, John Kress, and Maureen Connors | Gary Guerriero and Rebecca Guerriero | Objection filed 5/13/13 [D.E. 3632].  Final Judgment entered 7/24/13 [D.E. 3935]. |
| | | | | Notice of Appeal filed 8/22/13 [D.E. 4053]. |
| 13 | *In re Trans Union Corp. Privacy Litig.*, No. 1:00-cv-4729 (N.D. Ill. Apr. 6, 2009) | Steve Miller | Christie M. Copeland | Objection filed 8/26/08 [D.E. 482].  Final approval order of 9/17/08 overruled all objections [D.E. 515]. |
| | | | | Miller appealed on 10/15/08 [D.E. 530] (7th Cir. |

Exhibit Y

**Selected Objections to Settlements Filed by Steve A. Miller, Jonathan E. Fortman, and/or John C. Kress**

| | Case | Attorney(s) | Client(s) | Notes |
|---|---|---|---|---|
| | | | | No. 08-3638). The objectors subsequently reached a settlement with counsel and, on 7/30/09, filed a motion for voluntary dismissal of the appeals [A.D.E. 20], which the Seventh Circuit granted the next day [A.D.E. 21]. |
| 14 | *In re Yahoo! Litig.*, No. 2:06-cv-02737 (C.D. Cal.) | Steve Miller | LightTheNations.com, ChaseandSam.com, Digital Playroom, Inc., James Owens, and Randal S. Ford | Final judgment entered 1/15/10 approving settlement and awarding fees of $4.3 million [D.E.226].<br><br>Although the docket does not list any objectors represented by Miller, Miller filed a notice of appeal on 2/11/10 [D.E. 232] (9th Cir. No. 10-55255). An order entered 9/23/10 shows that Miller voluntarily dismissed his appeal [D.E. 247]. |
| 15 | *Milliron v. T-Mobile USA, Inc.*, No. 2:08-cv-04149 (D.N.J.) | Steve Miller | Thomas A. Carder, Kimberley Lyons, and Aaron Miller | Objection filed 7/2/09 [D.E. 53]. Settlement approved and fees awarded on 9/10/09, with all objections overruled [D.E.86].<br><br>Miller and others appealed on 10/7/09 [D.E. 92] (3d Cir No. 09-3934). Miller filed stipulation of dismissal on 3/23/11 [A.D.E. 3110476669]. Appeal dismissed 3/23/11 [D.E.128]. |
| 16 | *The NVIDIA GPU Litig.*, No. 5:08-cv-04312 (N.D. Cal.) | Steve Miller | Chase A. Thompson | Objection filed 11/2/10 by Charles M. Thompson as counsel for his son [D.E. 287]. On 12/20/10, final approval was granted and fees were awarded [D.E. 319], and final judgment was entered and all objections were overruled |

**Exhibit Y**

**Selected Objections to Settlements Filed by Steve A. Miller, Jonathan E. Fortman, and/or John C. Kress**

| | Case | Attorney(s) | Client(s) | Notes |
|---|---|---|---|---|
| | | | | [D.E. 320].<br><br>Miller entered an "appearance on behalf of Objector Chase A. Thompson" on 1/14/2011 [D.E. 325], and Charles Thompson and Miller filed a notice of appeal on 1/19/11 [D.E. 329] (9th Cir. No. 11-1591). Thompson submitted his Opening Brief on 7/21/11, in which the argument section stated in its entirety: "Pursuant to F.R.A.P. 28(i), Appellant adopts by reference all Arguments contained in the briefs submitted by all counsel for co-appellants." [A.D. E. 41 at 8]. The Ninth Circuit's docket indicates Thompson's appeal is still pending. |
| 17 | *White v. Cellco P'ship*, No. RG04137699 (Cal. Super. Ct. Alameda Cnty.), *aff'd, In re Cellphone Fee Termination Cases*, 186 Cal. App. 4th 1380 (2010) | Steve Miller | Ann Talley and John Talley | Judgment in *White* and related case affirmed by *In re Cellphone Fee Termination Cases*, 186 Cal. App. 4th 1380 (2010), in which the court noted that Miller had filed an objection that "simply join[ed] in and adopt[ed another objector's] brief, without any reference to any portion of the record or citation of authority." 186 Cal. App. 4th 1380, 1388 n.15, 113 Cal. Rptr. 3d 510, 517 n.15 (2010). |
| 18 | *White v. Experian Info. Solutions Inc.*, No. 8:05-cv-1070 (C.D. Cal.) | Steve Miller | Steven C. Signer | Objection filed 11/30/09 [D.E. 544]. Final approval of settlement granted 7/15/11 [D.E. 776].<br><br>Miller filed appeal 8/12/11 [D.E. 794] (9th Cir. No. 11-56400). Appeal voluntarily dismissed |

**Exhibit Y**

**Selected Objections to Settlements Filed by Steve A. Miller, Jonathan E. Fortman, and/or John C. Kress**

| Case | Attorney(s) | Client(s) | Notes |
|---|---|---|---|
| | | | 9/27/11 [D.E. 841]. |

8

# EXHIBIT Z

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

NICK PEARSON, FRANCISCO PADILLA,
CECILIA LINARES, AUGUSTINA BLANCO,
ABEL GONZALEZ, and RICHARD
JENNINGS, On Behalf of Themselves and All
Others Similarly Situated,

Plaintiffs,

v.

NBTY, INC., a Delaware corporation; and
REXALL SUNDOWN, INC., a Florida
corporation; TARGET CORPORATION, a
Minnesota Corporation,

Defendants.

Case No.:   11 CV 07972

CLASS ACTION

**Judge James B. Zagel**

---

I, Jorge Granja, declare under the penalty of perjury as follows:

1.      I, Jorge Granja, make this Declaration of behalf of NBTY, Inc.; Rexall
Sundown, Inc.; and their subsidiaries ("Settling Defendants").

2.      I am Senior Manager, Market Measurement & Analytics, for NBTY, Inc. and have
authority to make this Declaration on behalf of the Settling Defendants.

3.      ███████████████████████████████████████

4.      ███████████████████████████████████████

5.      I declare under penalty of perjury that the foregoing is true and correct.

_____                    8/29/13
Sr. Manager, Market Measurement & Analytics, NBTY, Inc.          August 29, 2013