APPEAL,GILBERT,TERMED

# United States District Court
# Northern District of Illinois – CM/ECF LIVE, Ver 6,1 (Chicago)
# CIVIL DOCKET FOR CASE #: 1:11–cv–07972
### *Internal Use Only*

Pearson v. Target Corporation
Assigned to: Honorable James B. Zagel
Case in other court:  14–01227
                      14–01244
                      14–01245
                      14–01247
                      14–01389
Cause: 28:1332 Diversity–Other Contract

Date Filed: 11/09/2011
Date Terminated: 01/03/2014
Jury Demand: Defendant
Nature of Suit: 110 Contract: Insurance
Jurisdiction: Diversity

| Date Filed | # | Page | Docket Text |
|---|---|---|---|
| 09/04/2013 | 124 | 2 | DECLARATION of Jeffrey I. Carton *in Suport of Final Approval of Settlement, Attorneys' Fees and Expenses and Incentive Awards* (Attachments: # 1 Exhibit A – Firm Biography, # 2 Exhibit B – Time Records)(Freiberg, Peter) (Entered: 09/04/2013) |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICTOF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NICK PEARSON, FRANCISCO PADILLA, CECILIA LINARES, AUGUSTINA BLANCO, ABEL GONZALEZ, and RICHARD JENNINGS, On Behalf of Themselves and All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>NBTY, INC., a Delaware corporation; and REXALL SUNDOWN, INC., a Florida Corporation; and TARGET CORPORATION, a Minnesota Corporation,<br><br>Defendants. | Case No.:  11 CV 07972<br><br>CLASS ACTION<br><br>**Judge James B. Zagel**<br><br><br>**DECLARATION OF JEFFREY I. CARTON, ESQ., IN SUPPORT OF FINAL APPROVAL OF SETTLEMENT, ATTORNEYS' FEES AND EXPENSES AND INCENTIVE AWARDS** |

JEFFREY I. CARTON, an attorney duly admitted to practice law before the Courts of the States of New York and Connecticut, hereby affirms the following to be true under penalties of perjury.

1.      I am an attorney duly licensed to practice law in the Courts of the States of New York and Connecticut, and I am a member of the law firm of Denlea & Carton LLP ("D&C"), attorneys for plaintiff Richard Jennings ("Jennings"), and one of the attorneys for the Class for whom we have previously been appointed as Class Counsel.

2.      I have personal knowledge of the matters set forth in this Declaration based upon my active involvement in the prosecution of this action over the past two and one-half years and a review of the files in my firm's possession.

3.      I respectfully submit this Declaration pursuant to 28 U.S.C. §1746 in support of Plaintiffs' Motion for Final Approval of Class Action Settlement, Attorneys' Fees and Expenses, and Incentive Awards.  As set forth more fully below and in the accompanying Memorandum of Law, as well as in Plaintiffs' Response to Objections and the Parties' Joint Response to Objections, this action is ripe for final approval.

**The Challenged Claims and Procedural History**

4.      On August 22, 2011, Jennings, a resident of Oak Bluffs, Massachusetts, filed an action in the United States District Court for the District of Massachusetts, on behalf of himself and all other similarly situated consumers, alleging that Rexall violated the Massachusetts Unfair Trade Practice Act, Mass. Gen. Laws ch. 93A, §§2, *et seq*., and breached an express warranty, in connection with its manufacturing, marketing and sale of Defendants' Osteo Bi-Flex line of products.  Jennings alleged that the claim that the products "renew" or "help renew" cartilage is false and deceptive. His Complaint was based upon the scientific and medical principles that adult articular cartilage is not vascularized (i.e., it has no blood flow) and lacks the capacity to regenerate itself after sustaining damage from injury or disease, including osteoarthritis; and that osteoarthritis, a disease which is characterized by the degradation and degeneration of articular cartilage that leads to pain and inflammation caused by bones grinding together, is not reversible. Jennings alleges that the claim that Osteo Bi-Flex can renew or rebuild cartilage is deceptive because neither glucosamine nor chondroitin sulfate, alone or in combination with each other, will cause cartilage to rebuild or renew.

5.      The action that Jennings filed in the District of Massachusetts is one of several currently pending actions involving various glucosamine and chondroitin products

2

manufactured by NBTY, Inc., its subsidiary Rexall Sundown, Inc., or one of their affiliates. *Cardenas, et al. v. NBTY, Inc. et al.*, No. 2:11-cv-01615-TLN-CKD (E.D. Cal), was filed on June 14, 2011 against NBTY, Inc. and Rexall Sundown, Inc. arising out of the manufacture and sale of their Osteo Bi-Flex line of glucosamine and chondroitin joint health dietary supplement products. It originally sought a California-only class but was amended to seek a multi-state class. *Linares, et al. v. Costco Wholesale, Inc.*, No. 3:11-cv-0547-MMA-BGS (S.D. Cal.), was filed on November 2, 2011, arising out of Costco's sale of the Kirkland Signature Brand line of glucosamine and chondroitin joint health dietary supplement products and seeking a California-only class. This action, *Pearson v. Target Corporation*, No. 1:11-cv-07972 (N.D. Ill.), was filed on October 28, 2011, arising out of Target's sale of its Up & Up line of glucosamine and chondroitin joint health dietary supplement products and seeking a multi-state class. *Blanco v. CVS Pharmacy, Inc., No.* 5:13-cv-00406-JGB-SP (C.D. Cal.), was filed on March 4, 2013, arising out of CVS Pharmacy's sale of certain CVS-brand glucosamine chondroitin dietary supplement products and seeking a California and multi-state class.

6.     In addition to Osteo Bi-Flex, Rexall and its affiliates manufacture other glucosamine joint health dietary supplements sold under the brand names of Rexall Sundown, Inc., NBTY, Inc., or their affiliates, as well as private label brands of glucosamine and chondroitin joint health dietary supplement products, including the Costco products purchased by the named plaintiffs in the *Linares* action and the Target glucosamine and chondroitin dietary supplement product for which the Court sustained the

Amended Complaint in the *Pearson* action.[1]  The core issues in all cases are similar, in that they contest the veracity of similar joint health benefit representations made about the NBTY/Rexall-branded products and the private label products that Rexall manufactures for other retailers, all of which are covered by the Settlement Agreement.  By agreement of all of the parties, and as set forth in the Settlement Agreement, the nationwide class action settlement is being implemented through this matter, *Pearson v. Target Corporation.*

**Jennings' Prosecution of His Action**

7.      Prior to all of these cases being "consolidated" in *Pearson v. Target Corporation* for purposes of a global settlement, Jennings and his counsel expended significant time and resources prosecuting his claims in the District of Massachusetts, the net result of which was to serve as a catalyst for the global resolution of all of the actions pending against Defendants.  In fact, it was the very last night before the Parties were to begin a jury trial in Massachusetts that Rexall agreed to a settlement with Jennings, which eventually led to the global, nationwide settlement now before the Court.

8.      Jennings filed his complaint on August 22, 2011. Rexall responded with two motions to dismiss, both of which were denied by the court upon Jennings amending his Complaint. The two motions to dismiss involved extensive briefing by the parties and appearances before the court. When the court denied Rexall's second motion to dismiss on April 10, 2012, it also scheduled an "exemplar" trial of Jennings' claims for its trial term beginning October 1, 2012. The setting of that "exemplar" trial led to extensive and expedited discovery over the next several months.

---

[1] The full listing of products and the applicable time periods for which class members may make claims and for which releases will be provided pursuant to the Settlement Agreement are set forth in Exhibit A to the Settlement Agreement.

9.      The discovery conducted in the *Jennings* case consisted of the exchange of numerous documents, the depositions of the parties, and the depositions of three expert witnesses.  Rexall produced over 7,000 pages of documentation, consisting mostly of its "claim substantiation" file and documents related to its marketing of Osteo Bi-Flex. Jennings made an extensive production of his medical records spanning many years. There were three party depositions. Jennings was deposed for the better part of a day, and two Rexall employees (Florence Okaro and Angelica Vrablic, Ph.D.) were deposed over the course of two days.

10.      Both Jennings and Rexall made extensive expert disclosures, Jennings proffering the expert disclosure of Jeremiah E. Silbert, M.D., and Rexall proffering the expert disclosures of C. Thomas Vangsness, M.D and Daniel Grande, Ph.D.  Dr. Silbert was deposed in Boston, Massachusetts, Dr. Grande was deposed in Manhasset, New York, and Dr. Vangsness was deposed in Los Angeles, California. All three expert depositions were extensive, complex and challenging because of the scientific aspects of the experts' opinions and the abundant medical literature that exists regarding the efficacy of glucosamine and/or chondroitin.

11.      The efforts of Jennings and his counsel resulted in Rexall withdrawing one of its expert witnesses, a critical development in the prosecution of the case.  Dr. Vangsness was designated by Rexall to testify as an expert witness, but after his deposition was concluded, Rexall withdrew his designation as a testifying expert witness, because the rigorous examination conducted at his deposition by Jennings' counsel caused him to make significant admissions and concessions that significantly undermined Rexall's defenses.  Causing a party to withdraw an expert witness is a rare occurrence, but it

happened as a result of our extensive preparation for Dr. Vangsness' deposition and the methodical cross-examination conducted of him during his deposition.

12.     Following the expedited discovery in connection with the "exemplar" trial, Rexall moved for summary judgment, which the court denied after extensive briefing by all parties. In addition, several motions *in limine* were filed by Rexall, which required Jennings to submit opposition briefs. Jennings and Rexall then prepared a lengthy pretrial memorandum pursuant to the court's order, and were ready to proceed to the "exemplar" trial beginning October 1, 2012. Rexall and Jennings agreed to settle Jennings' claims, subject to a final resolution encompassing all pending lawsuits, late the night before the parties were scheduled to begin a jury trial when they entered into a Memorandum of Understanding.  That Memorandum of Understanding served as the catalyst for the global resolution of all cases now before the Court.

**Settlement Negotiations**

13.     The settlement of Jennings' (and his fellow class members') claims was reached following several months of negotiations between attorneys at my law firm and counsel for Rexall.  These conversations began in May 2012 when counsel for Rexall broached the subject of settlement, following which the attorneys exchanged numerous different settlement constructs and proposals.  At the same time as the parties were preparing for the "exemplar" trial, they were also negotiating the terms of a settlement, and as a result of these extensive, arm's-length negotiations, the Memorandum of Understanding was executed on September 31, 2012, on the eve of the "exemplar" trial the District Court in Massachusetts had set for its trial term beginning October 1, 2012. The Memorandum of Understanding contemplated the settlement of all pending

glucosamine supplement cases.  As a result, counsel for all parties in all of the pending

cases thereafter participated in several in-person conferences and conference calls, which

ultimately resulted in the execution of the written Settlement Agreement for which the

Court provided its preliminary approval on May 30, 2013.  Notably, much of the framework

for the current settlement was the result of our negotiations with Defendants' counsel

which resulted in the Memorandum of Understanding.

14.     During the entire negotiation process, it was only after the relief in favor of

Rexall and NBTY and the Settlement Class was agreed upon that the Parties negotiated

the issue of attorneys' fees and incentive awards for the named plaintiffs.  The amount of

attorneys'  fees and incentive awards was agreed upon only after extensive negotiations

between the Parties' counsel, and with the understanding that payment of such amounts

will be made from Defendants' corporate coffers without diminishing or eroding the redress

available for the Settlement Class in any way.

15.     The settlement was agreed to without any collusion whatsoever on behalf

of the Parties or their counsel.  At all times, the Parties were represented by competent

and experienced counsel. During the negotiations, Rexall was represented by Kara L.

McCall, Michael W. Davis and Robert T. Scarborough, attorneys with the national law firm

of Sidley Austin, LLP who vigorously advocated Rexall's position; Jennings was

represented by James R. Denlea, Jeffrey I. Carton and Peter N. Freiberg, of D&C; and the

plaintiffs in the other pending cases were represented by Stewart M. Weltman and Elaine

A. Ryan.

**Settlement Class Certification and Definition**

16.     The proposed settlement provides the following:

7

A.       **Certification of the Proposed Settlement Class**

Plaintiffs request that the Court certify a Class defined as:

> All persons in the United States who, during particular times and in
> certain U.S. locations as identified in Exhibit A to the Settlement
> Agreement purchased one or more of the Covered Products.[2]

> Excluded from the Class are (i) Defendants; (ii) retailers of the
> Covered Products; (iii) the parents, subsidiaries, affiliates, officers,
> and directors of (i) and (ii); (iv) those who purchased the Covered
> Products for the purpose of resale or distribution; and (v) those
> persons who submit valid requests for exclusion from the Settlement
> Class.

B.       **Class Relief**

1.       **Monetary Relief - Claims Paid To Class Members**

Each Class member shall be entitled to seek monetary compensation.[3]  Class

members who have adequate proof of purchase (*e.g.*, receipts, intact boxes or bottles that

display a readable UPC code and readable lot number, or similar documentation that

identifies the Covered Product and date and location of purchase) shall be entitled to

reimbursement of $5 for each purchased bottle of the Covered Products up to ten (10)

bottles.  Class members who do not have any adequate proof of purchase will be entitled

to reimbursement of $3 per bottle of the Covered Products purchased up to a maximum of

four (4) bottles upon submitting their claim form, which will require a sworn declaration that

identifies the Covered Product(s) purchased, the approximate date of purchase, and the

---

[2] The full listing of Covered Products, including their dates of distribution and locations of
sale, is set forth in Exhibit A to the Settlement Agreement.

[3] The Class is estimated to be in excess of 12 million households.

location of the purchase.[4]   There is no ceiling on the amount of monies that Defendants

may have to pay for valid claims.  Defendants have agreed to pay all valid claims.

### 2.   Injunctive Relief

During settlement negotiations, the Parties agreed to the removal of certain

labeling claims from all of the Covered Products currently being manufactured or sold by

Defendants.  There are dozens of different products that will be impacted by these label

changes.  The Settlement Agreement provides that for a period of 30 months from the

date of the Final Approval, Defendants will not use any representations that the products

will rebuild, build, or renew cartilage ("rebuilding cartilage representations") on the labeling

and packaging for any Covered Products that they manufacture, sell, or supply to other

retailers.  Removal of the rebuilding cartilage claims was a significant goal of Jennings and

his counsel, which we achieved when the Memorandum of Understanding was executed.

For the same 30-month period, and as part of the negotiations related to the other types of

claims made by Defendants (e.g., claims related to joint comfort or pain, flare-ups,

soothing, cushioning, nourishing, mobility, lubrication, or support) ("palliation

representations"), Defendants will be required to place on the packaging and labeling of

the same products a statement that "individual results may vary."  Defendants will have a

period of six months from the date of Final Approval to begin shipping Covered Products

with the label changes.  Defendants also have an incentive to keep these labeling changes

in place after the 30-month period expires, in that the Settlement Agreement provides that,

to the extent that and for as long as the label changes are kept in place after the 30-month

period, no Settlement Class member who purchases such product after the 30-month

---

[4]  The claim form will not require notarization, and can be submitted by U.S Mail or
electronically uploaded at the settlement website, www.GlucosamineSettlement.com.

period can sue Defendants on any claim that was or could have been asserted in the litigation.

### C. <u>Incentive Awards to Class Representatives</u>

The Settlement Agreement provides that, subject to Court approval, Defendants agree to pay and will not object to the Court awarding each of the six (6) Class representatives an incentive award of up to $5,000.  The payment of these incentive awards will be separate and apart from, and will not diminish or erode, the payment of claims to the Class Members as set forth above.

### D. <u>Attorneys' Fees and Expenses</u>

The Settlement Agreement provides that the Defendants agree to pay and will not object to the Court awarding the firm of Denlea & Carton LLP (counsel for Plaintiff Richard Jennings) an aggregate fees and expenses award of $2.5 million; and that Defendants agree to pay and will not object to the Court awarding the firms of Bonnett, Fairbourn, Friedman & Balint, P.C., Stewart M. Weltman LLC (Of Counsel Levin Fishbein Sedran & Berman), and Levin Fishbein Sedran & Berman (counsel for Plaintiffs Nick Pearson, Francisco Padilla, Cecelia Linares, Augustine Blanco and Abel Gonzalez) an aggregate fees and expenses award of $2 million.  All attorneys' fees and expenses are to be paid separate and apart from, and will not diminish or erode, the payment of claims to the Class Members as set forth above.

<u>Counsel Conducted Intense Arm's-Length Negotiations</u>

17.   As noted above, at the same time as Jennings and Rexall were preparing for the "exemplar" trial, they were also engaged in settlement negotiations. Rexall's counsel initially proposed a general construct for the settlement of all claims, which ultimately

culminated in the Memorandum of Understanding executed by Jennings and Rexall, which was the catalyst for and eventually led to the global settlement that resolves at least five cases pending in federal district courts throughout the United States. Following the execution of the Memorandum of Understanding which provided the framework for the global resolution, all parties, including the plaintiffs in the other pending cases, engaged in a series of telephone conferences and in-person meetings during which resolution of all claims was agreed to in order to achieve a global settlement and disposition of all pending cases. Following a lengthy meeting in Chicago, the parties finalized the Settlement Agreement, which was signed by all parties and their counsel on or around April 15, 2012.

18.     Jennings and D&C, as well as the other named plaintiffs and their counsel, have determined that the proposed settlement is fair, reasonable, and adequate, and is in the best interests of the Class. That conclusion is based on an investigation into the claims and underlying events and transactions alleged in the Complaint, legal research, evidence obtained in discovery which was virtually complete before settlement negotiations began, consultations with experts, and arguments made by all Parties relating to the merits of the action.

19.     There can be no serious debate about whether the Settlement Agreement was the result of intensive and hard-fought negotiations, as the settlement dialogue began only after more than two years of vigorous litigation and took place between experienced, capable counsel, each resolute in zealously advocating and defending their respective clients' positions. Thus, the Settlement is entitled to the presumption of fairness.

20.     All Parties, and their counsel, have a thorough understanding of the case. While Plaintiffs strongly believe that the claims asserted in the Complaint have merit, they

also recognize the uncertainties in any litigation.  There is no certainty that the Class would

prevail at trial, despite counsels' belief in the strength of their positions.  It is the well-

informed opinion of counsel for Jennings that the benefits afforded to the class by the

Settlement are real and substantial, both in terms of the monetary consideration that is

being paid to the class, as well as the injunctive relief that will require Rexall to make

significant label changes to many different products that directly address the allegations

which gave rise to this action.

21.    Throughout the litigation, Rexall has consistently denied any

wrongdoing, and has maintained that its claims were lawful and supported by scientific

evidence.  Moreover, Rexall raised a number of defenses that, if accepted by the Court or

a jury at trial, could limit the extent of a recovery by the Class or prevent any recovery

altogether.  Although Jennings and D&C believe that Rexall's arguments lack merit, their

decision to settle the action takes account of the risks that the fact-finders may conclude

otherwise. Additionally, even if Jennings and the Settlement Class were to prevail,

litigating the case through trial and possible appeal would take a considerable amount of

time, perhaps years, thus delaying benefit to the Class.

22.    By contrast, the proposed Settlement has none of these drawbacks,

and confers substantial and immediate benefits on the Class.  If the Court approves the

Settlement, compensation to Class Members and changes in Rexall's disclosure language

about its products are assured rather than uncertain.  In particular, as noted above, the

Settlement provides unlimited compensation to the members of the Class because it has

no ceiling on the amount of claims that Rexall will pay.  Rexall has agreed to pay the costs

of notice  and administration of the Settlement (with a minimum payment of $1.5 million

and a maximum payment of $2.5 million) separate and apart from the benefit that the

Class Members will receive by filing claims, and has also agreed to pay attorneys' fees and costs in addition to the recovery on behalf of the Class, such that attorneys' fees will not diminish or erode the benefit to the Class. The Settlement also provides for significant public policy considerations:  Rexall will not hereafter make the scientifically unsupported and deceptive claim that its products can "rebuild" or "renew" cartilage.

23.      In sum, in agreeing to settle the action, Jennings and his counsel, and the parties in the other pending actions and their counsel, have taken into account the benefits available to the Class through settlement, the considerable expense and length of time that would likely be necessary to continue to prosecute the claims through trial, post-trial motions and likely appeals, and the significant uncertainties in predicting the outcome of the lawsuit.  Considering all of these factors, and balancing them against the certain and substantial benefits of the Settlement, they have concluded that the Settlement is fair, reasonable, adequate, and superior to the risks and delays associated with further litigation.

**Class Notice**

24.      As shown in the accompanying Affidavits of Mark Schey, of Digital Settlement, LLC, and Michael Hamer of Heffler Claims Group ("Heffler"), the notice to the Class Members was as robust and as extensive as possible. Pursuant to the notice plan that the Court approved when it provided its preliminary approval of the Settlement, Heffler was appointed as the claims administrator to oversee the publication and dissemination of notice to the Class, and to process the claims that are filed by the Class Members.  The class notice plan – using a combination of magazine print, direct notice to over 4.7 million Class Members by mail and email, Internet messaging, and social media networking – was designed to reach, and did reach, over 76% of the Class.

**Responses By the Class**

25.    The reaction of the Class to the settlement has been overwhelmingly

positive.  Out of a Class consisting of approximately 12 million members, just eight (8)

Class Members filed a purported objection to the Settlement, and only 1,620 persons

have validly opted out of the Settlement.  The small number of objections and opt-outs

speaks volumes about the value of the Settlement.  Furthermore, approximately 19,593

people have already filed claims, and the deadline for doing so will not expire until

December 3, 2013.  The merits of the objections are addressed in the Parties'

separately filed Joint Response to Objections.

**Experience of Class Counsel**

26.    The attorneys of Denlea & Carton LLP ("D&C") are highly qualified attorneys

with extensive experience in complex litigation and consumer class actions. Many of the

firm's attorneys graduated with honors from elite law schools and previously practiced at

prominent New York firms. I am an honors graduate of Dartmouth College and Columbia

Law School, and previously practiced at Cravath, Swaine, and Moore. My partner, Peter N.

Freiberg, who served as the lead lawyer from our firm prosecuting Jennings' claims,

graduated from the University of Pennsylvania and Tulane University School of Law, cum

laude, and served as an Assistant District Attorney with the Manhattan District Attorney's

Office for many years.  We have both practiced law for over 22 years, and our experiences

are fully described in the Firm Biography which is attached hereto as Exhibit A.  As

demonstrated below, the experience and expertise of Class Counsel, as well as the results

achieved for the Class, establish the reasonableness of the fee requested as part of the

Settlement.

27.    D&C's attorneys have been certified as class counsel and have prosecuted

numerous class actions including:

- *Llanos v. Shell Oil Company And Shell Oil Products US,* No. SU-2006-009404 (N.Y. Sup. Ct.).  State-wide class action alleging that Shell improperly imposed monthly inactivity or dormancy fees on Shell Gift Cards in violation of New York Gen. Bus. L. § 349 and Shell's contracts with its customers.  The court certified the class and approved a settlement on March 31, 2010.

- *Argento v. Wal-Mart Stores, No. 22850/06 (N.Y. Sup. Ct.). On October 2,* 2009, the New York Appellate Division granted plaintiff's motion for certification of a state-wide class of consumers alleging that Sam's Club violated state consumer protection laws and its membership contracts by backdating membership renewals.  The court subsequently approved a settlement in May, 2012.

- *Dupler v. Costco Wholesale Corporation, Civ. No. 06-3141 (E.D.N.Y.).  Class* action alleging that Costco backdated membership renewals purchased after the prior membership period's expiration date, in violation of state consumer protection laws and Costco's membership contracts.  Class certification was granted on January 31, 2008, and a nationwide class settlement was approved on April 20, 2010.

- *In re Ticketmaster Sales Practices Litigation,* No. 09-0912 (C.D.Cal.).  Court appointed Jeffrey I. Carton interim co-lead counsel pursuant to Federal Rule of Civil Procedure 23(g) on July 17, 2009.  On February 13, 2012, the court granted final approval of a settlement.

- *In re Bayer Corp. Combination Aspirin Products Marketing and Sales Practices Litigation,* No. 09-2023 (E.D.N.Y.).  On June 8, 2009, the court appointed Jeffrey I. Carton to Plaintiff's Executive Committee in this Multidistrict Litigation in which plaintiffs allege that Bayer Healthcare LLC violated state consumer protection and warranty laws in connection with the deceptive marketing and sales of Bayer combination aspirin products.

- *Luks v. Empire Blue Cross/Blue Shield,* Index No. 03/64337 (N.Y. Sup.Ct.N.Y. Cty.).  State-wide class action brought on behalf of more than 1,000 surgeons that compelled insurer to revoke its policy, commonly referred to as the "single incision" policy, of refusing to cover certain medically appropriate surgical procedures.  The action was resolved on a class-wide basis, providing millions of dollars in reimbursement to New York physicians.

- *Breedlove v. Window Rock Ent., Inc.,* 04-00610 (Cal. Super. Ct. Orange Cty.).  Consumer class action challenging false and deceptive advertising for the

popular diet supplement CortiSlim.  The case was resolved on a nationwide class basis.

- *Fox v. Cheminova, Inc.,* 00-5145 (E.D.N.Y.).  Class action brought against pesticide manufacturers on behalf of commercial lobstermen in Long Island Sound, alleging destruction of lobster stock.  The court certified the class and approved a settlement.

- *Dupler v. Old Navy LLC and The Gap, Inc.,* No. 06/008356 (N.Y. Sup. Ct., Nassau Cty.).  Class action alleging consumers were short-changed when returning merchandise bought with store-issued coupons.  On August 6, 2007, the court approved a settlement.

- *Aggarwal v. MagicJack LP,* No. 50 2011 CA 009521 (Fla. Cir. Ct. Palm Beach Cty.).  Class action alleging consumers' renewal dates for internet telephone subscriptions were set unlawfully.  A nationwide class action settlement was approved in February, 2012.

- *Held v. AAA Southern New England,* 3:11-cv-105-SRU (D. CT.).  *Class* action alleging that the AAA did not adequately disclose its policy of using a member's prior expiration date as the commencement date for renewal memberships.  On August 6, 2013, the court granted final approval of a settlement.

28.    As the foregoing experiences reveal, the attorneys principally involved in this matter are experienced litigators, having litigated complex civil actions, including many class action and consumer fraud lawsuits throughout the country.

**The Time and Labor Expended by Counsel**

29.    The time and labor expended by Class Counsel in this action are set forth in the summary below.  This summary is based upon contemporaneous time records that our attorneys keep on a regular and accurate basis, a true and correct copy of which is attached hereto as Exhibit B.  Through August 30, 2013, the attorneys at D&C devoted approximately 1478 hours over a period of more than two years to prosecuting this action.  We conducted an extensive investigation of the issues involved in this case, including the medical aspects of the claims that glucosamine and/or chondroitin can renew cartilage,

and consulted with numerous experts regarding these scientific issues. We analyzed the

many legal issues concerning the claims of deceptive trade practices, engaged in

extensive discovery, and prepared the *Jennings* case for trial on an expedited basis.  We

also engaged in sometimes contentious arm's-length negotiations with Rexall's counsel,

and reached agreement on the material terms of the settlement before negotiating the

proposed fee award.

      30.    The aggregate hours worked by the attorneys and staff that contributed to

the prosecution of the case are:

| Personnel | Hours | Rate | Lodestar |
|---|---|---|---|
| James R. Denlea | 41.00 | $675.00 | $27,675.00 |
| D. Gregory Blankinship | 105.40 | $625.00 | $65,875.00 |
| Jeffrey I. Carton | 190.50 | $675.00 | $128,587.50 |
| Peter N. Freiberg | 1076.50 | $650.00 | $699,725.00 |
| Todd S. Garber | 15.00 | $625.00 | $9,375.00 |
| Christa Ronci | 50.35 | $150.00 | $7,552.50 |
| **TOTAL:** | **1478.75** | | **$938,790.00** |

      31.    Significantly, D&C is a small firm comprised of six (6) attorneys.  The firm

with which Mr. Freiberg and I were previously affiliated was also a small firm with fewer

than twenty (20) attorneys.  As a result, the time spent on this action in the hope of

eventually obtaining a substantial verdict or settlement for the Class, and a fee for Class

Counsel, was a significant commitment of the firm's (and our prior firm's) resources. While

D&C carefully screens its class action contingency matters to enhance its likelihood of

success, there was absolutely no assurance that the extraordinary commitment of time

and effort devoted to this action would result in the payment of any fee at all. Moreover,

the action was leanly staffed and efficiently managed, with two attorneys, Mr. Freiberg and

myself, accounting for the significant majority of the time devoted to the case. Class
Counsel should be fairly compensated for the substantial time and labor invested to obtain
this outstanding Settlement on behalf of the Class.

**The Magnitude and Complexity of this Action**

32.      The magnitude and complexity of this action support the fee award sought by
Class Counsel.  The Class itself is large, comprising approximately more than 12 million
households.  In dollar terms, moreover, the magnitude of the litigation is equally
substantial. The consumers who purchased Osteo Bi-Flex and the other joint health
supplements  have spent hundreds of millions of dollars as a result of deceptive claims
made by Rexall; the Settlement substantially addresses this issue by providing
compensation to the Class members, as well as a substantial overhaul of the claims made
by Rexall for these products, that will now prohibit it from making, among other things, the
false claim that glucosamine and/or chondroitin can renew or rebuild cartilage, on many
different branded and private label products.  This alone is a significant accomplishment of
Jennings and his counsel, because Rexall has agreed to remove the claim that Jennings
challenged and which was alleged to be false and deceptive through the efforts of his
counsel.  By any measure, the magnitude of the case is substantial, fully justifies Class
Counsel's investment of time and labor, and fully merits the requested fee award.  In
addition, the litigation involved a number of complex legal and factual issues - many of
them raised by Rexall as substantive defenses. Rexall vigorously defended the *Jennings*
case, having filed two motions to dismiss, a motion for summary judgment, motions *in
limine*, and preparing the case for the "exemplar" trial, and agreeing to the Memorandum
of Understanding only the night before the Parties were scheduled to begin a jury trial.

**The Risk of the Litigation**

33.     The risks involved in prosecuting this action support the requested award of

attorneys' fees. From the outset, there was no assurance that the Class would prevail, or

that Class Counsel would receive any fee for its efforts. D&C (and our prior firm) accepted

this case on a purely contingent basis, investing substantial time, money, energy, and lost

opportunity costs to prosecute the action without any guarantee of compensation (or even

reimbursement of its out of pocket costs). Unlike defense counsel, who are paid hourly

rates and reimbursed on a regular basis for their expenses, Class Counsel has received

no compensation since this case began. Moreover, there was no way to know whether

D&C would ever be compensated for its substantial commitment to this action. In fact, the

case law is littered with unsuccessful class actions that provided no relief to the putative

class and no fee for class counsel.

34.     Viewed from the outset of the litigation, Class Counsel faced substantial

risks, including the risk of not prevailing on a possible motion to dismiss, and later, class

certification, summary judgment, trial, or appeal. The specific risks include the risks of not

prevailing on Jennings' allegations concerning the deceptive nature of Rexall's claims

about the efficacies of its products and establishing damages. Of course, Class Counsel

received no compensation while incurring the risks of the litigation. To the contrary, Class

Counsel incurred 100% of the risk, devoting their time and labor to identifying Rexall's

wrongdoing, evaluating Rexall's potential liability, analyzing potential legal theories,

drafting the Complaint, engaging in extensive document discovery, interrogatories, and

depositions, opposing Rexall's two motions to dismiss, its summary judgment motion, and

its tendering of two expert witnesses. Throughout, there was no assurance of success or

compensation. The requested fee award is entirely reasonable in light of the risks incurred by D&C.

**The Quality of Representation**

35.    In addition, the quality of Class Counsel's representation is reflected in the reputation of D&C; the experience of the attorneys principally involved in this case; and above all, the manner in which they prosecuted this case from the pleadings, through discovery, to the settlement negotiations and the instant motion for final approval. The Settlement negotiated with Rexall is a highly favorable outcome for the Class, and is the direct result of the creativity, diligence, hard work, and skill brought to bear by Class Counsel at every stage of the proceedings. Moreover, this result was achieved without the assistance of any governmental enforcement action. Throughout the litigation, moreover, Class Counsel put the best interests of the Class ahead of their own, negotiating the most favorable settlement terms possible before turning to the question of attorneys' fees, and then negotiating a fee to be paid by Rexall, rather than by the Class, and which in no way diminishes or erodes the benefits received by Class Members. Class Counsel's exemplary prosecution of this class action weighs strongly in favor of the proposed fee award.

**The Requested Fee in Relation to the Settlement**

36.    The combined requested fee award of all Class Counsel amounts to approximately 11% of the minimum total potential benefit to the Class.  This minimum total potential benefit to the Class consists of the minimum amount of the total compensatory benefit available to the Class of $20.2 million (consisting of $14.2 million available for claims by Class Members who received direct notice, plus $1.5 million for costs of notice and administration and $4.5 million for attorneys' fees and expenses) and $21.7 million

(the minimum value to the Class of the injunctive relief which requires Rexall to change is

labels), for a total of $41.9 million.  The aggregate requested fee of $4.5 million amounts to

approximately 11% of the minimum total benefit available to the Class from the Settlement.

37.     With respect to the claims paid to the Class, there is no limit on the number

of claims that Rexall will pay.   As shown in the Declaration of Keith Reutter, Ph.D., the

minimum value of the fund created for the benefit of the Class is $14.2 million.   Under the

Settlement Agreement, each member of the Class has the right to file a claim for no less

than $3.  There are approximately 12 million members of the Class, and the notice

program reached over 76% of the Class Members, or approximately 9.1 million people.

Furthermore, at least 4,718,651 received direct notice of the settlement, either by email or

by postcard.  Thus, assuming that each of the 9.1 million (76% of the 12 million Class

Members) files a claim for only one undocumented purchase ($3), the upper range of the

minimum value of the funds Rexall has agreed to pay is approximately $27.3 million.  If the

analysis is limited to the members of the Class who received direct notice (4,718,651), the

resulting value of the fund made available is approximately $14.2 million.[5]  The costs of

notice and administration of at least $1.5 million and the aggregate attorneys' fees and

expenses award of $4.5 million are added to the $14.2 million, for a total minimum

---

[5] The Settlement Agreement also provides for a minimum payment/floor of at least $2 million to be paid out by Defendants to consumers who make valid claims.  If the total dollar value of valid claims is less that $2 million, the payment to each Settlement Class member who submits a valid claim with adequate proof of purchase shall be increased *pro rata* up to a maximum of triple what he or she was entitled until the payments reach $2 million.  If these increases do not exhaust the minimum $2 million payout, then the payment to each Settlement Class member who submits a valid claim without proof of purchase shall be increased *pro rata* up to a maximum of double what he or she was entitled until the total payments reach $2 million.  If, after these payments, the total payments do not reach $2 million, the residual amount will be paid to the Orthopaedic Research and Education Foundation (OREF), subject to Court approval.

compensatory benefit to the Class of $20.2 million.

38.     The label changes required by the Settlement Agreement also provide a significant financial benefit to the Class.  The Settlement Agreement completely eliminates one of the key false marketing claims alleged in these lawsuits, which Jennings and his counsel forced through their tireless efforts.  Rexall has agreed to stop making misrepresentations that its products will renew or rebuild cartilage.  This labeling change is nothing short of industry changing – joint/cartilage renewal/rejuvenation has been one of the key marketing messages made by Rexall and the vast majority of glucosamine/chondroitin manufacturers about these products for over a decade. Eliminating this marketing message will result in significant financial savings to the Class Members.

39.     These labeling changes are also significant because no longer will Rexall be able to make unqualified representations that the Covered Products will provide relief for all persons who take these products.  Instead, consistent with the scientific evidence which reflects that in excess of 35% of users of these products experience a "placebo effect," consumers will now be told – up front – that these products may or may not work for them.   In short, the injunctive/labeling relief is a significant component of this settlement in that it will require the industry leader in the manufacture and sale of glucosamine/chondroitin products to refrain from making key misrepresentations about its products and also provide important consumer disclosures about the variability of its products' purported benefits.

40.     Plaintiffs have quantified the value of the injunctive relief.  As set forth at length in the accompanying Declaration of Keith Reutter, Ph.D., the monetary value of the

injunctive relief/label changes amounts to not less than $21.7 million in favor of the Class.

41.     Thus, all told, the minimum total potential benefit to the Class is $41.9 million.  The fee requested by D&C is approximately 6% of that minimum total potential benefit, which is a very reasonable amount as fully explained in Plaintiffs' accompanying Memorandum of Law in support of this motion.

**Public Policy Considerations**

42.     The settlement obtained by Class Counsel provides substantial benefits to the public. First and foremost, the Settlement serves public policy - as embodied in the various state consumer fraud statutes that the claims are brought under – by compensating consumers, and requiring Rexall to amend its labels so that there are no more false or deceptive claims made about the efficacies of Rexall's products. This will prevent future consumers from being deceived when purchasing products, and allow them to make better informed judgments when purchasing the products. Class Counsel deserve substantial credit for bringing about these substantial prospective benefits to the public, as well as obtaining direct financial benefits to Rexall members aggrieved by the false and deceptive manner in which Rexall's products were marketed.

43.     Again, the label changes are particularly significant in light of the fact that Rexall's own marketing documents demonstrate how important the "renew" or "rebuild" cartilage claim is to consumers' decisions to purchase these products.  The fact that Rexall – an industry leader – has agreed to remove this deceptive claim, and to address other of the challenged representations about the efficacies of its products amounts to a significant change in the dietary supplement industry.  There are many other lawsuits pending throughout the United States concerning joint health supplements, and Plaintiffs expect

23

that other manufacturers will follow the outcome of this case and also change their labels.

**The Lodestar/Multiplier Method**

44.    The fee requested in this case is also justified under the lodestar method. D&C  reasonably devoted approximately 1478 hours to this action, including time spent researching the facts and the law, drafting the Complaint, conducting document discovery, taking and defending depositions, briefing several motions including motions to dismiss and a motion for summary judgment, preparing for the "exemplar" trial, negotiating the Settlement, and responding to Class Members' inquiries.  Applying D&C's typical hourly rates ($625.00 to $675.00), which are reasonable and well within the range typically charged by similarly well qualified counsel in the New York metropolitan area, yields a lodestar of $938,790.00.

45.    D&C's contingency risk, the quality of representation, the outstanding result achieved, and other relevant factors support the application of a modest 2.7 multiplier to confirm that the requested $2,500,000 award to D&C (inclusive of $93,187.13 in disbursements) is reasonable and should be approved.  Indeed, Jennings selected D&C as Class Counsel because he was aware of the firm's outstanding work, its experience in class litigation, and its comparatively modest rates.

46.    Comparing the lodestar with the requested fee of $2,500,000 minus $93,187.13 in expenses yields a multiplier for D&C of 2.56.  That multiplier is unquestionably within the range of multipliers found reasonable by courts in this Circuit, and is fully justified in light of the effort undertaken by Class Counsel, the recovery achieved, and risks involved.

24

**Incentive Award to Plaintiff Jennings**

47.     Class Counsel respectfully requests that the Court should approve the payment of an incentive award of $5,000 to Jennings in recognition of his efforts on behalf of the Class.  Pursuant to the Settlement Agreement, Rexall has agreed to pay this award using its own resources, which means this payment will not reduce or erode the benefits provided to the Class members.  The requested payment is well deserved and falls well within the range of incentive awards approved in prior cases.

48.     Jennings shouldered considerable burdens in representing the class.  He reviewed and discussed with us the pleadings, discovery demands, discovery responses and other documents. He responded to discovery (interrogatories and request for production of documents), and opened up his medical history to Rexall, producing medical records that in some cases dated back more than 10 years. He sat for a deposition that lasted the better part of a day.  He met with us on several occasions, including prior to the filing of the Complaint, to prepare for his deposition and during his deposition, and corrected his deposition transcript.  He conferred with us regarding the settlement negotiations, at all times encouraging D&C to obtain the best possible result for the absent class members.

49.     Finally, Jennings' efforts were essential in obtaining an extraordinary victory for the Class, including an unlimited amount of compensation in favor of the class, and a change to Rexall's labels which removes the deceptive claim that deceived Jennings in the first place, that the products will rebuild or renew cartilage. Under the circumstances, a $5,000 incentive award, to be paid by Rexall, is entirely reasonable.

50.     In light of the above and as set forth more fully in the accompanying

Memorandum of Law, I respectfully submit that the Court should  (i) grant final approval to

the settlement, (ii) award Jennings the incentive award to which he is deserving and (iii)

award D&C attorneys' fees, costs and expenses in the amount of $2,500,000, which Rexall

has agreed to pay.

        I declare under penalty of perjury that the foregoing is true and correct.

Executed on September 4, 2013 in White Plains, New York.


_____
JEFFREY I. CARTON

## CERTIFICATE OF SERVICE

I hereby certify that on September 4, 2013, a true and correct copy of the following document was electronically filed and served on all counsel of record in this action who are deemed to have consented to electronic service via the Court's CM/ECF system: **Declaration of Jeffrey I. Carton, Esq. in Support of Final Approval of Settlement, Attorneys' Fees and Expenses and Incentive Awards.**

I also certify that the foregoing document is being served by U.S. Mail this day on all counsel of record or *pro se* parties identified below who are not authorized to receive electronically Notices of Electronic Filing.

C. Jane Radlinski
309 E. Church Street
Jacksonville, FL 32202-2725
(904) 633-2699
*Pro se Objector*

John Michael Buckley
370 Canyon Spring Dr.
Rio Vista, CA 94571
(707) 374-3853
*Pro se Objector*

Peggy Thomas
2109 N.W. 12th Avenue
Ft. Lauderdale, FL 33311
(954) 761-1589
*Pro se Objector*

Simone Thomas
2109 N.W. 12th Avenue
Ft. Lauderdale, FL 33311
(305) 903-6935
*Pro se Objector*

Rhonda L. Paulson
13383 E. Marie Creek Road
Couer d'Alene, ID 83814
*Pro se Objector*

Donald Charles Koneval
8314 Manorford Drive
Parma, OH 44129-5309
(440) 842-6232
*Pro se Objector*

Anthony Leardi
1813 Renwick Street
Bethlehem, PA  18017
(610) 865-7821
*Pro se Objector*

Joseph Darrell Palmer
Law Office of Darrell Palmer PC
603 N. Highway 101, Suite A
Solana Beach, CA  92075
(858) 792-5600
*Attorney for Objectors*
*Kathleen McNeal and*
*Alison Paul*

Melissa A. Holyoak
Center for Class Action Fairness
1718 M Street NW, No. 236
Washington, DC 20036
(573) 823-5377
*Attorney for Objector Ted Frank*

Jonathan E. Fortman #40319
250 Saint Catherine Street
Florissant, Missouri 63031
(314) 522-2312
*Attorney for Objector Pamela Easton*

Steve A. Miller
Steve A. Miller, PC
1625 Larimer Street, No. 2905
Denver, CO  80202
(303) 892-9933
*Attorney for Objector Pamela Easton*

Maureen Connors (0074094OH)
6625 Pearl Road
Parma Heights, OH 44130
(216) 640-9860
*Attorney for Objector Pamela Easton*

John C. Kress (53396MO)
The Kress Law Firm, LLC
4247 S. Grand Blvd.
St. Louis, MO 63111
(314) 631-3883
*Attorney for Objector Pamela Easton*

/s/ Peter N. Freiberg
One of Plaintiffs' Attorneys

# Exhibit A

# Denlea & Carton LLP

One North Broadway
Suite 509
White Plains, NY 10601
Tel 914.920.7400
Fax 914.761.1900
www.denleacarton.com

## **INTRODUCTION**

Denlea and Carton LLP was formed in January 2013, by a group of six attorneys with over a century of combined experience between them. Although newly-formed, the attorneys at Denlea & Carton have substantial litigation experience in complex consumer fraud and class action cases. We have successfully prosecuted a myriad of class action cases throughout the country. In addition to our class action practice, we also represent clients in trial and appellate courts and arbitral forums in a variety of complex commercial matters.

The firm's attorneys have been on the cutting edge of consumer fraud and class action practice throughout the country. Jeffrey Carton recently argued before the Massachusetts Supreme Judicial Court in the landmark case of Tyler v. Michaels Stores, Inc., which held that the collection of zip codes in connection with credit card purchases violates Massachusetts General Laws ch. 93, §105 prohibiting the collection of personal identification information in connection with commercial transactions. Jeff also successfully argued before the New Jersey Supreme Court the leading consumer fraud case in New Jersey, Lee v. Basic Research, et. al., which resulted in the unanimous 9-0 opinion reversing two lower courts' decisions denying class certification in a consumer fraud class action. Jeff has successfully prosecuted consumer fraud class actions against, among others, Costco, Sam's Club, The Gap, Empire Blue Cross, Shell, Bayer and Ticketmaster, recovering tens of millions of dollars for consumers.

Similarly, Peter Freiberg spearheaded an extremely complex class action in a New York federal district court in which he represented commercial lobstermen from New York and Connecticut whose livelihoods were decimated by a massive die-off of lobsters caused by pesticides, which resulted in a very favorable settlement for the class. Robert Berg has been lead counsel or co-lead counsel in numerous securities and consumer fraud cases that have recovered hundreds of millions of dollars for aggrieved investors and consumers, and was trial counsel in one of the rare class action cases to go to trial.

Our attorneys graduated from some of the best colleges and law schools in the country, including Columbia University, Dartmouth College, Amherst College, University of Pennsylvania, University of Chicago, and Tulane University. We have also trained at some of the finest law offices in the country, including Cravath, Swaine & Moore, DLA Piper, Thacher Proffit & Wood, Proskauer, Skadden Arps, Bernstein Liebhard, and the offices of the Manhattan and Westchester County District Attorneys.

Our attorneys are ranked at the top of their profession, and have been recognized by Super Lawyers, US News & World Reports' "Best Lawyers", Martindale-Hubbell, the Million Dollar Advocates Forum, the American Bar Foundation, and Litigation Counsel of America as amongst the most experienced and well-qualified attorneys in the country.

## REPRESENTATIVE CLASS ACTION CASES

Denlea & Carton's attorneys have been certified as class counsel and/or

have successfully prosecuted numerous class actions including:

*Llanos v. Shell Oil Company And Shell Oil Products US*, No. SU-2006-009404 (N.Y. Sup. Ct.). State-wide class action alleging that Shell improperly imposed monthly inactivity or dormancy fees on Shell Gift Cards in violation of New York Gen. Bus. L. § 349 and Shell's contracts with its customers. The court certified the class and approved a settlement on March 31, 2010.

*Argento v. Wal-Mart Stores*, No. 22850/06 (N.Y. Sup. Ct.). On October 2, 2009, the New York Appellate Division granted plaintiff's motion for certification of a statewide class of consumers alleging that Sam's Club violated state consumer protection laws and its membership contracts by backdating membership renewals. The court subsequently approved a settlement in June, 2012.

*Dupler v. Costco Wholesale Corporation*, Civ. No. 06-3141 (E.D.N.Y.). Class action alleging that Costco backdated membership renewals purchased after the prior membership period's expiration date, in violation of state consumer protection laws and Costco's membership contracts. Class certification was granted on January 31, 2008 and a nationwide class settlement was approved on April 20, 2010.

*In re Ticketmaster Sales Practices Litigation*, No. 09-0912 (C.D. Cal.). Court appointed counsel interim co-lead counsel pursuant to Federal Rule of Civil Procedure 23(g) on July 17, 2009. On February 13, 2012, the court granted final approval for a settlement.

*In re Bayer Corp. Combination Aspirin Products Marketing and Sales Practices Litigation*, No. 09-2023 (E.D.N.Y.). On June 8, 2009, the court appointed Jeffrey I. Carton to Plaintiff's Executive Committee in this Multidistrict Litigation in which plaintiffs allege that Bayer Healthcare LLC violated state consumer protection and warranty laws in connection with the deceptive marketing and sales of Bayer combination aspirin products.

*Luks v. Empire Blue Cross/Blue Shield*, Index No. 03/64337 (N.Y. Sup. Ct. N.Y. Cty.). Statewide class action brought on behalf of more than 1,000 surgeons that compelled insurer to revoke its policy, commonly referred to as the "single incision" policy, of refusing to cover certain medically appropriate surgical procedures. The action was resolved on a class-wide basis, providing millions of dollars in reimbursement to New York physicians.

*Breedlove v. Window Rock Ent., Inc.*, 04-00610 (Cal. Super. Ct. Orange Cty.). Consumer class action challenging false and deceptive advertising for the popular diet supplement CortiSlim. The case was resolved on a nationwide class basis.

*Costa v. Kerzner International*, 11-60663 (S.D.Fla.). Class action challenging Atlantis' Resorts practice of collecting a mandatory housekeeping gratuity. A final class settlement was approved.

*Fox v. Cheminova, Inc.*, 00-5145 (E.D.N.Y.). Class action brought against pesticide manufacturers on behalf of commercial lobstermen on Long Island Sound, alleging destruction of lobster stock. The court certified the class and approved a settlement.

*Aggarwal v. Magicjack LP*, No. 50 2011 CA 009521 (Fla. Cir. Ct. Palm Beach Cty.). Class action alleging consumers' renewal dates for computer based telephone services were unlawfully backdated. Final approval of a nationwide class action settlement was granted on July 23, 2012.

*Held v. AAA Southern New England*, 3:11-cv-105-SRU (D. CT.). Class action alleging that the AAA did not adequately disclose its policy of using a member's prior expiration date as the commencement date for renewal memberships. On August 6, 2013, the court provided its final approval of a settlement.

# ATTORNEYS

## JAMES R. DENLEA

***Education:***
Dowling College, B.A. 1976 summa cum laude
Pace University School of Law, J.D. 1979

***Bar Admissions:***
New York State
United States District Courts for the Southern, Eastern and Northern
Districts of New York

***Honors and Achievements:***
Super Lawyers
Elite Lawyers of America
Multimillion Dollar Advocates Forum
Fellow, American Bar Foundation

Upon graduation from law school, Jim became a Westchester County Assistant District Attorney. Due to a prosecutor's exemption, he won his first jury trial before he was informed that he passed the Bar exam. That victory began a distinguished thirty year career as a trial attorney, as notable for the diversity of cases tried, as it has been for Jim's success before a jury.

Among Jim's many professional accomplishments, are a $5.6 million verdict in a propane explosion case; representing the trustees of the estate of renowned diet doctor Dr. Robert Atkins; prosecuting the wrongful death action of Baltimore Orioles pitcher Steve Bechler, and serving as lead defense counsel in the consolidated tort actions concerning the capsizing of the Ethan Allen tour boat on Lake George, an action involving twenty fatalities.

Jim's abilities as a trial lawyer have enabled him to litigate both plaintiffs' and defense actions with equal dexterity. As a plaintiff's attorney (involving non-medical malpractice cases), Jim has secured awards of $3.5 million for a roofer who fell from a slate roof; a $7 million recovery for a corporation after a fire loss; and multiple recoveries in excess of one million dollars for victims of sexual abuse, burn cases, and motor vehicle accidents.

As a defense lawyer, Jim is regularly requested to personally represent physicians throughout the state. The scope of this representation includes defending physicians in malpractice actions, as well as representing their interests before the Office of Professional Medical Conduct (OPMC) and in investigations conducted by the Department of Health and the Federal Bureau of Investigation.

In the field of intellectual property, Jim has obtained a million dollar settlement in a patent action. He represented the interests of an international manufacturer of

engineering components in Lanham Act claims involving numerous infringements upon the company's trademarks. He also assists physicians in protecting their intellectual property involving new medical devices and the expanded utilization of existing technology. Jim was also responsible for the development of proprietary software that enabled a national insurance company to dramatically reduce losses due to fraudulent claims.

Most recently, Jim successfully argued an appeal before the Second Circuit Court of Appeals, which overturned a District Court ruling involving issues of standing and interstate commerce.

Jim is a Fellow of the American Bar Foundation, a perennial Super Lawyer, as well as a lifetime member of the Multi-Million Dollar Advocates and Elite Lawyers.  While such recognition from his peers is appreciated, Jim has always found the connection with a client, for whom he has obtained a life-altering result, to be far more rewarding.


## JEFFREY I. CARTON

### *Education:*
Dartmouth College, B.A. 1988 cum laude
Columbia Law School, J.D., 1991

### *Bar Admissions:*
New York State
Connecticut State
United States District Courts for the Southern, Eastern and Northern Districts of New York and the District of Connecticut
United States Courts of Appeals for the Second, Third, Fifth and Ninth Circuits
United States Supreme Court

### *Honors and Achievements:*
Top 25 Super Lawyers in Westchester County, New York 2007-present
U.S News and World Reports Best Lawyers in America, Commercial Litigation 2013
Elite Lawyers of America
Multimillion Dollar Advocates Forum
Fellow, American Bar Foundation
Fellow, Litigation Counsel of America

For the past six years, Jeff has been recognized annually by his peers as one of the Top 25 New York "Super Lawyers" in Westchester County and has recently been chosen as one of US News & World Report's "Best Lawyers in America" in the area of commercial litigation. He has also been selected as a lifetime member of "Elite Lawyers in America," "The Multi-Million Dollar Advocates Forum," and "Top Trial Lawyers in America," and inducted as a Fellow into both the prestigious Litigation Counsel of America and the venerable American Bar Association Foundation.

Jeff's versatility in the Courtroom and dexterity with a wide array of subject matters has led to his handling of many high profile, difficult cases. Among other matters, Jeff successfully led the defense in federal court of a boat-builder wrongfully implicated in the "Ethan Allen" tragedy on Lake George in which twenty persons perished, winning summary judgment on the client's behalf; argued before the New Jersey Supreme Court the landmark consumer fraud class action, Lee v. Basic Research, which resulted in a unanimous, 9-0 opinion overturning the lower courts' decisions denying class certification; and successfully prosecuted the highly publicized "Borgata Babes" employment discrimination action against the Borgata Casino in Atlantic City. Jeff's reputation for excellent results and dogged preparation, make him a formidable adversary.

Jeff has also successfully tried to verdict a diverse number of matters, including securing a defense verdict for Madison Square Garden and Amtrak in a federal jury trial in the Eastern District of New York; winning a multi-million dollar jury award in a state court breach of contract action in White Plains; prevailing in a nine month real estate fraud arbitration in New York City in which he recovered a multi-million dollar judgment; and obtaining a $4.5 million jury verdict in Columbia County against Rensselaer Polytechnic Institute (RPI).

Jeff's experience in the sports, media and entertainment industries has also allowed for his successful handling of a variety of matters including claims of copyright infringement, trademark infringement, breach of television Executive Production Agreements, royalty disputes, and artist-management conflicts. Jeff has advised television broadcast journalists, senior media executives and executive producers on a wide range of issues concerning non-competes, first amendment rights, and compensation and severance disputes.

Jeff led the successful prosecution of the wrongful death action of Baltimore Orioles' pitcher Steve Bechler, helped extricate former light heavyweight World Champion boxer Reggie Johnson from an onerous promoter's contract, and counseled the Estate of Tito Puente, the Latin Salsa King, in a misappropriation of name and likeness litigation. Jeff also spearheaded the successful prosecution of the United States Tennis Association's (USTA) multimillion dollar breach of contract action against a sponsor of the US Open, and successfully defended Heineken in a breach of contract action arising from a marketing services agreement. Jeff regularly counsels media and entertainment clients in contract negotiations, severance disputes, and intellectual property matters.

Jeff is a cum laude graduate of Dartmouth College, a graduate of Columbia Law School and began his career as a litigator at Cravath Swaine & Moore.

## PETER N. FREIBERG

**_Education:_**
University of Pennsylvania, B.A. 1986
Tulane University School of Law, J.D. 1989 cum laude

**_Bar Admissions:_**
New York State
Louisiana State
Connecticut State
United States District Courts for the Southern District of New York, the District of
Connecticut, and the Eastern, Middle and Western Districts of Louisiana
United States Courts of Appeals for the Second, Third, Fifth, Sixth
and Eleventh Circuits.

**_Honors and Achievements:_**
Adjunct Professor of Trial Advocacy, Tulane University School of Law
Frequent Speaker at Continuing Legal Education Seminars sponsored by
the National Business Institute
Co-Chair of Inspector General Task Force for the City of New Orleans
Martindale-Hubbell A-V Rated
Super Lawyers

Peter graduated from the University of Pennsylvania and received his law degree
from Tulane University School of Law, *cum laude*. After graduating from law school, Peter
served as an Assistant District Attorney with the Manhattan District Attorneys' Office,
where he learned the fundamentals of trial practice. While serving as a prosecutor, he
tried approximately 40 cases to verdict, most of them jury trials, and handled countless
grand jury presentations and pre-trial hearings. Since leaving the District Attorneys' office,
Peter has actively litigated a wide variety of cases on behalf of a diverse group of clients,
representing both plaintiffs and defendants. He regularly appears in state and federal trial
and appellate courts, and is rated by his peers through Martindale-Hubbell as A-V
Preeminent, which is the best peer ranking available for attorneys signifying the highest
level of professional and ethical excellence.

Peter's diverse experiences as an attorney have entailed a wide range of cases.
Over his career, he has prosecuted and defended large mass tort, toxic tort and class
action lawsuits; successfully litigated high-end personal injury cases; handled a variety of
admiralty and maritime tort and commercial matters; litigated environmental damage
claims, including insurance coverage aspects of environmental damages; successfully
prosecuted employment discrimination cases; and prosecuted and defended general
commercial and securities matters, including shareholder and partnership disputes,
corporate dissolutions and fraud cases.

Peter's more notable cases include:

Representing a group of commercial fishermen in a class action that resulted in a

substantial settlement against pesticide manufacturers;

Successfully litigating property damage cases against large multi-national oil companies, resulting in settlements which provided for monetary compensation to his clients and the clean-up of contaminated properties;

Defending petrochemical companies and railroad companies against sprawling class action and mass tort cases, including at trial;

Litigating complicated environmental insurance coverage case involving large corporate insureds;

Representing insureds in efforts to obtain coverage under different types of insurance policies;

Representing parties in two separate inter-family corporate disputes, both of which were decided by juries in his clients' favor;

Securing a favorable jury verdict in a federal employment discrimination case.

In addition, Peter often handles real estate and general commercia matters. He conducts real estate closings, prepares commercial leases, drafts shareholder and limited liability company operating agreements, and handles the various commercial needs of his clients. Peter also handles many physicians' commercial needs.

Peter served as an Adjunct Professor of Trial Advocacy at Tulane Law School for ten years, where he taught trial practice to third year law students. He has served as a frequent speaker at continuing legal education seminars, and also co-chaired a task force that advised an incoming Mayor of the City of New Orleans on how to implement an Inspector General department into city government.

# Exhibit B

MEISELMAN, PACKMAN, NEALON, SCIALABBA & BAKER P.C.
Attorneys At Law
1311 Mamaroneck Avenue

White Plains, New York   10605

Telephone # (914) 517-5000

---

**PERSONAL AND CONFIDENTIAL**

Jul 29/13

JENNINGS V. REXALL SUNDOWN, INC.
CIVIL ACTION NO. 11-CV-11488 (WGY)
FILE # 16437

---

| DATE | | DESCRIPTION | HOURS |
|---|---|---|---|
| Apr-12-11 | CR | RESEARCH RE CARTILAGE BUILDING PRODUCTS, CLAIMS ETC; PRINT FINDINGS; | 3.50 |
| Apr-15-11 | JRD | CONFERENCE WITH P. FREIBERG AND J. CARTON; | 1.50 |
| | JIC | CONFERENCE WITH P. FREIBERG AND J. DENLEA RE: PROSPECTIVE NEW LITIGATION; | 1.75 |
| | PNF | RESEARCH REGARDING VALIDITY OF CLAIMS/CAUSES OF ACTION, AS WELL AS FDA PROCEDURES REGARDING SUPPLEMENTS; CONFERENCE WITH J. CARTON AND J. DENLEA; | 5.50 |
| | CR | ADDITIONAL RESEARCH RE CARTILAGE BUILDING SUPPLEMENTS, LABELING AND MANUFACTURERS; CONFERENCE WITH P. FREIBERG; | 3.00 |
| Apr-18-11 | PNF | LEGAL RESEARCH REGARDING FDA PROCEDURES FOR "DISEASE CLAIMS" AND "STRUCTURAL CLAIMS" ASSOCIATED WITH DIETARY SUPPLEMENTS; | 5.00 |
| Apr-20-11 | JIC | CONFERENCE WITH P. FREIBERG RE; RESULTS OF RESEARCH; REVIEW FDA MATERIALS; | 2.50 |
| | PNF | FURTHER RESEARCH REGARDING FDA REQUIREMENTS FOR SUBMITTING HEALTH CLAIMS AND DISEASE CLAIMS REGARDING SUPPLEMENTS; CONFERENCE WITH J. CARTON; | 4.50 |
| May-05-11 | PNF | LEGAL RESEARCH REGARDING FDA PROCEDURES FOR MAKING HEALTH CLAIMS;   BEGIN DRAFTING COMPLAINT; | 4.50 |

Invoice #:  Sample                     File #:  16437-CONT                  Page 2

| | | | |
|---|---|---|---|
| May-09-11 | PNF | DRAFT 3O DAY DEMAND LETTER UNDER MUTPA; RESEARCH MUTPA STATUTE; | 3.75 |
| May-10-11 | PNF | RESEARCH REGARDING HEALTH AND BODILY FUNCTION CLAIMS REGISTERED WITH THE FDA; | 4.00 |
| May-11-11 | JIC | REVIEW DRAFT DEMAND LETTER TO REXALL; EDIT/REVISE SAME; CONFERENCE WITH P. FREIBERG; | 1.75 |
| | PNF | RESEARCH ON FDA APPROVAL OF HEALTH CLAIMS; | 3.75 |
| May-12-11 | PNF | EDIT DEMAND LETTER TO REXALL SUNDOWN; CONFERENCE WITH J. CARTON; | 1.50 |
| Jun-06-11 | PNF | RESEARCH REGARDING FDA APPROVAL OF HEALTH CLAIMS AND WHETHER THAT PREEMPTS CONSUMER FRAUD CLAIMS; | 4.50 |
| Jun-10-11 | JIC | REVIEW CORRESPONDENCE FROM OPPOSING COUNSEL; CONFERENCE WITH P. FREIBERG RE: SAME; | 0.75 |
| | PNF | RECEIPT AND REVIEW OF CORRESPONDENCE FROM COUNSEL FOR REXALL; RESEARCH BBB NATIONAL ADVERTISING DIVISION REGULATIONS; DRAFT AND EDIT JENNINGS COMPLAINT; | 4.75 |
| Jun-13-11 | PNF | EMAILS WITH PROSPECTIVE CLIENT REGARDING COMPLAINT AND RETAINER; | 0.60 |
| Jun-14-11 | PNF | RESEARCH BBB NAD DECISIONS, AND THE FORCE OF AUTHORITY THEY BEAR; LETTER TO MS. PERRON REGARDING SAME; | 1.50 |
| Jun-24-11 | PNF | RECEIPT AND REVIEW OF NAD DOCUMENTS FROM MS. PERRON; | 1.00 |
| Jun-27-11 | PNF | RESEARCH INTO NAD FINDINGS AND OTHER ASPECTS OF GLUCOSAMINE REBUILDING CARTILAGE (SCIENCE); | 3.75 |
| Jul-11-11 | PNF | CONFERENCE WITH MR. JENNINGS; LEGAL RESEARCH REGARDING FTC STANDARDS FOR MARKETING DIETARY SUPPLEMENTS; REVIEW SCIENTIFIC ARTICLES; | 5.50 |
| Jul-14-11 | PNF | REVIEW FTC GUIDE TO MARKETERS REGARDING ADVERTISING DIETARY SUPPLEMENTS; | 3.75 |
| Jul-15-11 | JIC | EDIT/REVISE/REVIEW DRAFT COMPLAINT; CONFERENCE WITH P. FREIBERG RE: SAME; | 3.50 |
| | PNF | EDIT COMPLAINT; REVIEW MEDICAL LITERATURE; CONFERENCE WITH J. CARTON; | 5.00 |
| Jul-20-11 | GDB | REVIEW AND ANALYSIS OF DRAFT COMPLAINT AND CONFER WITH P. FREIBERG RE: SAME | 1.75 |

July 29, 2013

Invoice #:  Sample                        File #:  16437-CONT                    Page  3

|  |  |  |  |
|---|---|---|---|
|  | PNF | EDIT COMPLAINT; CONFERENCE WITH G. BLANKINSHIP AND J. CARTON; | 3.50 |
| Jul-21-11 | PNF | EDIT COMPLAINT; CONFERENCE WITH MR. BLANKENSHIP; | 2.50 |
| Jul-27-11 | GDB | WORK ON COMPLAINT AND CONFER WITH J. CARTON RE: SAME | 3.00 |
|  | JIC | REVIEW DRAFT COMPLAINT; CONFERENCE WITH G. BLANKINSHIP REGARDING SAME; | 1.75 |
| Aug-01-11 | PNF | RESEARCH REXALL'S OPERATIONS IN FLORIDA; | 2.00 |
| Aug-02-11 | CR | CONFERENCES WITH G. BLANKINSHIP AND P. FREIBERG RE: SUMMONS, COMPLAINT AND COVER SHEET; | 0.10 |
| Aug-04-11 | GDB | REVIEW AND ANALYSIS OF COMPLAINT; CONFER WITH P. FREIBERG RE: SAME AND RE: FILING; | 1.50 |
|  | PNF | EDIT COMPLAINT; CONFERENCE WITH MR. BLANKINSHIP; | 1.00 |
|  | CR | PREPARE SUMMONS, CIVIL COVER SHEET, AND LOCAL CATEGORY SHEET; CALL TO DISTRICT COURT RE: CORRECT DIVISION; CONFERENCES WITH G. BLANKINSHIP RE: DOCUMENTS NEEDED TO BE PREPARED AND FILED; REVIEW COURT WEBSITE FOR INFORMATION AND DOCUMENTS TO BE PREPARED; | 1.30 |
| Aug-08-11 | PNF | LEGAL RESEARCH REGARDING CHOICE OF LAW/NERVE CENTER ANALYSIS; | 4.50 |
| Aug-15-11 | GDB | RESEARCH RE: FLORIDA CONNECTIONS WITH REXALL AND CONFER WITH J. CARTON AND J. DENLEA RE: SAME | 3.00 |
|  | CR | CONFERENCES WITH G. BLANKINSHIP RE: FILING SUMMONS AND COMPLAINT; PREPARE E-MAIL TO COURT SERVICE RE: SAME; RECEIPT AND REVIEW E-MAIL FROM COURT SERVICE IN RESPONSE; | 0.40 |
| Aug-16-11 | GDB | RESEARCH RE: POTENTIAL CLAIMS UNDER FLORIDA LAW | 3.50 |
| Aug-19-11 | GDB | CONFER WITH J. CARTON RE: VENUE; WORK ON COMPLAINT AND FILING OF SAME | 1.20 |
|  | CR | TELEPHONE CALL WITH SERVICE COMPANY FOR SUMMONS AND COMPLAINT FILING; PREPARE NEW CIVIL COVER SHEET; PREPARE LETTER TO PROCESS SERVER; PREPARE FEDERAL EXPRESS PACKAGE WITH SUMMONS, COMPLAINT, CIVIL COVER SHEET, AND CATEGORY SHEET, AND CHECKS FOR FILING FEES; | 0.50 |
| Aug-22-11 | GDB | CONFER WITH P. FREIBERG RE: COMPLAINT AND FILING OF SAME AND ENSURE PROPER FILING OF SAME | 0.50 |

July 29, 2013

Case 1:11-cv-07972   Document 124-2   Filed 09/04/13   Page 5 of 38   PageID 2070
Case: 14-1244      Document: 20-10      Filed: 03/27/2014      Pages: 76

Invoice #:  Sample                  File #:  16437-CONT                          Page 4

|  |  |  |  |
|--|--|--|--|
|  | CR | E-MAIL CORRESPONDENCE TO PROCESS SERVER RE: OK TO FILE COMPLAINT; RECEIPT AND REVIEW FEDERAL EXPRESS NOTIFICATION RE: DELIVERY AND RECEIPT OF COMPLAINT FOR FILING; | 0.30 |
| Aug-23-11 | GDB | CONFER WITH P. FREIBERG RE: VENUE | 0.20 |
|  | PNF | RECEIPT AND REVIEW OF FILED SUMMONS AND COMPLAINT; PROCESS SAME FOR SERVICE; | 0.30 |
|  | CR | RECEIPT AND REVIEW FILED SUMMONS AND COMPLAINT; EDIT SUMMONS TO INCLUDE DEFENDANT ADDRESS FOR SERVICE; PREPARE ELECTRONIC VERSIONS OF SAME; PREPARE E-MAIL CORRESPONDENCE TO PROCESS SERVER FOR SERVICE OF SAME; | 0.60 |
| Aug-26-11 | CR | PREPARE PRO HAC VICE MOTION FOR J. CARTON; PREPARE PRO HAC VICE MOTION FOR P. FREIBERG; PREPARE CERTIFICATE OF J. CARTON IN SUPPORT OF ADMISSION PRO HAC VICE; PREPARE CERTIFICATE OF P. FREIBERG IN SUPPORT OF ADMISSION PRO HAC VICE; | 1.00 |
| Sep-06-11 | PNF | CONFERENCE WITH MR. CARPENTER; REVIEW REXALL SUNDOWN'S MOTION TO DISMISS IN CALIFORNIA CASE; RESEARCH CASE LAW CITED THEREIN | 3.00 |
| Sep-08-11 | GDB | WORK ON PRO HAC VICE APPLICATIONS | 1.10 |
|  | CR | RECEIPT AND REVIEW PROOF OF SERVICE AS TO SUMMONS AND COMPLAINT ON DEFENDANT; E-FILE SAME; | 0.20 |
| Sep-09-11 | PNF | RECEIPT AND REVIEW OF NOTICES FROM COURT; | 0.20 |
| Sep-13-11 | CR | E-FILE MOTION FOR ADMISSION PRO HAC VICE WITH CERTIFICATE IN SUPPORT AS TO J. CARTON; PREPARE PAYMENT FOR SAME; E-FILE MOTION FOR ADMISSION PRO HAC VICE WITH CERTIFICATE IN SUPPORT AS TO P. FREIBERG; PREPARE PAYMENT FOR SAME; | 0.40 |
| Sep-14-11 | GDB | WORK ON PRO HAC VICE APPLICATIONS | 0.30 |
| Sep-15-11 | GDB | CONFER WITH D. FREDERICO, J. CARTON AND P. FREIBERG RE: MOTION FOR EXTENSION OF TIME; CONFER WITH P. FREIBERG RE: DISCOVERY TIMING AND SCOPE | 1.00 |
|  | JIC | REVIEW DRAFT STIPULATION; CONFERENCE WITH G. BLANKINSHIP REGARDING SAME; | 0.25 |
|  | PNF | LEGAL RESEARCH REGARDING LOSS CAUSATION AND TYPES OF DAMAGES THAT ARE RECOVERABLE; | 3.50 |
| Sep-16-11 | PNF | LEGAL RESEARCH REGARDING LOSS CAUSATION AND LABELING ISSUES UNDER THE DSHEA; | 4.00 |

Invoice #: Sample                     File #: 16437-CONT                     Page 5

| | | | |
|---|---|---|---|
| | CR | PREPARE REGISTRATION FORM FOR P. FREIBERG PRO HAC APPLICATION GRANTING; | 0.20 |
| Sep-22-11 | PNF | RESEARCH REGARDING COMPENSABLE DAMAGES; | 3.00 |
| Sep-29-11 | PNF | LEGAL RESEARCH REGARDING PERSONAL JURISDICTION OVER SELLERS OF NUTRITIONAL SUPPLEMENTS; | 4.50 |
| Oct-04-11 | GDB | CONFER WITH P. FREIBERG AND D. FREDERICO RE: MOTION TO DISMISS | 0.20 |
| Oct-07-11 | GDB | REVIEW AND ANALYSIS OF MOTION TO DISMISS | 2.50 |
| | PNF | RECEIPT AND REVIEW OF DEFENDANT'S MOTION TO DISMISS; | 2.50 |
| Oct-11-11 | GDB | REVIEW AND ANALYSIS OF MOTION TO DISMISS | 1.30 |
| | JIC | REVIEW DEFENDANT'S MOTION TO DISMISS; CONFERENCE WITH P. FREIBERG AND G. BLANKINBERG RE: LITIGATION STRATEGY AND PROSPECTIVE OPPOSITION; | 2.50 |
| Oct-12-11 | PNF | REVIEW CASE LAW CITED BY DEFENDANT IN MOTION TO DISMISS; CONFERENCE WITH MR. BLANKENSHIP; | 3.75 |
| Oct-14-11 | GDB | CONFER WITH P. FREIBERG RE: OPPOSITION TO MOTION TO STAY | 0.50 |
| | CR | REVIEW AND PREPARE TO EFILE PLAINTIFF'S ASSENTED TO MOTION TO EXTEND TIME TO FILE OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT;  EFILE ASSENTED TO MOTION AND PROPOSED ORDER; PRINT CONFIRMATIONS OF EFILING AND EFILE MARKED DOCUMENTS TO FILE; | 0.40 |
| Oct-24-11 | PNF | LEGAL RESEARCH REGARDING MOTION TO DISMISS; | 3.50 |
| Oct-27-11 | JIC | EMAILS WITH FOREIGN COUNSEL REGARDING COMPANION FILING IN ILLINOIS; REVIEW COMPLAINT; CONFERENCE WITH P. FREIBERG REGARDING SAME; | 0.75 |
| Oct-31-11 | PNF | DRAFT OPPOSITION TO MOTION TO DISMISS; | 7.00 |
| Nov-01-11 | PNF | DRAFT AND EDIT OPPOSITION TO MOTION TO DISMISS; | 5.50 |
| Nov-03-11 | GDB | WORK ON OPPOSITION TO MOTION TO DISMISS; CONFER WITH P. FREIBERG RE: SAME; RESEARCH RE: EXPRESS WARRANTY CLAIMS BASED ON ADVERTISEMENTS; RESEARCH RE: CONSUMER PROTECTION CLAIMS BASED ON DRUGS WITH MULTIPLE BENEFITS | 5.75 |

Invoice #:  Sample                    File #:   16437-CONT                    Page 6

| | | | |
|---|---|---|---|
| | JIC | EDIT/REVISE/REVIEW DRAFT BRIEF IN OPPOSITION TO MOTION TO DISMISS; CONFERENCE WITH P. FREIBERG REGARDING SAME; | 3.75 |
| | PNF | EDIT BRIEF IN OPPOSITION TO MOTION TO DISMISS; | 4.50 |
| Nov-04-11 | GDB | WORK ON OPPOSITION TO MOTION TO DISMISS; CONFER WITH P. FREIBERG RE: SAME; RESEARCH RE: EXPRESS WARRANTY CLAIMS BASED ON ADVERTISEMENTS; RESEARCH RE: CONSUMER PROTECTION CLAIMS BASED ON DRUGS WITH MULTIPLE BENEFITS | 8.00 |
| Nov-07-11 | PNF | EDIT AND FINALIZE OPPOSITION TO MOTION TO DISMISS; | 5.00 |
| Nov-11-11 | PNF | PREPARE FOR ORAL ARGUMENT; CONFERENCE WITH J. CARTON AND G. BLANKINSHIP RE: SAME; | 5.75 |
| Nov-14-11 | PNF | PREPARE FOR ORAL ARGUMENT; | 2.00 |
| Nov-15-11 | PNF | PREPARE FOR ORAL ARGUMENT; | 3.50 |
| Nov-16-11 | PNF | TRAVEL TO BOSTON; ATTEND HEARING ON DEFENDANT'S MOTION TO DISMISS; RETURN TRAVEL; | 11.00 |
| Nov-17-11 | GDB | RESEARCH RE: NY LAW AND INJURY; CONFER WITH P. FREIBERG AND J. CARTON RE: BRINGING NY CASE | 3.30 |
| | PNF | CONFERENCES WITH MR. BLANKINSHIP REGARDING NEW YORK PROCEEDING; REVIEW JUDGE YOUNG'S DECISION REGARDING SETTLEMENT OF CLASS ACTION CASES; | 1.20 |
| Nov-18-11 | GDB | RESEARCH RE: PRICE PREMIUM FOR OSTEO-BIFLEX | 5.00 |
| Nov-21-11 | JIC | REVIEW DECISION RE: MOTION TO DISMISS; CONFERENCE WITH P. FREIBERG RE: SAME AND PROSPECTIVE AMENDED COMPLAINT; | 1.50 |
| | PNF | RECEIPT AND REVIEW OF COURT'S ORDER ON MOTION TO DISMISS; RESEARCH REGARDING STANDARD FOR PLEADING WHEN AND WHAT PRODUCTS PURCHASED; CONFERENCE WIT J. CARTON AND J. DENLEA; | 4.00 |
| Nov-28-11 | PNF | CONFERENCE WITH CLIENT REGARDING AMENDING COMPLAINT; | 0.75 |
| Nov-30-11 | PNF | LEGAL RESEARCH REGARDING POTENTIAL FOR NEW YORK AND FLORIDA CLAIMS; | 4.50 |
| Dec-02-11 | PNF | REVIEW DOCKETS FOR OTHER CASES INVOLVING OSTEO BI-FLEX; | 0.50 |
| Dec-05-11 | PNF | CONFERENCE WITH MR. JENNINGS; PREPARE FOR TRIP TO CONFERENCE WITH MR. JENNINGS; | 3.00 |

Invoice #:  Sample                          File #:  16437-CONT                          Page 7

| Dec-06-11 | PNF | PREPARE FOR MEETING WITH MR. JENNINGS; | 1.00 |
| Dec-07-11 | PNF | TRAVEL TO OAK BLUFFS; MEET WITH MR. JENNINGS; RETURN TRAVEL; | 12.50 |
| Dec-08-11 | PNF | DRAFT MOTION FOR LEAVE TO AMEND; | 2.50 |
| Dec-09-11 | PNF | DRAFT AMENDED COMPLAINT AND MOTION FOR LEAVE TO FILE; | 4.25 |
| Dec-12-11 | PNF | REVIEW SCIENTIFIC ARTICLES REFERENCED IN COMPLAINT; | 4.50 |
| | CR | RECEIPT AND REVIEW MEMO FROM P. FREIBERG RE RESEARCH/JOURNAL ARTICLES; LOCATE, PURCHASE AND PRINT SELECT ARTICLES; | 1.00 |
| Dec-13-11 | JIC | REVIEW DRAFT AMENDED COMPLAINT; CONFERENCE WITH P. FREIBERG RE: SAME; | 2.50 |
| | PNF | EDIT/ REVISE AMENDED COMPLAINT AND MOTION FOR LEAVE TO FILE; | 1.75 |
| Dec-15-11 | PNF | REVIEW ARTICLES REGARDING GLUCOSAMINE; | 2.50 |
| Dec-16-11 | CR | PREPARE MOTION, MEMO OF LAW AND PROPOSED AMENDED COMPLAINT FOR E-FILING; E-FILE MOTION, MEMO OF LAW AND PROPOSED AMENDED COMPLAINT; CONFERENCES WITH P. FREIBERG; | 0.60 |
| Dec-19-11 | CR | PREPARE AMENDED COMPLAINT FOR E-FILING; E-FILE AMENDED COMPLAINT; | 0.40 |
| Jan-11-12 | PNF | CONFERENCE WITH MR. FREDERICO REGARDING AMENDED COMPLAINT; LEGAL RESEARCH REGARDING ARGUMENTS THAT DEFENDANT INTENDS TO MAKE IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT; | 5.50 |
| Jan-13-12 | PNF | CONFERENCE WITH MR. FEDERICO REGARDING SECOND AMENDED COMPLAINT; REVIEW EXPERT REPORT IN BAYER CASE REGARDING PRICE PREMIUM; DRAFT SECOND AMENDED COMPLAINT; | 3.25 |
| Jan-17-12 | PNF | CONFERENCES WITH MR. FREDERICO REGARDING AMENDMENT TO COMPLAINT AND TIME FOR DEFENDANT TO ANSWER; EDIT MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT; | 1.50 |
| Jan-25-12 | JIC | REVIEW DRAFT AMENDED COMPLAINT; CONFERENCE WITH P. FREIBERG RE: SAME; | 2.00 |
| | PNF | FINALIZE AND FILE SECOND AMENDED COMPLAINT; | 0.60 |

Invoice #:  Sample                     File #:  16437-CONT                     Page 8

| Date | Init | Description | Hours |
|---|---|---|---|
| Jan-30-12 | PNF | LEGAL RESEARCH REGARDING EXPERT SUBMISSIONS TO PROVE PRICE PREMIUM IN CONSUMER FRAUD CASES | 3.00 |
| Jan-31-12 | PNF | REVIEW ORDER AND PLEADINGS ON CLASS CERTIFICATION MOTION IN BAYER CASE PENDING IN NORTHERN DISTRICT OF OHIO; | 1.30 |
| Feb-14-12 | GDB | EMAIL WITH DEFENSE COUNSEL RE: MOTION TO DISMISS | 0.20 |
| Feb-16-12 | PNF | LEGAL RESEARCH FOR OPPOSITION TO DISMISS SECOND AMENDED COMPLAINT; | 4.75 |
| Feb-17-12 | PNF | DRAFT OPPOSITION TO MOTION TO DISMISS SECOND AMENDED COMPLAINT; | 3.50 |
| Feb-21-12 | PNF | EDIT OPPOSITION TO MOTION TO DISMISS SECOND AMENDED COMPLAINT; | 4.50 |
| Feb-23-12 | PNF | EDIT/REVIEW DRAFT OPPOSITION TO MOTION TO DISMISS SECOND AMENDED COMPLAINT; | 4.00 |
| Feb-24-12 | PNF | EDIT OPPOSITION TO MOTION TO DISMISS SECOND AMENDED COMPLAINT; | 3.00 |
| Feb-27-12 | PNF | EDIT OPPOSITION TO MOTION TO DISMISS; | 2.00 |
| Feb-28-12 | GDB | WORK ON OPPOSITION TO MOTION TO DISMISS AND CONFER WITH P. FREIBERG RE: SAME | 1.50 |
|  | JIC | EDIT/REVISE/REVIEW DRAFT BRIEF IN OPPOSITION TO MOTION TO DISMISS AMENDED COMPLAINT; CONFERENCE WITH  P. FREIBERG RE: SAME; | 2.75 |
| Feb-29-12 | PNF | FINALIZE OPPOSITION TO MOTION TO DISMISS; | 1.50 |
| Mar-01-12 | PNF | FINALIZE OPPOSITION TO MOTION TO DISMISS FOR FILING; | 1.75 |
| Mar-07-12 | JIC | REVIEW REPLY BRIEF RE: MOTION TO DISMISS; | 1.00 |
|  | PNF | RECEIPT AND REVIEW OF REPLY BRIEF; REVIEW CASES ATTACHED THEREIN; | 2.50 |
| Mar-14-12 | PNF | RESEARCH FOR RETAINING EXPERT WITNESS; | 1.60 |
| Mar-15-12 | PNF | RESEARCH FOR RETAINING EXPERT WITNESS; | 1.20 |
| Mar-19-12 | PNF | CONFERENCE WITH CLIENT; | 0.40 |

Invoice #:  Sample                    File #:  16437-CONT                    Page 9

| | | | |
|---|---|---|---|
| Mar-23-12 | PNF | CONFERENCE WITH CLIENT; RESEARCH ADDITIONAL CASES RAISING STANDING ISSUES; | 4.50 |
| Mar-29-12 | PNF | PREPARE FOR HEARING ON SECOND MOTION TO DISMISS; | 3.00 |
| Mar-30-12 | PNF | LEGAL RESEARCH FOR ADDITIONAL CASES RELATED TO SECOND MOTION TO DISMISS; | 2.75 |
| Apr-05-12 | PNF | PREPARE PAPERS FOR HEARING; LEGAL RESEARCH REGARDING OTHER ACTIONS AGAINST OSTEO BI FLEX; | 3.00 |
| Apr-09-12 | PNF | PREPARE FOR HEARING; | 2.50 |
| Apr-10-12 | PNF | TRAVEL TO BOSTON; ATTEND HEARING ON MOTION TO DISMISS; RETURN TRAVEL; | 10.00 |
| Apr-11-12 | PNF | DRAFT PROPOSED SCHEDULING ORDER; LEGAL RESEARCH REGARDING EXEMPLAR TRIALS; | 3.75 |
| Apr-12-12 | PNF | RESEARCH EXEMPLAR TRIALS; | 1.20 |
| Apr-13-12 | PNF | SCHEDULING CONFERENCE WITH MR. FREDERICO AND MS. MCCALL; | 0.70 |
| Apr-16-12 | PNF | RESEARCH PROSPECTIVE EXPERT WITNESSES; | 4.00 |
| Apr-17-12 | PNF | CONFERENCE WITH CLIENT; DRAFT AUTHORIZATIONS FOR THE RELEASE OF HIS ORTHOPEDIC MEDICAL RECORDS; | 0.60 |
| Apr-19-12 | JRD | CONFERENCE RE: EXPERT RETENTION; REVIEW MULTIPLE PROSPECTIVE EXPERTS' REVIEWS; RESEARCH RE: SAME; | 4.50 |
| | JIC | MEETING WITH J. DENLEA, B. CEPELEWICZ, P. FREIBERG REGARDING PROSPECTIVE LITIGATION STRATEGY AND EXPERT RETENTION; | 1.75 |
| Apr-20-12 | PNF | DRAFT REQUESTS FOR PRODUCTION OF DOCUMENTS; | 4.50 |
| Apr-23-12 | PNF | DRAFT INTERROGATORIES TO REXALL; | 5.50 |
| Apr-24-12 | JIC | RESEARCH REGARDING PROSPECTIVE EXPERTS; INTERNET RESEARCH REGARDING CARTILAGE CLAIMS; | 3.75 |
| | PNF | LEGAL RESEARCH FOR RESPONSE TO DEFENDANT'S OBJECTION TO EXEMPLAR TRIAL; DRAFT INITIAL DISCLOSURES; | 2.50 |
| Apr-25-12 | PNF | RESEARCH REGARDING RESPONSE TO OBJECTION TO EXEMPLAR TRIAL; | 3.00 |

Invoice #:  Sample                              File #:  16437-CONT                              Page  10

| Apr-27-12 | PNF | DRAFT RESPONSE TO DEFENDANT'S OBJECTION TO EXEMPLAR TRIAL; | 3.00 |
| Apr-30-12 | JIC | REVIEW, EDIT, REVISE DRAFT DISCOVERY DEMANDS; CONFERENCE WITH  P. FREIBERG RE: SAME; CONTINUE RESEARCH RE: PROSPECTIVE EXPERTS; REVIEW DEFENDANT'S OBJECTION TO USE OF EXEMPLAR TRIAL; | 2.50 |
| | PNF | EDIT RESPONSE TO DEFENDANT'S OBJECTION TO EXEMPLAR TRIAL; | 2.00 |
| May-01-12 | JRD | CONTINUE EXPERT RESEARCH; CONFERENCE WITH J. CARTON AND P. FREIBERG; | 5.00 |
| | JIC | REVIEW ECF POSTING REGARDING JUDGE YOUNG'S ORDER REGARDING REXALL'S OBJECTION TO EXEMPLAR TRIAL; CONFERENCE WITH P. FREIBERG REGARDING SAME; | 0.50 |
| | PNF | GLUCOSAMINE AND EXPERT RESEARCH; MULTIPLE CONFERENCES WITH J. DENLEA; | 3.50 |
| May-02-12 | PNF | EXPERT WITNESS RESEARCH; | 4.00 |
| May-03-12 | PNF | EXPERT RESEARCH | 3.00 |
| May-07-12 | PNF | LEGAL RESEARCH REGARDING FTC ACTIONS AND REQUIREMENT OF COMPETENT AND RELIABLE SCIENTIFIC EVIDENCE; | 4.00 |
| May-09-12 | PNF | CONFERENCE WITH PROSPECTIVE EXPERTS; | 2.50 |
| | CR | RECEIPT AND REVIEW MEMO FROM P. FREIBERG; REVIEW PACER DOCKET FOR REXALL CASE AND RETRIEVE AND PRINT IDENTIFIED DOCUMENTS EFILED; | 1.00 |
| May-10-12 | PNF | CONFERENCE WITH EXPERT; REVIEW ADDITIONAL GLUCOSAMINE ARTICLES; | 1.75 |
| May-11-12 | PNF | CONFERENCE WITH EXPERT; | 1.00 |
| May-14-12 | PNF | RECEIPT AND REVIEW OF CLIENTS' MEDICAL RECORDS; RECEIPT AND REVIEW OF PROPOSED CONFIDENTIALITY AGREEMENT; | 1.20 |
| May-15-12 | PNF | EDIT CONFIDENTIALITY ORDER; | 1.50 |
| May-16-12 | PNF | TRAVEL TO BOSTON; MEETING WITH PROSPECTIVE EXPERT; RETURN TRAVEL; | 8.50 |
| May-17-12 | JRD | CONFERENCE WITH P. FREIBERG RE: EXPERT RETENTION AND BREADTH OF EXPERT'S OPINION; REVIEW MEDICAL LITERATURE RE: SAME; | 4.50 |

|          | PNF | DRAFT AND EDIT RESPONSES TO DOCUMENT REQUESTS; CONFERENCE WITH J. DENLEA; | 2.00 |
| May-18-12 | PNF | DRAFT AND EDIT INTERROGATORY RESPONSES; | 1.50 |
| May-21-12 | PNF | TELEPHONE CONFERENCE WITH MS. MCCALL; EDIT DISCOVERY RESPONSES; EMAIL TO CLIENT; LEGAL RESEARCH REGARDING FTC ACT; | 4.50 |
| May-23-12 | PNF | RECEIPT AND REVIEW OF EDITED CONFIDENTIALITY ORDER; | 0.40 |
| May-29-12 | PNF | DRAFT AND EDIT DISCOVERY RESPONSES; CONFERENCE WITH CLIENT; | 1.00 |
| May-30-12 | PNF | EDIT AND REVISE DISCOVERY RESPONSES; RECEIPT AND REVIEW OF REXALL'S DISCOVERY RESPONSES; BEGIN REVIEWING DOCUMENTS PRODUCED BY REXALL; | 5.00 |
| May-31-12 | PNF | FINALIZE DISCOVERY RESPONSES; REVIEW OF DOCUMENTS PRODUCED BY REXALL; | 5.50 |
| Jun-01-12 | PNF | LEGAL RESEARCH REGARDING FTC SUBSTANTIATION REQUIREMENTS; | 3.00 |
| Jun-04-12 | PNF | RECEIPT AND REVIEW OF ENTERED PROTECTIVE ORDER; LETTER TO MS. MCCALL REGARDING MR. JENNINGS' MEDICAL AUTHORIZATIONS; | 0.40 |
| Jun-05-12 | PNF | REVIEW OF DOCUMENTS PRODUCED BY REXALL; | 5.00 |
| Jun-06-12 | PNF | REVIEW OF DOCUMENTS PRODUCED BY REXALL; | 4.50 |
| Jun-08-12 | PNF | CONFERENCE WITH MS. MCCALL REGARDING MEDICAL RECORDS; REVIEW DOCUMENTS PRODUCED BY REXALL; | 5.00 |
| Jun-11-12 | PNF | CONFERENCE  WITH EXPERT; | 0.20 |
| Jun-12-12 | PNF | CONFERENCE WITH EXPERT; | 1.00 |
| Jun-13-12 | PNF | CONFERENCE WITH MS. MCCALL; REVIEW PRODUCED DOCUMENTS; | 3.50 |
| Jun-14-12 | PNF | REVIEW PRODUCED DOCUMENTS TO COLLATE PACKAGE FOR EXPERT | 3.75 |
| Jun-18-12 | PNF | REVIEW ADDITIONAL DOCUMENTS PRODUCED BY REXALL; | 5.00 |
| Jun-21-12 | PNF | REVIEW DOCUMENTS PRODUCED BY REXALL; | 3.50 |

Invoice #:  Sample                          File #:  16437-CONT                          Page 12

| Jun-24-12 | PNF | TRAVEL TO MARTHA'S VINEYARD; MEETING WITH CLIENT; | 8.00 |
| Jun-25-12 | PNF | ATTEND CLIENT'S DEPOSITION; RETURN TRAVEL; | 8.50 |
| Jul-03-12 | JRD | MULTIPLE CONFERENCES WITH P. FREIBERG RE: DEPOSITION STRATEGY AND AREA OF INQUIRY; | 4.75 |
| | PNF | PREPARE FOR DEPOSITIONS; CONFERENCE WITH J.DENLEA RE: SAME; | 4.00 |
| | CR | RECEIPT AND REVIEW MEMO FROM P. FREIBERG; TELEPHONE CONVERSATION WITH ESQUIRE RE DEFENDANTS DEPOSITION SCHEDULING; | 0.40 |
| Jul-04-12 | PNF | REVIEW REXALLS  DOCUMENTS TO PREPARE FOR DEPOSITIONS; | 6.50 |
| Jul-05-12 | PNF | RECEIPT AND REVIEW OF SETTLEMENT PROPOSAL FROM MS. MCCALL; DRAFT NOTICES OF DEPOSITIONS; PREPARE FOR DEPOSITIONS; | 4.00 |
| | CR | TELEPHONE CONVERSATION WITH ESQUIRE REPORTING RE LOCATIONS FOR DEPOSITION; RECEIPT AND REVIEW MEMO; PREPARE NOTICES OF DEPOSITIONS FOR DEFENSE WITNESSES VRABLIC AND OKARO; | 1.00 |
| Jul-08-12 | PNF | PREPARE FOR REXALL DEPOSITIONS; | 5.00 |
| Jul-09-12 | PNF | REVIEW DOCUMENTS PRODUCED BY REXALL; | 6.00 |
| | CR | TELEPHONE CONVERSATIONS WITH REPORTERS REGARDING DEPOSITIONS OF TWO WITNESSES FROM DEFENDANT REXALL; PREPARE TWO AMENDED NOTICES OF DEPOSITION RE DEFENDANTS; | 1.50 |
| Jul-10-12 | JRD | CONTINUED REVIEW OF DEPOSITION OUTLINES; CONFERENCE WITH P. FREIBERG RE: SAME; | 3.50 |
| | PNF | PREPARE FOR DEPOSITIONS; CONFERENCE WITH J. DENLEA RE: SAME; | 6.00 |
| | CR | TELEPHONE CONVERSATION WITH REPORTER RE DEPOSITION; | 0.20 |
| Jul-11-12 | JIC | REVIEW SETTLEMENT PROPOSAL FROM OPPOSING COUNSEL; CONFERENCE WITH J. DENLEA REGARDING SAME AND COUNTERPROPOSAL; CONFERENCE WITH P. FREIBERG REGARDING SCHEDULING FOLLOW-UP MEETING; | 1.50 |
| | PNF | TRAVEL TO ISLIP; ATTEND DEPOSITION OF MS. OKARI; RETURN TRAVEL; | 8.50 |

July 29, 2013

Invoice #:  Sample                          File #:  16437-CONT                          Page  13

| Jul-12-12 | PNF | TRAVEL TO ISLIP; ATTEND DEPOSITION OF MS. VRABLIC; RETURN TRAVEL; | 8.50 |
|-----------|-----|-----------------------------------------------------------------|------|
| Jul-13-12 | JIC | TELEPHONE CONFERENCE WITH OPPOSING COUNSEL AND J. DENLEA AND P. FREIBERG; CONFERENCE WITH J. DENLEA AND P. FREIBERG REGARDING SAME; | 1.00 |
| Jul-16-12 | PNF | SETTLEMENT CONFERENCE WITH MS. MCCALL; | 0.50 |
| Jul-23-12 | PNF | CONFERENCE WITH EXPERT; | 2.50 |
| Jul-24-12 | PNF | CONFERENCE WITH EXPERT; RECEIPT AND REVIEW DRAFT REPORT; WORK WITH EXPERT REGARDING HIS REPORT; FURTHER REVIEW OF DOCUMENTS PRODUCED BY REXALL; | 6.00 |
|  | CR | RECEIPT AND REVIEW DEPOSITION TRANSCRIPTS OF REXALL WITNESSES;  TELEPHONE CONVERSATION WITH ESQUIRE REPORTING SERVICE; | 0.40 |
| Jul-25-12 | PNF | WORK WITH EXPERT TO FINALIZE EXPERT DISCLOSURE; EDIT LIST OF DOCUMENTS REVIEWED; | 4.00 |
| Jul-26-12 | PNF | DRAFT ADDITIONAL DISCOVERY DEMANDS TO REXALL; | 2.00 |
| Jul-30-12 | JIC | TELEPHONE CONFERENCE WITH OPPOSING COUNSEL; CONFERENCE WITH P. FREIBERG AND J. DENLEA; | 0.75 |
|  | PNF | CONFERENCE WITH MS. MCCALL AND MR. DAVIS REGARDING SETTLEMENT; CONFERENCE WITH EXPERT; REVIEW SUBSTANTIATION MATERIALS; | 3.75 |
| Jul-31-12 | PNF | PREPARE FOR DEPOSITION OF EXPERT; | 7.50 |
| Aug-01-12 | JRD | CONFERENCE WITH P. FREIBERG RE: UPCOMING EXPERT DEPOSITION; REVIEW PROSPECTIVE LINE OF CROSS-EXAMINATION; | 3.50 |
|  | PNF | CONFERENCE WITH MR. DAVIS REGARDING SETTLEMENT; | 0.30 |
| Aug-02-12 | GDB | WORK ON OPPOSITION TO MOTION FOR SUMMARY JUDGMENT AND RESEARCH SAME AND REVIEW RECORD FOR SAME | 8.00 |
|  | PNF | TRAVEL TO BOSTON, MEETING WITH EXPERT; | 8.00 |
| Aug-03-12 | PNF | ATTEND DEPOSITION OF EXPERT, RETURN TRAVEL; | 9.50 |
| Aug-07-12 | JIC | CONFERENCE CALL WITH MIKE DAVIS AND KARA MCCALL REGARDING PROSPECTIVE SETTLEMENT; CONFERENCE WITH J. DENLEA AND P. FREIBERG REGARDING SAME; | 3.00 |

Invoice #:  Sample                     File #:  16437-CONT                      Page 14

| | | INITIAL REVIEW OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; | |
|---|---|---|---|
| Aug-09-12 | CR | RECEIPT AND REVIEW MEMO FROM P. FREIBERG; RECEIPT AND REVIEW ECF FILED EXPERT RESPONSES FROM OPPOSING COUNSEL AND SAVE TO FILE; PREPARE DEPOSITION NOTICES TO DEFENSE EXPERTS GRANDE AND VANGSNESSE; | 1.00 |
| Aug-13-12 | PNF | RECEIPT AND REVIEW OF MOTION FOR SUMMARY JUDGMENT AND DEFENDANTS' EXPERT REPORTS; | 3.00 |
| Aug-14-12 | PNF | REVIEW AND STUDY DEFENDANT'S EXPERT REPORTS; | 2.50 |
| Aug-15-12 | JRD | CONFERENCE WITH P. FREIBERG RE: EXPERT DEPOSITIONS; REVIEW DEFENDANT'S EXPERTS' REPORTS; | 5.50 |
| | PNF | CONFERENCE WITH EXPERT; PREPARE FOR EXPERT DEPOSITIONS; | 5.00 |
| Aug-17-12 | GDB | WORK ON OPPOSITION TO MOTION FOR SUMMARY JUDGMENT AND RESEARCH RE: SAME | 3.70 |
| | PNF | CONFERENCE WITH MS. MCCALL REGARDING SCHEDULING ISSUES; DRAFT MOTION FOR AN EXTENSION OF TIME TO OPPOSE SUMMARY JUDGMENT; LEGAL RESEARCH REGARDING OPPOSITION TO MOTION FOR SUMMARY JUDGMENT; PREPARE FOR EXPERT DEPOSITIONS; | 7.00 |
| | CR | RECEIPT AND REVIEW MEMO FROM P. FREIBERG RE PUBLICATIONS BY DEFENSE EXPERTS GRANDE AND VANGSNESS; RESEARCH TO OBTAIN COPIES OF SPECIFIC ARTICLES BY EXPERTS; | 6.50 |
| Aug-20-12 | PNF | PREPARE FOR EXPERT DEPOSITIONS | 6.00 |
| Aug-21-12 | GDB | WORK ON OPPOSITION TO MOTION FOR SUMMARY JUDGMENT AND RESEARCH SAME AND REVIEW RECORD FOR SAME | 7.10 |
| | PNF | CONFERENCE WITH DEFENSE COUNSEL; PREPARE FOR EXPERT DEPOSITIONS; | 6.00 |
| | CR | CONFERENCE WITH P. FREIBERG; PREPARE AND FAX LETTER TO NYU MEDICAL LIBRARY TO TRY AND OBTAIN JOURNAL ARTICLES; | 0.40 |
| Aug-22-12 | JRD | CONTINUED PREPARATION WITH P. FREIBERG RE: EXPERT DEPOSITION; REVIEW MEDICAL LITERATURE FOR USE WITH SAME; | 4.75 |
| | GDB | WORK ON OPPOSITION TO MOTION FOR SUMMARY JUDGMENT AND RESEARCH SAME AND REVIEW RECORD FOR SAME | 6.20 |

July 29, 2013

Invoice #:  Sample                         File #:  16437-CONT                         Page  15

| | | | |
|---|---|---|---|
| | PNF | PREPARE FOR EXPERT DEPOSITIONS; | 5.00 |
| | CR | PREPARE MOTION FOR EXTENSION OF TIME AND PROPOSED ORDER FOR E-FILING; E-FILE DOCUMENTS; | 0.30 |
| Aug-23-12 | GDB | WORK ON OPPOSITION TO MOTION FOR SUMMARY JUDGMENT AND RESEARCH SAME AND REVIEW RECORD FOR SAME | 6.40 |
| | JIC | CONFERENCE WITH P. FREIBERG AND J. DENLEA REGARDING SETTLEMENT INFORMATION AND PROSPECTIVE STRATEGY FOR NEGOTIATIONS WITH REXALL; | 0.50 |
| | PNF | PREPARE FOR EXPERT DEPOSITIONS;  MEETING WITH MR. DENLEA AND MR. CARTON REGARDING SETTLEMENT; REVIEW PRIOR DEPOSITION TRANSCRIPTS; | 6.50 |
| | CR | TELEPHONE CONFERENCE WITH COURT REPORTER RE: UPCOMING DEPOSITION; DOCKET SAME; TELEPHONE CONFERENCE WITH NYU LIBRARY OF MEDICINE; COMPLETE FORMS ONLINE REQUESTING MEDICAL ARTICLES;  RECEIPT AND REVIEW E-MAILS FROM NYU MEDICAL LIBRARY;  PREPARE E-MAILS TO NYU LIBRARY; RECEIPT, REVIEW, DOWNLOAD AND PRINT MEDICAL ARTICLES FROM NYU LIBRARY; | 3.25 |
| Aug-24-12 | GDB | WORK ON OPPOSITION TO MOTION FOR SUMMARY JUDGMENT AND RESEARCH SAME AND REVIEW RECORD FOR SAME | 9.20 |
| | PNF | TRAVEL TO AND ATTEND DEPOSITION OF DR. GRANDE; RETURN TRAVEL;  EDIT OPPOSITION TO MOTION FOR SUMMARY JUDGMENT; | 9.00 |
| Aug-27-12 | GDB | WORK ON OPPOSITION TO MOTION FOR SUMMARY JUDGMENT AND WORK ON DECLARATIONS FOR SAME AND RESEARCH RE: SAME | 4.70 |
| | PNF | PREPARE FOR EXPERT DISCLOSURE; DRAFT AND EDIT OPPOSITION TO MOTION FOR SUMMARY JUDGMENT; | 6.00 |
| | CR | RECEIPT AND REVIEW MEMO FROM P. FREIBERG RE ARTICLE MARKED AS DEPOSITION EXHIBIT; FILE REVIEW FOR EXHIBIT; | 0.60 |
| Aug-28-12 | GDB | RESEARCH RE: RELIANCE AND EXPRESS WARRANTY CLAIMS AND DRAFT SECTION FOR OPPOSITION TO MOTION FOR SUMMARY JUDGMENT FOR SAME | 4.60 |
| | PNF | TRAVEL TO LA FOR DEPOSITION OF DR. VANGSNESS; PREPARE FOR EXPERT DEPOSITION; | 9.75 |
| Aug-29-12 | PNF | ATTEND DEPOSITION OF DR. VANGSNESS; RETURN TRAVEL; | 12.00 |
| Aug-30-12 | GDB | WORK ON MOTION FOR SUMMARY JUDGMENT | 1.10 |

Invoice #:  Sample                    File #:   16437-CONT                    Page 16

|  |  |  |  |
|---|---|---|---|
|  | PNF | EDIT OPPOSITION TO MOTION FOR SUMMARY JUDGMENT; | 5.50 |
| Aug-31-12 | GDB | WORK ON DECLARATIONS AND MEMO OPPOSING MOTION FOR SUMMARY JUDGMENT | 1.30 |
|  | PNF | EDIT AND FINALIZE OPPOSITION TO MOTION FOR SUMMARY JUDGMENT; | 5.00 |
| Sep-04-12 | PNF | DRAFT AND EDIT PRETRIAL MEMORANDUM; | 7.00 |
| Sep-05-12 | PNF | DRAFT AND EDIT EXHIBIT LIST; DRAFT AND EDIT PRETRIAL MEMORANDUM; | 8.00 |
| Sep-06-12 | PNF | EDIT PRETRIAL MEMORANDUM; CONFERENCE WITH MS. MCCALL; LEGAL RESEARCH REGARDING REASONABLE CONSUMER STANDARD; | 5.00 |
| Sep-07-12 | JIC | CONFERENCE WITH P. FREIBERG AND J. DENLEA REGARDING SETTLEMENT PARAMETERS; REVIEW SALES INFORMATION PROVIDED BY DEFENDANT; CONFERENCE WITH P. FREIBERG REGARDING PRE-TRIAL CONFERENCE; | 0.75 |
|  | PNF | EDIT PRE TRIAL MEMORANDUM; RECEIPT AND REVIEW OF REPLY TO OPPOSITION TO SUMMARY JUDGMENT; CONFERENCE WITH MR. DAVIS AND MR. SCARBOROUGH REGARDING SETTLEMENT; CONFERENCE WITH MR. DENLEA AND MR. CARTON REGARDING SAME; | 6.00 |
|  | CR | RECEIPT AND REVIEW EMAILED DEPOSITION TRANSCRIPT OF DEFENSE WITNESS DR GRANDE; UPLOAD TRANSCRIPT TO FILE; | 0.30 |
| Sep-10-12 | PNF | TRAVEL TO BOSTON; ATTEND PRETRIAL CONFERENCE; RETURN TRAVEL; | 11.00 |
| Sep-11-12 | PNF | RECEIPT AND REVIEW OF TRANSCRIPT OF DR. VANGSNESS' DEPOSITION; | 4.00 |
|  | CR | RECEIPT AND REVIEW AND UPLOAD TO FILE DEPOSITION TRANSCRIPT OF DEFENDANT'S EXPERT WITNESS VANGSNESSE; | 0.20 |
| Sep-12-12 | PNF | CONFERENCE WITH MR. DAVIS AND MR. SCARBOROUGH REGARDING SETTLEMENT; REVIEW TRANSCRIPT OF DEPOSITION OF DR. GRANDE; | 1.50 |
|  | CR | RECEIPT AND REVIEW MEMO FROM P. FREIBERG; INTERNET ARCHIVE SITES RESEARCH RE PREVIOUS YEARS PRICING OF OSTEO; PRINT RESULTS FROM P. FREIBERG REVIEW; | 3.50 |
| Sep-13-12 | PNF | CONFERENCE WITH MR. SCARBOROUGH AND MS. SYVERSON; | 0.60 |
| Sep-17-12 | PNF | PREPARE FOR HEARING ON MOTION FOR SUMMARY JUDGMENT; | 5.00 |

July 29, 2013

Invoice #:  Sample                          File #:  16437-CONT                          Page  17

| | | | |
|---|---|---|---|
| Sep-18-12 | JIC | CONFERENCE WITH J. DENLEA AND P. FREIBERG REGARDING SETTLEMENT PARAMETERS AND CONSTRUCT; | 0.50 |
| | PNF | PREPARE FOR HEARING ON SUMMARY JUDGMENT MOTION; HIGHLIGHT/DESIGNATE VANGSNESS DEPOSITION TRANSCRIPT; | 5.00 |
| Sep-19-12 | PNF | TRAVEL TO BOSTON;  ATTEND HEARING ON MOTION FOR SUMMARY JUDGMENT; RETURN TRAVEL; | 11.00 |
| Sep-20-12 | PNF | REVIEW DEFENDANT'S DOCUMENT PRODUCTION;  LEGAL RESEARCH REGARDING RULE 32 AND RULE 45 REQUIREMENTS FOR SERVICE OF SUBPOENA; | 3.50 |
| Sep-21-12 | PNF | REVIEW DR. VANGSNESS DEPOSITION TRANSCRIPT FOR PORTIONS TO BE DESIGNATED; | 4.00 |
| Sep-24-12 | PNF | DRAFT SUBPOENAS AND LIST OF DOCUMENTS TO BE PRODUCED BY CUSTODIAN OF RECORDS; BEGIN DRAFTING MOTIONS IN LIMINE | 4.00 |
| Sep-27-12 | GDB | DRAFT OPPOSITION TO MOTION IN LIMINE RE: FLORIDA STUDY, CONFER WITH P. FREIBERG RE: SAME AND RESEARCH RE: HEARSAY EXCEPTIONS FOR SAME | 7.20 |
| | JIC | CONFERENCES WITH P. FREIBERG AND J. DENLEA REGARDING SETTLEMENT CONSTRUCT AND NEGOTIATIONS; | 0.50 |
| | PNF | TRIAL PREPARATION | 8.00 |
| | TSG | RESEARCH AND DRAFT IN LIMINE RESPONSE RELATING TO CALLING DEFENDANTS FORMERLY DESIGNATED EXPERT AS A TRIAL WITNESS; REVIEW TRIAL MATERIAL | 5.00 |
| | CR | CONFERENCE WITH P. FREIBERG; TRIAL PREPARATION INCLUDING ARRANGE FOR SERVICE OF TRIAL SUBPOENA TO WITNESS DR VANGSNESSE IN CALIFORNIA; REVIEW TRIAL EXHIBIT SUBMISSION TO COURT; BEGIN REPRINT OF ALL DEFENDANT'S BATES PRODUCTION IN PREPARATION FOR COPYING AND COMPILING TRIAL EXHIBITS; PREPARE AND EDIT PLAINTIFF'S JURY INSTRUCTIONS, VOIR DIRE QUESTIONS VERDICT FORM, SUBPOENAS; | 6.00 |
| Sep-28-12 | JIC | CONFERENCE WITH J. DENLEA AND P. FREIBERG REGARDING SETTLEMENT CONSTRUCT AND TRIAL STRATEGY; REVIEW ECF POSTINGS REGARDING PRE-TRIAL MOTIONS, VOIR DIRE, ETC; | 0.75 |
| | PNF | TRIAL PREPARATION; | 10.00 |
| | TSG | CONTINUE TO WORK ON IN LIMINE RESPONSES AND TRIAL PREPARATION; | 6.50 |
| | CR | TRIAL PREPARATION - REVIEW JOINT EXHIBIT LIST AND COMPILE EXHIBITS NOTED; COPY FOR USE BY COURT, | 9.00 |

July 29, 2013

Invoice #: Sample                  File #: 16437-CONT                  Page 18

|  |  | PLAINTIFF AND DEFENSE; TELEPHONE CONVERSATION WITH CALIFORNIA PROCESS SERVER RE STATUS OF TRIAL SUBPOENA SERVICE UPON WITNESS; RECEIPT AND REVIEW AFFIDAVIT OF SERVICE AND PRINT FOR INCLUSION FOR POTENTIAL SUBMISSION TO COURT AT TRIAL; TELEPHONE CONVERSATION WITH PLAINTIFF'S EXPERT RE TRIAL, TESTIMONY AND INVOICE STATUS; PREPARE EXHIBITS FOR TRIAL; |  |
|---|---|---|---|
| Sep-29-12 | PNF | CONFERENCES WITH MR. SCARBOROUGH REGARDING SETTLEMENT; TRIAL PREPARATION; | 12.00 |
| Sep-30-12 | PNF | CONFERENCES WITH MR. SCARBOROUGH REGARDING SETTLEMENT; DRAFT/EDIT MEMORANDUM OF UNDERSTANDING REGARDING SETTLEMENT; TRIAL PREPARATION; TRAVEL TO BOSTON; | 12.00 |
|  | TSG | ASSIST IN TRIAL PREPARATION AND CONDUCT SETTLEMENT RESEARCH; | 1.50 |
| Oct-01-12 | JIC | REVIEW DRAFT MOU; CONFERENCE WITH J. DENLEA RE: SAME; | 0.75 |
|  | PNF | APPEARANCE IN COURT FOR TRIAL; CONFERENCE WITH CLIENT; CONFERENCE WITH EXPERT; RETURN TRAVEL TO NEW YORK; | 6.00 |
|  | TSG | RESEARCH RELATING TO SETTLEMENT; | 1.00 |
|  | CR | RECEIPT AND REVIEW ECF NOTICE APPROVING PRO HAC VICE ADMISSION OF J. DENLEA; COMPLETE FORM REQUESTING ECF NOTICES; EFILE SAME AND PRINT CONFIRMATION FOR FILE; | 0.50 |
| Oct-02-12 | PNF | CONFERENCES WITH MS. MCCALL AND MR. SYVERSON; | 1.50 |
| Oct-04-12 | PNF | CONFERENCES WITH MS. MCCALL; | 0.70 |
| Oct-05-12 | PNF | CONFERENCES WITH MS. MCCALL REGARDING DISCUSSIONS WITH MR. SYVERSON; | 0.60 |
| Oct-09-12 | PNF | CONFERENCES WITH MS. MCCALL AND MR. SCARBOROUGH; | 0.60 |
| Oct-10-12 | PNF | TRIAL PREPARATION; | 4.00 |
| Oct-11-12 | PNF | TRIAL PREPARATION: OUTLINE WITNESS EXAMINATIONS; | 3.00 |
| Oct-12-12 | PNF | CONFERENCE WITH MR. SCARBOROUGH; TRIAL PREPARATION (REVIEW OF SUBSTANTIATION MATERIALS); | 3.50 |

Invoice #: Sample                     File #: 16437-CONT                         Page 19

| Oct-15-12 | PNF | TRIAL PREPARATION - WITNESS EXAMINATIONS; | 5.00 |
| Oct-16-12 | JIC | REVIEW ECF POSTING; CONFERENCE WITH J. DENLEA AND P. FREIBERG REGARDING STATUS; REVIEW FILE REGARDING LABEL AND PROSPECTIVE CHANGES; REVIEW INCLUSION OF COSTCO PRIVATE LABEL PRODUCT; | 1.50 |
| | PNF | CONFERENCES WITH MS. MCCALL REGARDING RESPONSE TO MS. GAUDET; TRIAL PREPARATION - WITNESS EXAMINATIONS; BEGIN DRAFTING SETTLEMENT AGREEMENT; | 6.00 |
| Oct-17-12 | PNF | TRIAL PREPARATION; DRAFT AND EDIT CORRESPONDENCE TO MS. GAUDET; | 4.00 |
| Oct-18-12 | PNF | TRIAL PREPARATION - WITNESS EXAMINATIONS AND OPENING STATEMENT; | 6.00 |
| Oct-22-12 | PNF | DRAFT AND EDIT AGREEMENT; | 3.20 |
| Nov-06-12 | PNF | CONFERENCE WITH MR. SCARBOROUGH REGARDING STATUS OF SETTLEMENT NEGOTIATIONS WITH BONNET FAIRBOURNE; | 0.60 |
| Nov-09-12 | PNF | CONFERENCE WITH MR. SCARBOROUGH AND MR. DENLEA REGARDING STATUS OF SETTLEMENT NEGOTIATIONS; | 0.50 |
| | TSG | RESEARCH RELATING TO ENFORCEABILITY OF MOU AND PARTIES' OBLIGATIONS TO COMPLETE CONDITIONS PRECEDENT TO SETTLEMENT; | 1.00 |
| Nov-12-12 | PNF | DRAFT EMAIL TO MS. MCCALL REGARDING RESETTING CASE FOR TRIAL; RESEARCH DOCTRINE OF PREVENTION; | 3.00 |
| Nov-13-12 | PNF | RESEARCH REGARDING SEEKING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT ABSENT DEFENDANT'S CONSENT; | 3.00 |
| Nov-15-12 | PNF | DRAFT MOTION TO ENFORCE MOU; | 6.00 |
| Nov-16-12 | PNF | DRAFT PRELIMINARY APPROVAL PAPERS; | 5.00 |
| Nov-19-12 | PNF | EDIT MOTION FOR PRELIMINARY APPROVAL; DRAFT LETTER TO JUDGE YOUNG REGARDING RESTORING CASE TO TRIAL CALENDAR; | 6.00 |
| Nov-20-12 | GDB | CONSIDERATION OF ISSUES RE: POTENTIAL TRIAL OR SETTLEMENT AND CONFER WITH P. FREIBERG RE: SAME | 0.60 |
| | PNF | EDIT MOTION FOR PRELIMINARY APPROVAL; | 2.00 |
| Nov-23-12 | PNF | DRAFT LETTER TO JUDGE YOUNG RESPONDING TO MS. MCCALL'S SECOND LETTER REQUESTING A TRIAL DATE; | 0.80 |

July 29, 2013

Invoice #:  Sample                          File #:  16437-CONT                    Page  20

| Nov-26-12 | PNF | RECEIPT AND REVIEW OF MESSAGE FROM MS. GAUDET REGARDING INSTRUCTION TO FILE MOTIONS;  EDIT MOTION FOR PRELIMINARY APPROVAL; | 2.70 |
|---|---|---|---|
| Nov-27-12 | JRD | REVIEW AND UPDATE SETTLEMENT PROPOSAL; CONVERSATION WITH P. FREIBERG; CONVERSATION WITH DEFENSE COUNSEL; | 3.50 |
| Dec-03-12 | PNF | CONFERENCE WITH MS. MCCALL REGARDING REXALL'S MOTION TO RE-SET TRIAL; | 0.30 |
| Dec-07-12 | PNF | CONFERENCE WITH MR. DENLEA, MR. WELTMAN AND MS. SYVERSON; | 0.40 |
| Dec-11-12 | PNF | EDIT AND REVISE MOTION FOR PRELIMINARY APPROVAL AND RELATED PAPERS; | 2.50 |
|  | CR | RECEIPT AND REVIEW MEMO FROM P. FREIBERG; RESEARCH RE ADVERTISING RATES AND TERMS FOR USA TODAY; PRINT MATERIALS FOR P. FREIBERG REVIEW; | 0.40 |
| Dec-12-12 | PNF | CONFERENCES WITH MS. MCCALL REGARDING STATUS OF NEGOTIATIONS WITH OTHER ATTORNEYS; | 0.50 |
| Dec-13-12 | PNF | RECEIPT AND REVIEW OF DEFENDANTS MOTION TO RESTORE TO TRIAL CALENDAR; | 0.70 |

Invoice #:  Sample                    File #:  16437-CONT                    Page 21

| Lawyer/Para | Hours | Rate | Amount |
|---|---|---|---|
| JRD | 41.00 | $675.00 | $27,675.00 |
| GDB | 105.40 | $625.00 | $65,875.00 |
| JIC | 49.00 | $675.00 | $33,075.00 |
| PNF | 772.85 | $650.00 | $502,352.50 |
| TSG | 15.00 | $625.00 | $9,375.00 |
| CR | 50.35 | $150.00 | $7,552.50 |
| TOTAL | 1033.60 | | 5645,905.00 |

**DISBURSEMENTS**

| | | |
|---|---|---|
| | Telephone | $47.34 |
| | Express Mail | $326.35 |
| | Records/Reports | $244.78 |
| | Transcripts | $1,238.84 |
| | Process Services | $95.00 |
| | Court Fees | $600.00 |
| | Paraprofessional | $1,829.75 |
| | Lexis, Westlaw | $2,661.51 |
| | Travel /Misc | $6,057.92 |
| | Copies | $4,619.62 |
| | PACER | $424.36 |
| Nov-04-11 | Fee for Inter County Judicial Services LLC | $150.00 |
| Dec-12-11 | Fee for Science Direct | $31.50 |
| Apr-13-12 | FILE NO. 16437 | $4.80 |
| Aug-01-12 | Fee for Expert Review-16437-CONT. | $3,500.00 |
| Aug-03-12 | INV. NO. 0109147567 | $121.84 |

Invoice #:  Sample                          File #:   16437-CONT                          Page  22

| Aug-16-12 | Copy of an Article/American Express charge | $53.10 |
|---|---|---|
| Aug-24-12 | RICHARD JENNINGS/FILE NO. 16437 MARTHA VINEYARD HOSPTIAL | $75.00 |
| Aug-27-12 | REXALL-SUNDOWN | $5,000.00 |
| Sep-28-12 | COPIES UNLIMITED | $1,562.86 |
| Oct-12-12 | Professional fees incurred as an expert witness in the above referenced case | $5,000.00 |
| | INVS. 20784/COPIES UNLIMITED | $285.52 |
| | INVS. 20753/COPIES UNLIMITED | $985.25 |
| Oct-19-12 | INV. NO. 345018/FILE NO. 16437-ESQUIRE DEPOSITION SOLUTIONS, LLC | $1,095.69 |
| Nov-16-12 | Fee for expert witness on file number 16437/Jeremiah Silbert, MD | $5,000.00 |
| Nov-30-12 | Fee for Subpoena to Appear and Testifiy-16437-Cont.-Janney & Janey Attorney Service, Inc. | $105.00 |
| May-22-13 | Research-File No. 16437 Jennings v. Rexall | $120.00 |

Totals                                      $41,236.03

**Total of Current Charges**                        $645,905.00
**Total of Disbursements and Costs**                  $41,236.03
**Previous Outstanding Balance**                           $0.00
**Less Receipts**                                          $0.00
**Less Retainer**                                          $0.00

**Balance Due Now**                                 $687,141.03
**Remaining Credit Balance**                               $0.00

**CASE NOTES:**

CONTINGENCY;

## DENLEA  & CARTON LLP

One North Broadway, Suite 509
White Plains, NY  10601
(914) 920-7400

September 4, 2013

Jennings v. Rexall Sundown, Inc.
Civ. Action No.:11-cv-07972

| DATE | DESCRIPTION | HOURS | AMOUNT | LAWYER |
|------|-------------|-------|--------|--------|
| Jan-02-13 | Continue edits/revisions to motion for preliminary approval; conference with P. Freiberg; | 4.50 | 3,037.50 | JIC |
| Jan-03-13 | Edit papers on motion for preliminary approval; conferences with Ms. McCall; | 3.00 | 1,950.00 | PNF |
| Jan-04-13 | Conference with Ms. McCall regarding motion papers; edit declaration of Mr. Gero; | 3.50 | 2,275.00 | PNF |
| Jan-07-13 | Draft Third Amended Complaint; receipt and review of Declaration from Mr. Gero; | 4.00 | 2,600.00 | PNF |
| Jan-08-13 | Edit/proofread papers in support of motion for preliminary approval of class action settlement; legal research regarding Internet notice; draft Third Amended Complaint; | 5.00 | 3,250.00 | PNF |
| Jan-09-13 | Review final drafts; | 5.50 | 3,712.50 | JIC |
|  | Finalize papers in support of motion for preliminary approval of class action settlement; redact papers; draft letter to Judge Young; conferences with Ms. McCall; | 5.00 | 3,250.00 | PNF |
| Jan-10-13 | Review Rexall's "opposition" to motion for preliminary approval; conference with P. Freiberg; | 1.50 | 1,012.50 | JIC |
|  | Receipt and review of Rexall's response to | 1.50 | 975.00 | PNF |

| | | | | |
|---|---|---|---|---|
| | motion for preliminary approval; conference with J. Carton; | | | |
| Jan-11-13 | Draft response to Rexall's response to motion of preliminary approval; | 3.00 | 1,950.00 | PNF |
| Jan-12-13 | Draft response to Rexall's response to motion for preliminary approval; | 2.50 | 1,625.00 | PNF |
| Jan-14-13 | Edit/review draft reply to Rexall's response to motion for preliminary approval; conference with P. Freiberg re: same; | 1.75 | 1,181.25 | JIC |
| | Edit and finalize reply to Rexall's response to motion for preliminary approval of class action settlement;conference with J. Carton re:same; | 3.00 | 1,950.00 | PNF |
| Jan-17-13 | Draft and edit Third Amended Complaint; | 2.50 | 1,625.00 | PNF |
| Jan-28-13 | Email to Dr. Silbert regarding status; | 0.20 | 130.00 | PNF |
| Jan-29-13 | Conference with J. Carton; email to Ms. Gaudet re: settlement conference; conferences with Mr. Prutsman and Mr. Gero; | 1.75 | 1,137.50 | PNF |
| Jan-30-13 | Receipt and review of correspondence from Ms. Gaudet regarding settlement conference; conference with Mr. Gero and Mr. Prutsman regarding notification procedures; | 1.00 | 650.00 | PNF |
| Jan-31-13 | Review correspondence with Judge Young's clerk; conference with P. Freiberg re: discussion with class action administrator; | 0.75 | 506.25 | JIC |
| | Prepare for settlement conference; | 4.50 | 2,925.00 | PNF |
| Feb-01-13 | Prepare for settlement conference; research issues related to a MOU or preliminary agreement being sufficient to sustain a settlement; conference with Mr. Prutsman regarding notice plan; | 5.00 | 3,250.00 | PNF |
| Feb-03-13 | Prepare for motion on preliminary approval of settlement; review legal research; multiple conferences with P. Freiberg; | 6.75 | 4,556.25 | JIC |
| Feb-04-13 | Travel to/from Boston; Conference with Judge Young; Conference with opposing counsel; conference with P. Freiberg; | 9.50 | 6,412.50 | JIC |

|            |                                                                                                                    |      |          |     |
| ---------- | ------------------------------------------------------------------------------------------------------------------ | ---- | -------- | --- |
|            | Travel to Boston; attend settlement conference; return travel;                                                     | 9.50 | 6,175.00 | PNF |
| Feb-05-13  | Teleconference with K. McCall; Conference with P. Freiberg re: same;                                               | 1.50 | 1,012.50 | JIC |
| Feb-06-13  | Review email from opposing counsel; conference with P. Freiberg re: same;                                          | 0.50 | 337.50   | JIC |
| Feb-07-13  | Research Northern District of Illinois class actions;                                                              | 2.50 | 1,625.00 | PNF |
| Feb-08-13  | Multiple conferences with P. Freiberg and J. Denlea re: litigation and settlement strategy;                        | 2.75 | 1,856.25 | JIC |
|            | Further research regarding Northern District of Illinois class action decisions; conference with Ms. McCall;       | 4.00 | 2,600.00 | PNF |
| Feb-11-13  | Preparation for conference with C. Brennan; conference with P. Freiberg re: same;                                  | 1.25 | 843.75   | JIC |
|            | Further research regarding Northern District of Illinois class action rulings;conference with J. Carton re: preparation for meeting with Rexall's general counsel; | 4.00 | 2,600.00 | PNF |
| Feb-12-13  | Conference with C. Brennan (GC-NTBY) re: prospective settlement; conference with J. Denlea and P. Freiberg re: same; | 2.50 | 1,687.50 | JIC |
|            | Meeting with Mr. Brennan and Mr. Carton;                                                                           | 2.50 | 1,625.00 | PNF |
| Feb-13-13  | Emails with C. Brennan; conference with P. Freiberg;                                                               | 0.50 | 337.50   | JIC |
|            | Research class action decisions in multiple jurisdictions;                                                         | 3.00 | 1,950.00 | PNF |
| Feb-14-13  | Research class decisions in Northern District of Illinois;                                                         | 2.00 | 1,300.00 | PNF |
| Feb-20-13  | Draft email to Ms. Gaudet requesting an adjournment of the settlement conference scheduled for March 4, 2013;      | 0.30 | 195.00   | PNF |
| Feb-24-13  | Draft Joint Motion to Continue Settlement Conference;                                                              | 0.75 | 487.50   | PNF |
| Feb-25-13  | Edit and finalize Joint Motion to Continue                                                                         | 0.50 | 325.00   | PNF |

|  |  |  |  |  |
|---|---|---|---|---|
|  | Settlement Conference; emails with Ms. McCall regarding same; |  |  |  |
| Feb-26-13 | Review case law re: preliminary approval; conference with P. Freiberg re: same; | 3.75 | 2,531.25 | JIC |
|  | Research on class certification decisions of different circuits; | 4.50 | 2,925.00 | PNF |
| Feb-27-13 | Review docket sheets for other glucosamine cases in California and Illinois; | 3.00 | 1,950.00 | PNF |
| Mar-01-13 | Teleconference with C. Brennan; review draft settlement agreement and exhibits; conference with P. Freiberg re: same; | 1.75 | 1,181.25 | JIC |
| Mar-04-13 | Edit/revise draft settlement agreement; review Weltman's edits/revisions; conference with P. Freiberg re: same; review exhibits to settlement agreement; emails with all counsel; | 3.50 | 2,362.50 | JIC |
|  | Receipt and review of settlement documents; edit same; email to all counsel with redlined versions of same; | 4.75 | 3,087.50 | PNF |
| Mar-05-13 | Conference with all counsel regarding settlement; legal research regarding issues raised during conference with counsel; | 3.50 | 2,275.00 | PNF |
| Mar-06-13 | Legal research regarding class decisions from Central District of California; receipt of legal research from Mr. Davis regarding injunction against class members pursuing claims as part of settlement agreement; | 5.00 | 3,250.00 | PNF |
| Mar-07-13 | Review research on various judges and jurisdictions; teleconference with S. Weltman and E. Ryan; conference with P. Freiberg re: same; | 2.50 | 1,687.50 | JIC |
|  | Legal research regarding dismissing class action per rule 41; | 3.50 | 2,275.00 | PNF |
| Mar-08-13 | Review revised draft settlement documents; conference with P. Freiberg re: same; | 2.50 | 1,687.50 | JIC |
|  | Receipt and review of revised settlement documents from Ms. McCall; review case law regarding dismissal of class action per rule 41; | 1.75 | 1,137.50 | PNF |
| Mar-11-13 | Preparation for Chicago conference; | 4.75 | 3,206.25 | JIC |

Invoice #:    Sample                              Page 12 - 5                     September 4, 2013

Case 1:11-cv-07972   Document 124-2   Filed 09/04/13   Page 28 of 38 PageID 2098
Case: 14-1244        Document: 20-10        Filed: 03/27/2014      Pages: 76

|  |  |  |  |  |
|---|---|---|---|---|
|  | conference with P. Freiberg re: same; review revised settlement draft and all exhibits; |  |  |  |
|  | Review edited settlement documents provided by Ms. McCall in anticipation of meeting in Chicago; prepare for conference; multiple conferences with J. Carton; | 6.00 | 3,900.00 | PNF |
| Mar-12-13 | Travel to Chicago; conference with co-counsel; | 9.00 | 6,075.00 | JIC |
|  | Travel to Chicago; meeting with counsel for Rexall and counsel for plaintiffs in the other four gluscomanine supplement cases; return travel; | 14.00 | 9,100.00 | PNF |
| Mar-13-13 | Draft joint motion to hold case in abeyance; | 1.50 | 975.00 | PNF |
| Mar-14-13 | Conference with Mr. Jennings to provide update on status of case and settlement; review amended and revised settlement documents from Ms. McCall; edit joint motion to hold case in abeyance; | 2.50 | 1,625.00 | PNF |
| Mar-15-13 | Emails with other counsel re: NBTY and retailers; | 0.50 | 337.50 | JIC |
|  | Conference with Ms. McCall regarding sales data; review revised settlement documents received from Ms. McCall; edit joint motion to hold case in abeyance; | 1.50 | 975.00 | PNF |
| Mar-18-13 | Receipt and review of draft notice plan; | 1.00 | 650.00 | PNF |
| Mar-19-13 | Receipt and review Ms. McCall's edits to motion to hold Jennings case in abeyance; receipt and review of Mr. Weltman's edits to settlement; | 0.50 | 325.00 | PNF |
| Mar-20-13 | Telephone conference with C. Brennan; conference with P. Freiberg re: revised documents; review redlined agreements and exhibits; | 1.75 | 1,181.25 | JIC |
|  | Edit settlement documents; review for conformity with meeting in Chicago; | 3.00 | 1,950.00 | PNF |
| Mar-21-13 | Edit/revise draft status report to Judge Young; review other counsel's edit to same and to draft | 1.50 | 1,012.50 | JIC |

|  |  |  |  |  |
|---|---|---|---|---|
|  | settlement documents; conference with P. Freiberg re: same; |  |  |  |
|  | Edit request to Judge Young to abey case; edit settlement documents; | 0.90 | 585.00 | PNF |
| Mar-22-13 | Edit/revise final draft report to Judge Young; emails with co-counsel re: Judge Zagel; conference with P. Freiberg re: same; | 0.75 | 506.25 | JIC |
|  | Conference with Ms. McCall regarding meeting with Judge Young; edit and finalize request to Judge Young to abey case; | 1.00 | 650.00 | PNF |
| Mar-25-13 | Multiple emails re: status of settlement agreement and exhibits; | 0.50 | 337.50 | JIC |
| Mar-26-13 | Conference with P. Freiberg; emails with opposing counsel re: request to Judge Young; | 0.50 | 337.50 | JIC |
|  | Review settlement documents; | 1.75 | 1,137.50 | PNF |
| Mar-27-13 | Emails with Rexall and other counsel re: Young's Order and preparation of preliminary approval order; | 0.75 | 506.25 | JIC |
|  | Receipt and review of Order from Judge Young closing case; | 0.20 | 130.00 | PNF |
| Mar-28-13 | Receipt and Review of Revised Notice Plan from Ms. McCall; | 0.50 | 325.00 | PNF |
| Mar-29-13 | Review revised notice plan; | 0.50 | 325.00 | PNF |
| Apr-01-13 | Receipt and review of Amended Exhibit A with all products listed; research for Illinois form of motion for preliminary approval of class action settlements; | 4.50 | 2,925.00 | PNF |
| Apr-03-13 | Review prior motions for preliminary approval filed in Northern District of Illinois; | 3.00 | 1,950.00 | PNF |
| Apr-04-13 | Receipt and Review of settlement documents with edits (close to final) from Ms. McCall; | 1.50 | 975.00 | PNF |
| Apr-08-13 | Review revised settlement drafts; review emails re: amended complaint; conference with P. Freiberg re: same; | 1.75 | 1,181.25 | JIC |
|  | Revise and Edit Second Amended Complaint in the Pearson case; | 2.00 | 1,300.00 | PNF |

| | | | | |
|---|---|---|---|---|
| Apr-09-13 | Review draft amended complaint re: nationwide filing in Illinois to effectuate settlement; conference with P. Freiberg; | 1.50 | 1,012.50 | JIC |
| | Edit and Revise Second Amended Complaint in Pearson; | 2.75 | 1,787.50 | PNF |
| Apr-10-13 | Research for motion for preliminary approval in the Northern District of Illinois; | 4.50 | 2,925.00 | PNF |
| Apr-11-13 | Teleconference with fellow plaintiffs' counsel re: draft amended complaint; teleconference with all counsel re: revised settlement agreement; review "final" settlement agreement; multiple conferences with P. Freiberg re: same; | 2.50 | 1,687.50 | JIC |
| | Conference Call with all counsel to resolve final issues related to settlement agreement; edit Second Amended Complaint in Pearson case; | 2.75 | 1,787.50 | PNF |
| Apr-12-13 | Multiple emails re: coordination of execution of settlement; review revised exhibits to settlement; | 0.75 | 506.25 | JIC |
| | Receipt and Review of final set of exhibits to settlement agreement; | 1.00 | 650.00 | PNF |
| Apr-15-13 | Review final exhibits to settlement agreement; conference with P. Freiberg re: additional revisions required; | 0.75 | 506.25 | JIC |
| Apr-22-13 | Review draft amended complaint; conference with P. Freiberg re: same; | 0.75 | 506.25 | JIC |
| | Review draft of second amended complaint in Pearson for filing; | 1.00 | 650.00 | PNF |
| Apr-23-13 | Receipt of draft of motion for preliminary approval from Mr. Weltman; begin editing same; prepare pro hac vice applications for Northern District of Illinois; begin drafting declaration in support of motion for preliminary approval; | 4.50 | 2,925.00 | PNF |
| Apr-24-13 | Emails and teleconferences with prospective local counsel in Northern District Illinois; conference with P. Freiberg re: same; | 0.75 | 506.25 | JIC |

|  | | | | |
|---|---|---|---|---|
|  | Edit motion for preliminary approval and declaration in support; | 4.50 | 2,925.00 | PNF |
| Apr-25-13 | Edit and revise memorandum in support of motion for preliminary approval; | 2.50 | 1,625.00 | PNF |
| Apr-26-13 | Review/edit/revise draft brief in support of preliminary approval; conference with P. Freiberg re: same; | 2.50 | 1,687.50 | JIC |
|  | Edit and revise motion for preliminary approval of class action settlement; | 3.00 | 1,950.00 | PNF |
| Apr-30-13 | Edit/revise draft declaration; conference with P. Freiberg re: same; | 1.50 | 1,012.50 | JIC |
|  | Edit pro hac vice papers; conference with Ms. Gilden; edit declaration in support of motion for preliminary approval; | 2.00 | 1,300.00 | PNF |
| May-01-13 | Edit memorandum in support of motion for preliminary approval; | 2.00 | 1,300.00 | PNF |
| May-02-13 | Finalize and file pro hac vice papers; | 0.50 | 325.00 | PNF |
| May-03-13 | Review final draft of preliminary approval brief; conference with P. Freiberg re: need for non-collusive point and experience of counsel; | 1.50 | 1,012.50 | JIC |
|  | Edit memorandum in support of motion for preliminary approval; draft Denlea & Carton firm biography; | 3.50 | 2,275.00 | PNF |
| May-06-13 | Review draft motion for preliminary approval; conference with P. Freiberg; edit/revise draft firm biography; | 1.50 | 1,012.50 | JIC |
|  | Edit firm biography; final edits to memorandum in support of motion for preliminary approval; conferences with Mr. Weltman; | 2.75 | 1,787.50 | PNF |
| May-07-13 | Receipt and review of filed motion for preliminary approval in Pearson; | 0.70 | 455.00 | PNF |
| May-08-13 | Conference with Ms. McCall regarding hearing on motion for preliminary approval; | 0.30 | 195.00 | PNF |
| May-09-13 | Receipt and Review of proposed claim form from Ms. McCall; | 0.75 | 487.50 | PNF |

| May-10-13 | Conference with Ms. McCall regarding claim form; conference with Dr. Silbert; edit and revise claim form; | 1.00 | 650.00 | PNF |
|---|---|---|---|---|
| May-13-13 | Review revised claim form; conference with P. Freiberg re: same; | 0.50 | 337.50 | JIC |
|  | Receipt and review of revised claim form from Ms. McCall; prepare for hearing on motion for preliminary approval; | 2.75 | 1,787.50 | PNF |
| May-14-13 | Review multiple emails with other counsel re: form of preliminary approval order and schedule; conference with P. Freiberg re: same; | 0.75 | 506.25 | JIC |
|  | Edit preliminary approval order; email to Mr. Weltman and Ms. Ryan regarding same; | 1.00 | 650.00 | PNF |
| May-15-13 | Review revised draft preliminary approval schedule; emails with other counsel; conference with P. Freiberg re: same; | 0.75 | 506.25 | JIC |
|  | Travel to Chicago for hearing on motion for preliminary approval of class action settlement; | 6.50 | 4,225.00 | PNF |
| May-16-13 | Teleconference with P. Freiberg re: preliminary approval hearing; review revised summary notice; | 0.50 | 337.50 | JIC |
|  | Attend hearing on motion for preliminary approval of class action settlement; return travel; | 7.50 | 4,875.00 | PNF |
| May-17-13 | Review ECF posting of preliminary approval order; review revised summary notice; conference with P. Freiberg re: same; | 0.75 | 506.25 | JIC |
|  | Receipt and review of order preliminarily approving settlement; review final version of the notice for purposes of proofing; | 0.75 | 487.50 | PNF |
| May-20-13 | Receipt and review of answers to second amended complaint filed in Pearson by Rexall/NBTY and Target; | 0.60 | 390.00 | PNF |
| May-21-13 | Study and proofread long form notice and claim form for final versions for publication; | 1.00 | 650.00 | PNF |
| May-24-13 | Receipt and review of signed Preliminary Approval Order; | 0.30 | 195.00 | PNF |

| Date | Description | Hours | Amount | Code |
|---|---|---|---|---|
| May-28-13 | Review Voice Information System script and script for settlement website; edit same; | 1.50 | 975.00 | PNF |
| May-29-13 | Review script for automated messages; review additional publication notice; conference with P. Freiberg regarding same; | 0.75 | 506.25 | JIC |
| | Conference with Ms. McCall regarding edits to Voice Information System script and script for website; conference with J. Carton; | 0.50 | 325.00 | PNF |
| May-30-13 | Receipt and review of Ms. Ryan's comments to Voice Information script and website contents; | 0.30 | 195.00 | PNF |
| Jun-04-13 | Receipt and review of amended/corrected order granting preliminary approval; | 0.30 | 195.00 | PNF |
| Jun-07-13 | Conference with Mr. Jennings regarding settlement and notice plan; | 0.50 | 325.00 | PNF |
| Jun-13-13 | Review notice plan for dates of specific types of notice to be disseminated to class | 0.30 | 195.00 | PNF |
| Jun-17-13 | Review launch of web site; conference with P. Freiberg re: same; | 0.50 | 337.50 | JIC |
| | Review settlement website to ensure its accuracy; | 2.00 | 1,300.00 | PNF |
| Jun-18-13 | Calls from class members; | 1.00 | 650.00 | PNF |
| Jun-19-13 | Further comparison of website materials with final settlement documents; | 1.75 | 1,137.50 | PNF |
| Jun-24-13 | Receipt and review of correspondence from Ms. Paulson regarding settlement; | 0.20 | 130.00 | PNF |
| Jul-01-13 | Receipt and review letter from Ms. Radlinski; | 0.20 | 130.00 | PNF |
| Jul-03-13 | Conference with Mr. Weltman regarding letter from Ms. Radlinksi; | 0.10 | 65.00 | PNF |
| Jul-08-13 | Conferences with Counsel regarding letter from Ms. Radlinski; | 0.50 | 325.00 | PNF |
| Jul-09-13 | Conferences with Counsel regarding Ambassador's Club issues; | 0.50 | 325.00 | PNF |
| Jul-12-13 | Conferences with Mr. Hamer and Ms. McCall | 1.00 | 650.00 | PNF |

| | | | | |
|---|---|---|---|---|
| | regarding Mr. Leardi's and Mr. Simon's letters regarding settlement; | | | |
| Jul-16-13 | Review correspondence from class members; | 0.25 | 168.75 | JIC |
| Jul-17-13 | Legal research for motion for final approval - 7th Circuit case law; | 1.50 | 975.00 | PNF |
| Jul-18-13 | Further research on 7th Circuit case law for motion for final approval; | 3.00 | 1,950.00 | PNF |
| Jul-24-13 | Conference with Ms. McCall regarding Heffler declaration; draft final approval papers; | 3.00 | 1,950.00 | PNF |
| Jul-25-13 | Research Pella briefs for final approval motion; draft same; | 2.50 | 1,625.00 | PNF |
| Jul-26-13 | Draft/edit briefs in support of motion for final approval; | 3.00 | 1,950.00 | PNF |
| Jul-29-13 | Conference with P. Freiberg; work on draft affirmation re: final approval; | 2.50 | 1,687.50 | JIC |
| | Draft and edit memo in support of motion for final approval; edit Declaration in support of motion for final approval; | 5.00 | 3,250.00 | PNF |
| Jul-30-13 | Draft and Edit Memo in support of motion for final approval; | 4.00 | 2,600.00 | PNF |
| Aug-01-13 | Review objections to class settlement; | 2.75 | 1,856.25 | JIC |
| Aug-02-13 | Continued review of objectors' briefs; research re: same; conference with P. Freiberg; teleconference with E. Ryan and S. Weltman; | 4.50 | 3,037.50 | JIC |
| | Conference call with Mr. Weltman and Ms. Ryan; review Ted Frank Objection; legal research for responding thereto; | 3.00 | 1,950.00 | PNF |
| Aug-03-13 | Draft and Edit brief in support of final approval and award of attorneys' fees; | 4.00 | 2,600.00 | PNF |
| Aug-04-13 | Draft and Edit brief in support of final approval and award of attorneys' fees; | 6.00 | 3,900.00 | PNF |
| Aug-05-13 | Conference with P. Freiberg; emails with co-counsel; review additional section for valuation of injunctive relief; | 1.50 | 1,012.50 | JIC |

| Aug-06-13 | Draft and Edit brief in support of final approval and award of attorneys' fees; | 4.00 | 2,600.00 | PNF |
|-----------|------|------|------|------|
| Aug-07-13 | Review draft brief; conference with P. Freiberg; teleconference with all counsel continue research re: prospective litigation strategy; research case law re: objections; | 4.50 | 3,037.50 | JIC |
| | Final Approval Papers and legal research for objections; | 4.00 | 2,600.00 | PNF |
| Aug-08-13 | Teleconference with other counsel; multiple conferences with P. Freiberg; edit/review section on Rule 23h; review additional objections; legal research re: Rule 23h; shepardize Mercury case; | 3.75 | 2,531.25 | JIC |
| | Conferences with Mr. Weltman and Ms. Syverson; Receipt and review of Fortman objection; legal research for response to Fortman objection; Draft and Edit Rule 23(h)/Mercury argument; Edit memo in support of motion for final approval; | 4.00 | 2,600.00 | PNF |
| Aug-09-13 | Edit/review/draft Rule 23(h) objection; email with other counsel; review case law re: same; | 3.50 | 2,362.50 | JIC |
| Aug-12-13 | Emails with co-counsel re: response to objections and litigation strategy; | 0.75 | 506.25 | JIC |
| Aug-13-13 | Continue review of drafts of opposition to objections; | 2.50 | 1,687.50 | JIC |
| Aug-16-13 | Review additional class member filings; review draft sections of response to objections; | 1.75 | 1,181.25 | JIC |
| Aug-18-13 | Receipt and review of plaintiff and defense counsels' edits to settlement papers; | 2.00 | 1,300.00 | PNF |
| Aug-19-13 | Multiple emails with other counsel; conference with P. Freiberg re: draft response to objections; review additional 7th Circuit case law; | 1.50 | 1,012.50 | JIC |
| | Edit memo in support of motion for final approval and response to objections; | 2.75 | 1,787.50 | PNF |
| Aug-20-13 | Teleconference with co-counsel; review email from AG's office; conference with P. Freiberg; review revised section of response to objections; | 1.75 | 1,181.25 | JIC |

|            |                                                                                                                                                                                                   |      |          |     |
|------------|---------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|------|----------|-----|
|            | Conference with Class Counsel regarding State Attorneys General response to settlement; edit and revise Rule 23(h) section; edit and revise memo in support of motion for final approval;            | 1.50 | 975.00   | PNF |
| Aug-21-13  | Edit memo in support of motion for final approval;                                                                                                                                                 | 2.00 | 1,300.00 | PNF |
| Aug-22-13  | Receipt and review of Heffler affidavits; edit and revise final approval papers;                                                                                                                   | 2.50 | 1,625.00 | PNF |
| Aug-23-13  | Edit and revise papers in support of final approval; receipt and review of drafts from Ms. Weltman; conference with Attorneys General;                                                              | 4.00 | 2,600.00 | PNF |
| Aug-25-13  | Edit and review final approval brief; review case law re: valuing consumer fund regarding full benefit made available to class;                                                                     | 4.00 | 2,600.00 | PNF |
| Aug-26-13  | Review multiple sections of response to objections; review draft affirmation; conference with P. Freiberg; emails with other counsel;                                                               | 2.75 | 1,856.25 | JIC |
|            | Edit and revise memorandum in support of motion for final approval; receipt and review of drafts of parties' response to objections;                                                               | 4.00 | 2,600.00 | PNF |
| Aug-27-13  | Review combined objectors' brief; multiple emails with other counsel; conference with P. Freiberg re: same and prospective strategy; review S. Weltman email re: attorney's declaration;            | 3.50 | 2,362.50 | JIC |
|            | Edit and revise memorandum in support of motion for final approval; receipt and review of Mr. Weltman's and Ms. McCall's further edits to same; edit and revise memorandum in support of motion for final approval; | 4.00 | 2,600.00 | PNF |
| Aug-28-13  | Continue review of final approval brief and combined, omnibus response to objections; multiple conferences with P. Freiberg; emails with co and opposing counsel;                                    | 3.75 | 2,531.25 | JIC |
|            | Receipt and review of draft of Dr. Reutter's report; edit memorandum in support of motion for final approval; edit parties' responses to objections; legal research regarding Bluetooth decision;   | 3.00 | 1,950.00 | PNF |

| Aug-29-13 | Continued review/revisions to papers in support of final approval; multiple conferences with P. Freiberg; numerous emails amongst all counsel re: same; | 2.75 | 1,856.25 | JIC |
| | Receipt and review of further edits to memorandum in support of motion for final approval; edit and revise same; receipt and review of Declarations of Mr. Hamer and Mr. Schey; cite checking of memorandum in support of motion for final approval; | 4.50 | 2,925.00 | PNF |
| Aug-30-13 | Review multiple emails and successive iterations of anticipated filings in support of final approval; multiple conferences with P. Freiberg; review revised Reutter report; | 3.75 | 2,531.25 | JIC |
| | Receipt and review of final version of Dr. Reutter's report; edit and revise memorandum in support of motion for final approval; edit Declaration of Mr. Carton in support of fee application; conferences with counsel regarding final approval papers; receipt and review of final versions of Declarations to be submitted in support of final approval; | 5.00 | 3,250.00 | PNF |
| Totals | | 445.15 | $292,885.00 | |

**FEE SUMMARY:**

| Lawyer | Hours | Effective Rate | Amount |
|---|---|---|---|
| Jeffrey Carton | 141.50 | $675.00 | $95,512.50 |
| Peter Freiberg | 303.65 | $650.00 | $197,372.50 |

**DISBURSEMENTS**

| | |
|---|---|
| Travel | 4,643.52 |
| Silbert/Partial Payment/Expert Opinion | 5,000.00 |
| Pro Hac Vice Filing Fee | 100.00 |
| Lexis Nexis/Legal Research | 8,623.68 |
| Photocopying | 2,639.50 |
| Pacer/Legal Research | 571.90 |
| Silbert/Final Payment Expert Opinion | 18,500.00 |
| Berkeley Research Group/Expert Opinion | 11,872.50 |

Totals     $51,951.10

**Total Fee & Disbursements**     **$344,836.10**

**Balance Now Due**     **$344,836.10**